1

1    SUPREME COURT OF THE STATE OF NEW YORK

2    COUNTY OF KINGS - CRIMINAL TERM - PART 37
     --------------------------------------------------------X
3    THE PEOPLE OF THE STATE OF NEW YORK,

4         -against-

5    JOSE FUENTES,

6                                    DEFENDANT
     --------------------------------------------------------X
7    Ind. #2465/04              Jury Trial
                                320 Jay Street
8                               Brooklyn, New York
                                10/25,26,27,28,31, 11/1,2,3/05
9                               Volume I (10/25-28/05)

10

11

12   B E F O R E:

13       HONORABLE  PLUMMER E. LOTT,

14                                    Justice.

     ┌────────────────────────────────┐
     │      - CONFIDENTIAL -           │
15   │  NOT FOR PUBLIC INSPECTION      │
     │  (§ 50-b Civil Rights Law)      │
     └────────────────────────────────┘
16   A P P E A R A N C E S:

17       OFFICE OF CHARLES J. HYNES, ESQ.,
         DISTRICT ATTORNEY KINGS COUNTY
18       By:  MISS GREGORY, ESQ.,
         Assistant District Attorney
19       For the People

20       JOHN M. RODRIGUEZ, ESQ.,
         21 East 40th Street,
21       New York, New York
         Attorney for Defendant

22

23   TRANSCRIPT SERIAL#
     BOX #                / 1347
24   SYS. ID#: /
     Sup # / 5753
25                             KENNETH LETTS
                               OFFICIAL COURT REPORTER

                    KL

1          THE CLERK:  This is calendar number two, under

2    Indictment 2465 of 2004, Jose Fuentes.

3          Defendant's incarcerated, produced and present

4    before the Court.

5          Counsel, your notices.

6          MR. RODRIGUEZ:  John M. Rodriguez, 21 East 40th

7    Street, New York, New York, 10016.

8          Good morning, your Honor.

9          MS. GREGORY:  Miss Gregory for the office of the

10   district attorney.

11         Good morning, your Honor.

12         THE COURT:  This case was sent here for trial.

13   Before I start, any chance of a disposition?

14         MR. RODRIGUEZ:  There is, your Honor.  May we

15   approach?

16         THE COURT:  Yes, sir.

17         (Off-the-record bench conference.)

18         THE COURT:  Miss Gregory, you've given the Court

19   a copy of a witness list.

20         Mr. Rodriguez, have you seen it yet?

21         MR. RODRIGUEZ:  I have not.

22         THE COURT:  Miss Gregory, do you have an

23   additional copy?

24         MS. GREGORY:  Yes, your Honor.

25         (Handed to Mr. Rodriguez.)

Proceedings                          3

1              THE COURT:  Mr. Rodriguez, are there any names

2       you wish to add to this list?

3              MR. RODRIGUEZ:  I do.  I wish to add Aubry

4       Weekes.

5              THE COURT:  Spell that, please.

6              MR. RODRIGUEZ:  A-U-B-R-E-Y  W-E-E-K-E-S.

7              THE COURT:  Anybody else?

8              MR. RODRIGUEZ:  No, I don't think so, your Honor.

9       That's it.

10             THE COURT:  Miss Gregory, how long do you think

11      your direct case is going to be, ma'am?

12             MS. GREGORY:  No more than three-and-a-half days,

13      I would think.

14             THE COURT:  Okay.  So if we pick a jury by

15      tomorrow, you can open Thursday?

16             MS. GREGORY:  Right.

17             THE COURT:  It will only be a half a day Friday.

18             And counsel, how soon -- let's assume that she's

19      through by no later than Friday half-day, what can you do?

20      Can you get your case in the 31st?

21             MR. RODRIGUEZ:  Can I get my case in the 31st?

22      Yes, sir, sure.

23             THE COURT:  All right.  So, I can tell this jury

24      they can expect this case to last about a week of testimony

25      and I should be able to give it to them no later than

KL

Proceedings    (Sandoval)                    4

1   Tuesday the 1st?

2            MR. RODRIGUEZ:  I think that that's fair.

3            THE COURT:  Any Sandoval, ma'am?

4            MS. GREGORY:  Yes, your Honor.

5            Your Honor, should the defendant testify in this

6   case, the People would like to cross-examine him on two

7   prior convictions, as well as the underlying facts and

8   dates of those convictions.

9            THE COURT:  What's the first?

10            MS. GREGORY:  The first conviction is April 7th

11   of 1999.  The conviction was for an attempted assault in

12   the third degree.

13            THE COURT:  Yes, ma'am.  What happened there?

14            MS. GREGORY:  And that was the incident that

15   happened on January 1st of 1999.

16            THE COURT:  What did he do?

17            MS. GREGORY:  The defendant went to a New Year's

18   Eve party uninvited.  He got into a physical altercation

19   and he hit the complainant with a baseball bat, requiring

20   the complainant to receive medical attention at Nassau

21   County Medical Center.

22            THE COURT:  He entered a plea of guilty to that?

23            MS. GREGORY:  Yes, your Honor.

24            THE COURT:  What's the other one?

25            MS. GREGORY:  And the other is a June 24th of

KL

Proceedings     (Sandoval)               5

1    2003 conviction.   It was, the conviction was for an

2    attempted robbery in the second degree.

3               The defendant and his brother on May 1st of 2003

4    entered a gas station.   They pushed the gas station

5    employee to the ground.   The defendant's brother choked the

6    complainant while the defendant hit the complainant in the

7    head with a rock.

8               Both of the defendants, this defendant as well as

9    his brother, demanded the money from the complainant, which

10   they took.   The complainant needed 18 stitches to the head.

11   And when the defendant and his brother were apprehended,

12   his brother was in possession of the stolen money and this

13   defendant was in possession of a knife.

14               THE COURT:   And your basis for suggesting that I

15   allow you to do this is what?   His willingness to place

16   his interest above that of society?

17               MS. GREGORY:   That's correct, your Honor.

18               THE COURT:   Anything else?

19               MS. GREGORY:   No, your Honor.

20               THE COURT:   Any other basis?

21               MS. GREGORY:   No.

22               THE COURT:   Mr. Rodriguez.

23               MR. RODRIGUEZ:   Yes, your Honor.

24               THE COURT:   Do you want to be heard?

25               MR. RODRIGUEZ:   Yes, your Honor.   We'd object,

Proceedings     (Sandoval)                    6

1     your Honor.

2               The nature of the charges against my client in

3     this case, being a violent nature, and with the prior

4     charges, I think it would serve no purpose except to

5     inflame the jury, to prejudice the jury.  It would serve no

6     purpose other than to preclude him from being able to

7     testify in this case, should that be something that we

8     desire to do.

9               THE COURT:  So what are you suggesting?  That he

10    not be questioned about the convictions and the underlying

11    facts, or just --

12              MR. RODRIGUEZ:  No, no.  The underlying facts,

13    your Honor.  I mean, I think that -- I mean, I'm not going

14    to say it's inappropriate that the jury know that he has

15    been convicted of a prior felony and prior misdemeanor.

16    But I think the underlying charges will so prejudice him in

17    this case that it would prevent him from testifying in a

18    case where it's very important that he testify.

19              THE COURT:  Okay.  I'm sorry.  She wanted to

20    bring out the fact of the conviction as well as the

21    underlying facts.  Are you opposed to any mentioning of the

22    conviction and underlying facts, or just the conviction

23    you're saying that -- I mean the underlying facts shouldn't

24    be brought out?

25              MR. RODRIGUEZ:  Your Honor, I'm opposed to any

KL

Proceedings    (Sandoval)                    7

1   bringing up of anything.  But, your Honor, I think in the

2   spirit of fairness that the Court may want to consider just

3   allowing the district attorney to go into the convictions,

4   as opposed to the convictions and the underlying facts as

5   well.

6           THE COURT:  Well, the Court will not allow her to

7   bring out the underlying facts.  While the conduct does

8   indicate a willingness on his part to deliberately place

9   his self-interest above that of society and I think the

10  jury needs to know at least that, in terms of the

11  conviction, anything about the underlying facts is

12  precluded, unless somehow the defendant opens the door.

13          Anything of an evidentiary nature, Miss Gregory,

14  you want to raise?

15          MS. GREGORY:  Your Honor, I'd like to put -- I

16  have a packet of Rosario for Mr. Rodriguez.

17          THE COURT:  Okay.  We'll get to that in a moment.

18          Are there any evidentiary issues at this point

19  that you think may be problematic during trial?

20          MS. GREGORY:  No, your Honor, I don't think so.

21          Well, what we did, this case involves a DNA

22  sample, which connected the defendant to a past crime.  So

23  it's a sample that was taken from him due to a conviction.

24  So Mr. Rodriguez and I were discussing the parameters

25  around which the jury would hear about how this sample was

KL

Proceedings                                    8

1    taken from him.

2              THE COURT:  How does it even become an issue?

3    Can't you just simply say that they had a known --

4              MS. GREGORY:  Sample.

5              THE COURT:  -- sample?

6              MS. GREGORY:  Which that's what I've done in the

7    past.

8              THE COURT:  That was submitted, without any

9    mentioning of anything.

10             MS. GREGORY:  Exactly.

11             THE COURT:  Unless that's going to be your

12   defense?

13             MR. RODRIGUEZ:  Well, this is one of the motions

14   in limine I was going to bring forward.  The problem is in

15   today's world -- I haven't really thought how it should

16   come out, and I was hoping that we would be able to work

17   that out in court today, because of the type of

18   proliferation of TV shows and DNA samples and the fact that

19   everyone is aware in this state, most jurors are aware in

20   this state if you're incarcerated that a DNA sample is

21   taken.

22             THE COURT:  I understand that.  But what I'm

23   saying at this point is I'm prepared to not allow any

24   evidence of that at all.

25             MR. RODRIGUEZ:  Okay.

KL

Proceedings                                    9

1        THE COURT:  And just simply Miss Gregory will

2   indicate at some point in time to her examiner that he

3   compared a known sample of the defendant with that of

4   whatever was found at the scene and ultimately his

5   conclusions as to that.

6        MR. RODRIGUEZ:  That's acceptable.

7        THE COURT:  The only way that it can be made

8   known to the jury that it came from some other source would

9   be through you, sir.  I mean, how it came into the

10  possession of the People would be through you.  Miss

11  Gregory won't do it.

12       MR. RODRIGUEZ:  Okay, good enough.  That's fine.

13       THE COURT:  Okay.

14       You've got Rosario, Miss Gregory?

15       MS. GREGORY:  Yes, your Honor.

16       MR. RODRIGUEZ:  I have some other issues, your

17  Honor.

18       THE COURT:  Please.

19       MR. RODRIGUEZ:  There is, if the Court is not

20  aware, the Court may be aware of another charge, similar

21  charge in Queens, a separate rape charge in Queens.

22       THE COURT:  But how is that an issue at this

23  point?

24       MR. RODRIGUEZ:  I just want to make sure it

25  doesn't become an issue in this case; that no evidence of

KL

1    that charge be brought in this case in any form or fashion.

2         MS. GREGORY:  Your Honor, the DNA report includes

3    both cases.  Obviously they'll be redacted, should the jury

4    want to see them, to take out the second instance.  But

5    when the examiner comes, she'll come with the full file.

6         THE COURT:  I understand.

7         MR. RODRIGUEZ:  And I just wanted to make sure

8    that there's no evidence of any rape trauma syndrome to be

9    brought forward in this case.

10        THE COURT:  I can't promise you that, sir.  I

11   mean, at this point I'm not going to give you an advisory

12   ruling on that issue.

13        MR. RODRIGUEZ:  Well, the reason I'm making this

14   --

15        THE COURT:  I'm sure in your mind you have a

16   legitimate reason.  I'll want to hear how the trial unfolds

17   before I do that.

18        MR. RODRIGUEZ:  Well, then see, the reason -- I

19   understand your point too, your Honor.  But it seems to me

20   that if, in fact, my understanding of the syndrome or

21   whatever I understand of the evidence that I have before

22   this case and my view of it is that in order for this to be

23   entered properly, evidence of rape trauma syndrome, is that

24   she would have had to have been clinically checked to

25   determine, otherwise we would have a situation where some

KL

1    quote-unquote expert or someone would offer opinion

2    evidence of a speculative nature without having determined

3    whether or not this person suffers from that, and have some

4    kind of clinical proof of that, at which point I would then

5    be able to have my expert come in and do a similar test.

6                THE COURT:  Miss Gregory, you're sitting in

7    silence.  What is your position on this?

8                MS. GREGORY:  Your Honor, I put a rape trauma

9    expert on my witness list.  I, at this point I would need

10   to see how the trial unfolds to see whether or not I would

11   call him or not.

12               THE COURT:  Who's that, ma'am?

13               MS. GREGORY:  That's the last witness, Dr. Don

14   Lewittes.

15               THE COURT:  Okay.

16               Okay, yes, sir?

17               MR. RODRIGUEZ:  Well, your Honor, I've looked at

18   the case carefully and the facts of this, in this

19   particular case.  My understanding of what rape trauma

20   consists of, it's like post-traumatic syndrome.  And I

21   believe that there are certain criteria that have to be met

22   under the DSM, and I don't believe they've been met.

23               THE COURT:  Let's assume that's correct.  At this

24   point it will be premature for me, given that, to give you

25   a ruling that precludes them from doing that.

Proceedings                                    12

1          I mean, what you're telling me is there may be

2     criteria that she's required to comply with.  So I'll wait

3     and hear it.

4          MR. RODRIGUEZ:  But then what happens then, your

5     Honor, because I haven't had an opportunity to have an

6     expert --

7          THE COURT:  Well, you should have one on hand

8     then, counsel.  You should have one on hand.

9          You're 18-B on this case?

10         MR. RODRIGUEZ:  Yes.

11         THE COURT:  Then give me an order.

12         MR. RODRIGUEZ:  Okay, I'll bring an order in.

13         THE COURT:  Give me an order.

14         Mr. LaRose, would you give the defendant the

15    Antommarchi waiver, please.

16         THE CLERK:  Has it already, your Honor.

17         THE COURT:  Mr. Rodriguez, if you and your client

18    will discuss that, please, and let me know once you've

19    finished.

20         THE COURT:  Mr. Rodriguez, let me just say this:

21    During jury selection it's unlikely that I will ever speak

22    to a juror, prospective juror alone.  Usually what I do is

23    if they have something of a sensitive nature, they'll be

24    brought in, either be in the jury box or in the first row,

25    you, your client, the People and the reporter are present,

KL

Proceedings                                      13

1    and I will question the juror about any concerns he or she

2    might have outside of the presence of the other jurors.

3         The only time the Antommarchi really will kick in

4    is during the course of trial if there's a legal issue that

5    we have to discuss, we now have a robing room, we'll go in

6    the back of the courtroom to the robing room.  Your client

7    is welcome to come if he wants to.  If he comes, however,

8    it will be under supervision of court personnel.  But

9    that's the only time that he would really be affected by

10   Antommarchi.

11        MR. RODRIGUEZ:  Okay.  Those are when we have

12   sidebars about some point of contention during the course

13   of the trial.

14        THE COURT:  I try to limit them.  But if there's

15   going to be a sidebar, it's going to usually be in the

16   back.  And the jurors will either be told to excuse us or

17   I'll try to send them out and we'll have them in the

18   courtroom.

19        MR. RODRIGUEZ:  Just logistically if we approach,

20   if he was interested in going in the back, then the court

21   officers would go back with him?

22        THE COURT:  Yes.

23        MR. RODRIGUEZ:  Okay.  Thank you.

24        THE COURT:  All you would have to do, if there's

25   a sidebar and you're going to say approach, if he hadn't

KL

1    signed the Antommarchi waiver, at that point the decision

2    becomes upon me, either I send the jury out or to have us

3    go in the back in the presence of the jury.  But I'll try

4    to keep it at a minimum.  If I think it's going to be a

5    little bit longer, I'll send the jury out.

6              MR. RODRIGUEZ:  Okay.

7              (Brief pause in proceedings.)

8              THE COURT:  Mr. Fuentes, have you had a chance to

9    discuss this issue about the Antommarchi with your lawyer?

10             THE DEFENDANT:  Yes, I have, your Honor.

11             THE COURT:  Any questions?

12             THE DEFENDANT:  Yes, I have.  From what I

13   understand, I do agree to the Antommarchi waiver.

14             THE COURT:  Okay.  You signed the form here, is

15   that correct?

16             THE DEFENDANT:  Correct.

17             THE COURT:  I want you to understand, during jury

18   selection, again, I don't speak to jurors individually.  It

19   will be in your presence and your lawyer's presence, as

20   well as Miss Gregory's, and it will be recorded.  However,

21   during the course of the trial if there are issues that we

22   have to discuss, that will be done in the back.

23             THE DEFENDANT:  Between you?

24             THE COURT:  Yeah.  Your lawyer will be present,

25   the reporter will be present and the Miss Gregory will be

1     present.  He'll be free to come back and tell you.

2     However, you agreed you don't want to be present, is that

3     correct?

4                THE DEFENDANT:  Yeah, I do waive my rights, your

5     Honor.

6                THE COURT:  Is there anything else we need to

7     discuss here, Miss Gregory?

8                MS. GREGORY:  Your Honor, I would like to turn

9     over some Rosario.

10               THE COURT:  Okay.  What's the Rosario?

11               MS. GREGORY:  Your Honor, it's the sprint report,

12    the complaint report and the aided report, voucher number

13    L324290, sexual assault examination documents, memo book

14    entry, the detective dispatch sheet, unusual occurrence

15    report, complaint follow-up reports, the pattern work sheet

16    and memo, on-line booking system arrest work sheet and omni

17    form system arrest sheet, a typed arrest report, mugshot

18    pedigree, the prisoner movement slip, handwritten notes

19    from the detective, a DNA match report, and the New York

20    State forensic DNA data bank report of analysis, a DNA

21    match letter, a DNA data bank specimen submission form,

22    voucher L914475, request for laboratory examination, the

23    grand jury synopsis sheet and minutes.  And previously the

24    medical records of the complainant as well as the full DNA

25    reports and notes from the medical examiner's office have

Proceedings                                          16

1    been turned over.

2              THE COURT:  Counsel, I don't ask you to

3    acknowledge receipt at this point.  Why don't you review

4    the terms and let me know at some point in time this

5    afternoon or tomorrow whether in fact you have those.

6              MR. RODRIGUEZ:  Okay.  I'm just going through the

7    grand jury minutes, your Honor, to see if there's anything

8    in the grand jury minutes that --

9              THE COURT:  Yes, sir.  What I'm asking you to do

10   now, you can table that and look at it later, and if in

11   fact there's something missing, then please feel free to

12   bring it to my attention.

13             MR. RODRIGUEZ:  Okay.

14             THE COURT:  All right.

15             With that, how many jurors do we have, Mike?

16             THE CLERK:  I believe 51.

17             THE COURT:  All right.  Mr. LaRose, let's get 51

18   people in here.

19             (Whereupon, a panel of prospective jurors entered

20   the courtroom.)

21             THE COURT:  Good morning, ladies and gentlemen.

22   I apologize for the delay.  In addition to being a trial

23   part, I do have a calendar.  And unfortunately I had a case

24   this morning that took longer than I thought to resolve the

25   problems.

KL

1        If you will, those of you who claim you speak and

2   understand English, please listen to Mr. LaRose.

3        THE CLERK:  Ladies and gentlemen of the panel,

4   all please rise and raise your right hand and face me.

5        Do you and each of you sincerely and solemnly

6   swear or affirm that you will answer truthfully all

7   questions asked of you regarding your qualifications to

8   serve as a juror in this matter?

9        PROSPECTIVE JURORS:  Chorus of "I do."

10       THE CLERK:  Thank you.

11       Please be seated.

12       THE COURT:  Now, before we start, is there anyone

13  who claims he or she does not speak and understand English?

14       Is there any prospective juror who is under the

15  age of 18?

16       Are you all citizens of the United States and

17  residents of Kings County, Brooklyn?

18       Okay.  This is Part 37.  My name is Plummer Lott.

19  I am the Judge who will be presiding over this trial.  The

20  name of the case is the People of the State of New York

21  versus Jose Fuentes.  The clerk is Mr. Mike LaRose.

22       It's estimated that this trial will last about a

23  week in terms of the evidence.

24       I hope to get the jury selected by tomorrow.  If

25  that's done, I hope Thursday to take testimony.  We'll work

KL

Voir Dire                                18

1    only the morning session on Friday, the 28th.  We'll be

2    back the 31st.   We'll probably only work up until about 3

3    o'clock the 31st.

4         I expect to give you the case November 1st.

5    That's the duration of the case.  I can't be certain, but

6    in all likelihood the jury will probably get the case on

7    November 1st.  Everybody clear about the schedule?

8         Now, even though this is a criminal case, please

9    understand that no longer is there a requirement that

10   jurors be sequestered.  So if the jury gets the case and at

11   the end of the day you have not reached your verdict,

12   you'll be allowed to separate and go home and then return

13   the following day to resume your deliberations.  So no

14   sequestration.  Everybody clear about that?

15        PROSPECTIVE JURORS:  Yes.

16        THE COURT:  All right.

17        Now, let me also explain we generally start at

18   about 10 o'clock.  Most days it's 10:00 to 5:00.  There may

19   be days when we don't work completely to 5:00, but you will

20   know exactly the schedule each and every day.  We are jury

21   friendly in that regard.  We do take breaks; there's a

22   morning break and an afternoon break, and then certainly

23   you'll have a lunch break.

24        If you're selected and you have any special

25   concerns, I have an excellent crew, just let them know and

1    they'll advise us and we'll try to accommodate you as best

2    we can.

3                Now, seated to my left is Miss Gregory.  She's an

4    assistant district attorney.

5                Miss Gregory, if you will, please.

6                MS. GREGORY:  Good afternoon.

7                THE COURT:  She's an ADA in the office of Charles

8    Hynes.  It's going to be her responsibility to present

9    evidence on behalf of the People of the State of New York.

10               To my left is Mr. John Rodriguez.

11               MR. RODRIGUEZ:  Good afternoon, ladies and

12   gentlemen.

13               THE COURT:  Mr. Rodriguez represents the

14   defendant.

15               And to his right is Mr. Fuentes.

16               Mr. Fuentes, if you will.

17               THE DEFENDANT:  Good afternoon, ladies and

18   gentlemen.

19               THE COURT:  Now, the fact that this case is

20   brought in the name of the People or that evidence is going

21   to be presented by a public official does not in any way

22   indicate that the public wants a specific verdict.  The

23   People of the state are served by whatever verdict is

24   justified by the evidence.

25               Now, this trial will concern events which

KL

1        allegedly took place on January 27th, 2002, in the vicinity

2        of 474 Marcy Avenue.

3                    What section of Brooklyn is that, ma'am?

4                    A PROSPECTIVE JUROR:   Bed-Stuy.

5                    THE COURT:   Thank you.   Okay.

6                    I'm sure some of you are familiar with Bed-Stuy.

7        I'll ask you if you're called up here whether you have any

8        familiarity with that address.

9                    And it's alleged here that this defendant engaged

10       one Gina Colon in forcible sexual intercourse.   The charges

11       are rape.

12                   Now, please bear in mind that this is just a

13       summary of the allegations made by the People in their

14       indictment.   It does not constitute the Court's view of the

15       case, nor the evidence against the defendant.

16                   Please also keep in mind that the indictment and

17       the charges set forth in the indictment are allegations

18       only.

19                   The indictment has no significance whatsoever in

20       terms of the guilt or non-guilt of the defendant.   It's

21       just a written accusation, nothing more than that.

22                   Indeed, Mr. Fuentes is presumed innocent.   That

23       presumption remains with him throughout the trial.

24                   Mr. LaRose is going to call the names of 14 of

25       you.   You're going to take seats to my right.

                                  KL

1           If you will, please, Mr. LaRose.

2           THE CLERK:  Certainly.

3           As the Judge stated, I'm going to be calling your

4   name.  I ask if your name is called, say here or present,

5   since the parties have their backs directed to you.

6           If I mispronounce anybody's name, I apologize in

7   advance.

8           And please take the seats as directed by the

9   court officer.

10          THE CLERK:  Charlene Ebron, E-B-R-O-N, seat one,

11  please.

12          THE COURT:  Counsel -- just a moment -- could you

13  come up to the bench a minute.

14          (Off-the-record bench conference.)

15          THE CLERK:  Michele Small-English, S-M-A-L-L

16  hyphen E-N-G-L-I-S-H, if you'll take seat two.

17          Robert Ellis, E-L-L-I-S, seat three.

18          THE COURT:  If you're here, just acknowledge you

19  are.  The lawyers and the defendant have their backs to

20  you.

21          THE CLERK:  David Debellotte,

22  D-E-B-E-L-L-O-T-T-E.  Seat four.

23          Yolanda Duda, D-U-D-A, seat five, please.

24          Michelle Corley, C-O-R-L-E-Y, seat six.

25          DeShawn Connor, C-O-N-N-O-R, seat seven.

Voir Dire                           · 22

1        Muriel Francois, F-R-A-N-C-O-I-S, seat eight.

2        Barry Robinson, R-O-B-I-N-S-O-N, seat nine.

3        THE COURT:  Mr. Connor, the seat in the back.

4        William Rookwood, R-O-O-K-W-O-O-D, seat ten.

5        Alie Coleman, C-O-L-E-M-A-N, seat 11.

6        Danuda S-Z-P-L-I-T-G-E-J-B-E-R, seat twelve.

7        Dana Lawrence, L-A-W-R-E-N-C-E, seat 13, please.

8        Christina Landy, L-A-N-D-Y, seat 14.

9        THE COURT:  Those of you whose names were not

10   called, please try to listen.   Because in all likelihood,

11   I'm not going to get a jury out of this first round.   So

12   when you come up, in all likelihood the questions we'll ask

13   then will be the same questions asked of now.   So please

14   try to pay attention.

15        This procedure is routine in the sense that it is

16   what occurs in the selection of cases in criminal cases

17   that are tried by jury.   The objective is to obtain a fair

18   and impartial jury.   That's one that will base its verdict

19   only on an honest evaluation of the evidence and an honest

20   application of the law.

21        Now, in a moment I'm going to ask those people to

22   my right some questions.   My questions will be based on the

23   questionnaires you have in your hand.

24        Following my questions, the lawyers will be

25   allowed to speak to you.   They will not be given a very

KL

1   long time, but they will speak with you.

2           Their questions will be based on the answers that

3   you might give in terms of your responses to the

4   questionnaire, and they may ask you about some of the

5   issues they feel may arise during the course of the trial.

6           Now, please understand that none of the questions

7   asked are meant to be judgmental, they're not meant to be

8   unduly personal and we're not trying to embarrass anyone.

9           I try to keep this phase of jury selection as

10  light as possible because I want you to be able to speak

11  and communicate with these attorneys so we have some idea

12  whether you're the right juror for the case.

13          There is no right or wrong answers to any of the

14  questions.  I guess the wrong answer would be a dishonest

15  answer.  And the right answer would be the answer you feel

16  in the pit of your stomach after you hear the question

17  asked.

18          If a question is asked and you feel that it is of

19  a personal nature, please say so and I will allow you to

20  answer that question outside the presence of the jury.

21          Now, folks, let me just say this before we

22  proceed:  I'm well aware that jury service is an

23  inconvenience, but we cannot do our job unless people are

24  willing to sacrifice their time to do this.  There is no

25  provision in law for professional jurors, so we are

1    dependent upon you.

2            While we are jury friendly, we make every effort

3    to accommodate you, please do not ask to be excused because

4    it's an inconvenience.

5            If you are excused it doesn't mean you're off

6    jury duty, you're just off this case.  And in all

7    likelihood what will happen is you'll go downstairs and you

8    might be called for another case, and probably find a less

9    sympathetic Judge and group of lawyers.

10           But please don't ask to be excused simply because

11   of the inconvenience.  I'm well aware of that.

12           Now, in order for you to be jurors in this case

13   it doesn't require you to know anything about the law.  If

14   selected, I will explain the law to you.

15           However, if selected, you must follow the law,

16   you must accept it as I give it and apply it to the facts

17   as you find them from the evidence presented.

18           Now, if you can't follow the law, then basically

19   you just can't sit.

20           Just a few principles of law which apply to this

21   case so you have some idea what I'm talking about.  I've

22   indicated to you that this case was brought by an

23   indictment.  Please understand that the indictment is

24   simply a written accusation.  It has no evidentiary value

25   whatsoever.  And in every case a defendant is presumed

1    innocent.  The defendant as he sits here is presumed

2    innocent.  That presumption remains with him throughout the

3    trial and can only be overcome by the People in terms of

4    the evidence they present.

5              If you are convinced that this evidence convinces

6    you of his guilt, then the presumption is destroyed, then

7    and only then will it be destroyed.

8              The defendant has entered a plea of not guilty to

9    the crimes charged in the indictment.  The burden is on the

10   People to prove each and every material allegation

11   contained in the indictment and the essential elements

12   required to prove the material allegations.

13             The standard is proof beyond a reasonable doubt.

14   I'll explain in greater detail at the end of the trial what

15   it means.  For the moment, it doesn't mean proof beyond all

16   doubt or proof to a mathematical certainty.  Just proof

17   beyond a reasonable doubt.

18             A person accused of a crime is not required to

19   testify.  If that turns out to be the situation in this

20   case, you must not draw any inference adverse to the

21   defendant, nor may you raise it during jury deliberations.

22             Now, you must decide this case entirely on the

23   basis of the evidence presented, my instructions on the

24   law, without any consideration whatsoever of what the

25   punishment will be if a verdict of guilty is found, and you

KL

1    must not allow sympathy or empathy you feel for anyone to

2    divert you from your duty to consider all the evidence

3    fairly and impartially when deliberating upon a verdict.

4          Now, as jurors your function is just twofold:

5          One, you're going to determine fairly and

6    impartially from all the evidence in this case whether a

7    crime was committed.

8          And two, whether this defendant committed that

9    crime.

10          You're not here to make a moral judgment about

11    anybody.  At the end of the trial you'll be making a

12    factual judgment about the quality of the People's

13    evidence, whether it convinces you beyond a reasonable

14    doubt of the defendant's guilt.  That's the judgment we're

15    asking you to make here.

16          Now, any personal concerns or considerations you

17    might have about the nature of the crime must have nothing

18    to do with your decision in this case and must not prevent

19    you from being a fair and impartial juror.

20          Now, evidence in this case is going to come from

21    one of three sources: Testimony of witnesses under oath,

22    exhibits which are marked and received in evidence and any

23    stipulations, that's an agreement between the parties.

24          You're going to have to pass upon the

25    credibility, the truthfulness and accuracy of that

1    evidence.

2            I want you to understand the mere fact that a

3    person comes in and raises his or her right hand and swears

4    to tell the truth doesn't mean the person is telling the

5    truth.   There are one of three possibilities: The person is

6    being truthful with you, the person is mistaken or the

7    person is intentionally lying.   Ultimately, that's going to

8    be your call.

9            You're going to use the same everyday tests you

10   use in your daily dealings with people outside this

11   courtroom to determine whether someone is being truthful,

12   is mistaken or is intentionally lying.   So in judging

13   credibility, use the same tests you've used in your daily

14   lives.

15           Now, some considerations may be the witness'

16   intelligence; their opportunity to see and hear things

17   about which they're testifying; their motive for testifying

18   a certain way; their manner while testifying; whether they

19   said something different at an earlier time; the extent to

20   which their testimony is consistent with other evidence you

21   believe.

22           So in short, look, when a witness comes in and

23   raises his or her right hand and swears to tell the truth,

24   be alert for anything in the witness' words, demeanor,

25   behavior on the witness stand or anything else which might

 1    help you judge the truth and veracity of that witness'

 2    testimony.

 3              No one is to be automatically believed.  No one

 4    is entitled to be automatically believed in that they come

 5    in and are automatically believed.  That pertains to police

 6    officers.  They're to be evaluated the same way as anyone

 7    else.

 8              Anyone feel that he or she can't follow those

 9    rules?

10              In the absence of hands, we'll move on.

11              I've introduced to you the attorneys and the

12    defendant.  Any of these people seem familiar to you in the

13    sense that you may have seen them outside this courtroom

14    before today?

15              474 Marcy Avenue, any of you familiar with that

16    location in terms of living, visiting or working near that

17    address?

18              PROSPECTIVE JUROR #4:  My mother lives on, I

19    think it's -- I'm not sure of the number.  It's corner of

20    Gates and Marcy.

21              THE COURT:  Let me ask you this:  Do you have any

22    knowledge about the area that would affect your ability to

23    be fair?

24              PROSPECTIVE JUROR #4:  I been in that area for

25    almost 15 years.  I live on Patchen and my mother has been

                              KL

1       there at this address on Marcy for over ten years.

2                   THE COURT:  Again, any knowledge about the area

3       that would affect your ability to be impartial?

4                   PROSPECTIVE JUROR #4:  When you say knowledge of

5       the area --

6                   THE COURT:  Yes, sir.  The kind of area it is.

7                   PROSPECTIVE JUROR #4:  I don't know how to answer

8       that.

9                   THE COURT:  You've answered already.

10                  I cannot get an unequivocal assurance out of him.

11                  Do I have your consents?

12                  MR. RODRIGUEZ:  Yes.

13                  MS. GREGORY:  Yes.

14                  THE COURT:  Please return downstairs to Central

15      Jury, please.

16                  That's number four, Mr. LaRose.

17                  Give me another name, please.

18                  I will tell you what, we'll proceed without it.

19                  Now, folks, what I'm concerned about is this:

20      Is there anybody who feels he or she has an opinion about

21      an area that would affect their ability to be fair?

22      Anybody?

23                  Other than what I've indicated is alleged here,

24      any of you think you know anything at all about this case?

25                  I'm going to read some names.  If any of these

                                KL

Voir Dire                                    30

1    names sound familiar to you, please raise your hand:  Gina

2    Colon, Tammy Little, Kevin Fedynak, Nurse Durant from

3    Woodhull Hospital, Dan McSwiggan from Woodhull Hospital,

4    also a nurse, Steve Litwin, detective, Marie Samples, Don

5    Lewittes, Aubry Weekes.

6              Any of those names sound familiar to anybody?

7              Okay. All right.

8              Miss Ebron, if you will, ma'am, you have the

9    questionnaire, just go right down the list.  Your name,

10   over 18, straight down the list.

11             PROSPECTIVE JUROR #1:  Charlene Ebron, 36, East

12   Flatbush.

13             College.  Salesperson.

14             Single.  No.

15             THE COURT:  Any areas of interests or hobbies

16   you'd care to mention?

17             PROSPECTIVE JUROR #1:  No.

18             THE COURT:  You belong to any organizations you'd

19   care to mention?

20             PROSPECTIVE JUROR #1:  No.

21             THE COURT:  Have a favorite newspaper?

22             PROSPECTIVE JUROR #1:  New York Times.

23             THE COURT:  New York Times. You read it on

24   Sunday?

25             PROSPECTIVE JUROR #1:  Sometimes.

KL

1          THE COURT:  Any friends or relatives in law

2     enforcement, ma'am?

3          PROSPECTIVE JUROR #1:  No.

4          THE COURT:  Do you have any opinion about the

5     criminal justice system which would affect your ability to

6     be fair?

7          PROSPECTIVE JUROR #1:  No.

8          THE COURT:  Were you ever the victim of a crime?

9          PROSPECTIVE JUROR #1:  No.

10          THE COURT:  Car stolen, house burglarized

11     anything like that?

12          PROSPECTIVE JUROR #1:  No.

13          THE COURT:  Any family member or friend, as far

14     as you know, ever the victim of a crime?

15          PROSPECTIVE JUROR #1:  No.

16          THE COURT:  Ever accused of a crime?

17          PROSPECTIVE JUROR #1:  No.

18          THE COURT:  Any family member or friend ever

19     accused?

20          PROSPECTIVE JUROR #1:  No.

21          THE COURT:  Any prior jury service or is this

22     your first time?

23          PROSPECTIVE JUROR #1:  No.  I did it in 2000 but

24     I wasn't --

25          THE COURT:  You were called in?

Voir Dire                                        32

1          PROSPECTIVE JUROR #1:  Yeah.

2          THE COURT:  Did you get this far or what?

3          PROSPECTIVE JUROR #1:  No.  I wasn't picked.

4          THE COURT:  Is there any reason why you could not

5    sit on this case, ma'am?

6          PROSPECTIVE JUROR #1:  No.

7          THE COURT:  Thank you, very much.

8          Miss Small-English, if you will, ma'am.

9          PROSPECTIVE JUROR #2:  Michelle Small-English.

10   Thirty-seven.

11         THE COURT:  Area of Brooklyn you reside in?  Just

12   the area.

13         PROSPECTIVE JUROR #2:  Canarsie.

14         THE COURT:  Educational background.  College?

15   High school?

16         PROSPECTIVE JUROR #2:  College.  Patient care

17   associate and security.

18         Single.  No.

19         THE COURT:  Any areas of interest or hobbies

20   you'd care to mention?

21         PROSPECTIVE JUROR #2:  No.  Dancing, music.

22         THE COURT:  You belong to any organizations you'd

23   care to mention?

24         PROSPECTIVE JUROR #2:  No.

25         THE COURT:   Have a favorite newspaper?

KL

1              PROSPECTIVE JUROR #2:  Daily News.

2              THE COURT:  Any friends or relatives in law

3        enforcement, ma'am?

4              PROSPECTIVE JUROR #2:  I have my uncle that's a

5        judge.

6              THE COURT:  Okay.  Here in the state or in this

7        country?

8              PROSPECTIVE JUROR #2:  Yes.

9              THE COURT:  Do you want to mention his name?

10             PROSPECTIVE JUROR #2:  Mr. Hurley.

11             THE COURT:  Where does he sit?

12             PROSPECTIVE JUROR #2:  He just became a judge

13       this year.

14             THE COURT:  In what borough? Kings County?

15             PROSPECTIVE JUROR #2:  Brooklyn, yes.

16             THE COURT:  Do you think that relationship would

17       affect your ability to be fair and impartial in this case?

18             PROSPECTIVE JUROR #2:  No.

19             THE COURT:  You know during the course of this

20       trial if selected you must follow my instructions and you

21       can't talk to your uncle about any instructions he might

22       give?

23             PROSPECTIVE JUROR #2:  Yes.

24             THE COURT:  Can you do that?

25             PROSPECTIVE JUROR #2:  Yes, your Honor.

1          THE COURT:  Do you have any opinion about the

2    criminal justice system which would affect your ability to

3    be fair?

4          PROSPECTIVE JUROR #2:  No, sir.

5          THE COURT:  Were you, a family member or friend

6    ever the victim of a crime?

7          PROSPECTIVE JUROR #2:  No, sir.

8          THE COURT:  Ever accused of a crime?

9          PROSPECTIVE JUROR #2:  No.

10         THE COURT:  As far as you know, any family member

11   or friend ever accused?

12         PROSPECTIVE JUROR #2:  No.

13         THE COURT:  Any prior jury service?

14         PROSPECTIVE JUROR #2:  Yes.

15         THE COURT:  Civil or criminal?

16         PROSPECTIVE JUROR #2:  Criminal.

17         THE COURT:  How long ago are we talking about?

18         PROSPECTIVE JUROR #2:  Six.

19         THE COURT:  Six years ago?

20         PROSPECTIVE JUROR #2:  Yes.

21         THE COURT:  Was it at 360 Adams or 120

22   Schermerhorn?  Was it in Kings County, I should ask?

23         PROSPECTIVE JUROR #2:  141 Livingston.

24         THE COURT:  That was probably civil.  Was this a

25   six-person jury with two alternates or what?

KL

Voir Dire                                    35

1               PROSPECTIVE JUROR #2:  Yes.

2               THE COURT:   Did the jury actually deliberate?

3               PROSPECTIVE JUROR #2:  Yes, sir.

4               THE COURT:  And did you reach a decision?

5               PROSPECTIVE JUROR #2:  Yes, sir.

6               THE COURT:  Anything about your service on that

7       case that would affect your ability to sit on this case?

8               PROSPECTIVE JUROR #2:  No, sir.

9               THE COURT:  Is there any reason why you could not

10      sit on this case?

11              PROSPECTIVE JUROR #2:  No, sir.

12              THE COURT:  Thank you, ma'am.

13              Mr. Ellis, if you will, please.

14              PROSPECTIVE JUROR #3:  Robert Ellis.

15      Twenty-eight.   I live in East New York.

16              Bachelor's in psychology.  I'm a teacher.

17              Single. No children.THE COURT:  Any areas of

18      interest or hobbies you'd care to mention?

19              PROSPECTIVE JUROR #3:  I'm a musician.

20              THE COURT:  You're in a band or a group?

21              PROSPECTIVE JUROR #3:  Free-lance.

22              THE COURT:  What do you play?

23              PROSPECTIVE JUROR #3:  Piano.

24              THE COURT:  Belong to any organizations you'd

25      care to mention?

KL

1           PROSPECTIVE JUROR #3:  No.

2           THE COURT:  Favorite newspaper?  At least one you

3    read more so than others?

4           PROSPECTIVE JUROR #3:  No.

5           THE COURT:  How do you get your news then?

6    Television or what?

7           PROSPECTIVE JUROR #3:  Basically.

8           THE COURT:  Any friends or relatives in law

9    enforcement?

10          PROSPECTIVE JUROR #3:  No.

11          THE COURT:  Any opinion about the criminal

12   justice system which would affect your ability to be fair?

13          PROSPECTIVE JUROR #3:  No.

14          THE COURT:  Were you, a family member or friend

15   ever the victim of a crime?  Car stolen, house broken into,

16   mugging, anything like that?

17          PROSPECTIVE JUROR #3:  No.

18          THE COURT:  Ever accused of a crime?

19          PROSPECTIVE JUROR #3:  No.

20          THE COURT:  What about a family member or friend?

21          PROSPECTIVE JUROR #3:  Distant friend.

22          THE COURT:  Are you able to talk about that

23   publicly?

24          PROSPECTIVE JUROR #3:  Sure.  I was in junior

25   high school.  A friend of mine was accused of stealing

1      something from a convenience store.

2                      THE COURT:  Okay.  What happened to the case?

3                      PROSPECTIVE JUROR #3:  I don't even know.

4                      THE COURT:  Was there an arrest?  And this was

5      juvenile, so was it taken to Family Court or anything like

6      that or they squashed it?

7                      PROSPECTIVE JUROR #3:  To be honest, I don't

8      know.

9                      THE COURT:  Do you think that circumstance would

10     affect your ability to sit on this case?

11                     PROSPECTIVE JUROR #3:  No.

12                     THE COURT:  Ever sat on a jury before?

13                     PROSPECTIVE JUROR #3:  No, not this far.

14                     THE COURT:  Is there any reason why you couldn't

15     sit?

16                     PROSPECTIVE JUROR #3:  Well, the case was

17     dismissed after the jury selection.

18                     THE COURT:  I'm saying, but so you were on a

19     jury?

20                     PROSPECTIVE JUROR #3:  Well, I was selected but

21     the case was dismissed first day.

22                     THE COURT:  Did you hear any evidence at all?

23                     PROSPECTIVE JUROR #3:  No.

24                     THE COURT:  Was it a criminal case?

25                     PROSPECTIVE JUROR #3:  Civil.

1           THE COURT:  Okay.  Anything about your service on

2    that case that would affect your ability to sit on this

3    case?

4           PROSPECTIVE JUROR #3:  No.

5           THE COURT:  Is there any reason why you could not

6    sit here?

7           PROSPECTIVE JUROR #3:  No.

8           THE COURT:  Thank you, sir.

9           Miss Duda.

10          PROSPECTIVE JUROR #5:  Yolanda Duda.  I'm 42.

11          THE COURT:  Keep your voice up, ma'am.

12          PROSPECTIVE JUROR #5:  I live in Borough Park in

13   Brooklyn.

14          I have master's degree in kindergarten education,

15   but I working in hotel as a room stylist.

16          I'm married.

17          THE COURT:  What does your husband do, what kind

18   of work?

19          PROSPECTIVE JUROR #5:  He works in construction.

20          THE COURT:  How many children?

21          PROSPECTIVE JUROR #5:  I have one child.  She's

22   18 almost.

23          THE COURT:  Any areas of interest or hobbies

24   you'd care to mention?  What sort of things do you do in

25   your leisure time?  Television? Read?

Voir Dire                                    39

1          PROSPECTIVE JUROR #5:  I like to read books,

2    watch television and go outside, I mean ice skating in the

3    winter or go in the mountains.

4          THE COURT:  Do you belong to any organizations

5    you'd care to mention?

6          PROSPECTIVE JUROR #5:  Just working

7    organizations, the union.

8          THE COURT:  Do you have a favorite newspaper, at

9    least one you read more so than others?

10         PROSPECTIVE JUROR #5:  Daily News.  I like to

11   read magazines.

12         THE COURT:  Do you have any friends or relatives

13   in law enforcement?

14         PROSPECTIVE JUROR #5:  No.

15         THE COURT:  Do you have any opinion about the

16   criminal justice system which would affect your ability to

17   be fair?

18         PROSPECTIVE JUROR #5:  No.

19         THE COURT:  Were you, a family member or friend

20   ever the victim of a crime?  House broken into, mugging,

21   anything like that?

22         PROSPECTIVE JUROR #5:  No.

23         THE COURT:  Ever accused of a crime?

24         PROSPECTIVE JUROR #5:  No.

25         THE COURT:  As far as you know, any family member

KL

1       or friend ever accused?

2                   PROSPECTIVE JUROR #5:  No.

3                   THE COURT:  Have you ever sat on a jury before?

4                   PROSPECTIVE JUROR #5:  No.  My first time.

5                   THE COURT:  First time.  Is there any reason why

6       you couldn't sit here?

7                   PROSPECTIVE JUROR #5:  I don't think there's a

8       reason.

9                   THE COURT:  Thank you, ma'am.

10                  Miss Corley.

11                  PROSPECTIVE JUROR #6:  Michelle Corley.

12      Thirty-four.  I live in Crown Heights.

13                  High school.  I'm a travel loan specialist.

14                  I'm married.

15                  THE COURT:  Your husband, what does he do, ma'am?

16                  PROSPECTIVE JUROR #6:  He's a laborer.

17                  THE COURT:  Any children?

18                  PROSPECTIVE JUROR #6:  No.

19                  THE COURT:  Any areas of interest or hobbies

20      you'd care to mention?

21                  PROSPECTIVE JUROR #6:  No.

22                  THE COURT:  Have a favorite newspaper?

23                  PROSPECTIVE JUROR #6:  Yes.  The Daily News.

24                  THE COURT:  Do you belong to any organizations

25      you'd care to mention?

1              PROSPECTIVE JUROR #6:  No, I don't.

2              THE COURT:  Any friends or relatives in law

3       enforcement?

4              PROSPECTIVE JUROR #6:  Yes.

5              THE COURT:  Who do you know?  Judges?  Lawyers?

6              PROSPECTIVE JUROR #6:   Cops.

7              THE COURT:  Do you think those relationships

8       would affect your ability to be fair?

9              PROSPECTIVE JUROR #6:  No.

10             THE COURT:  Do you have any opinion about the

11      criminal justice system which would affect your ability to

12      be fair?

13             PROSPECTIVE JUROR #6:  No.

14             THE COURT:  Were you, a family member or friend

15      ever the victim of a crime?

16             PROSPECTIVE JUROR #6:  Yes.

17             THE COURT:  Who are we talking about?

18             PROSPECTIVE JUROR #6:  I was.

19             THE COURT:  Are you able to talk about it

20      publicly or want to do it privately?

21             PROSPECTIVE JUROR #6:  I'll do it privately.

22             THE COURT:  Okay, fine.

23             Were you, a family member or friend ever accused

24      of a crime?

25             PROSPECTIVE JUROR #6:  Yes.

1                    THE COURT:  We'll to that privately as well.

2                    Any prior jury service or is this your first

3        time?

4                    PROSPECTIVE JUROR #6:  No, it's not the first

5        time.  I never was selected.

6                    THE COURT:  Okay.  Is there any reason why you

7        couldn't sit on this case?

8                    PROSPECTIVE JUROR #6:  No.

9                    THE COURT:  We'll speak about the other things

10       privately, ma'am.  Thank you.

11                   Mr. Lawrence, if you will, please.

12                   PROSPECTIVE JUROR #13:  Dana Lawrence.  I'm 22.

13       Live in East Flatbush.

14                   THE COURT:  I'm sorry, it should be reversed.

15                   Please forgive me.

16                   Go ahead.

17                   PROSPECTIVE JUROR #13:   I'm currently in

18       college; my last year.

19                   I'm single. No children.

20                   I paint and draw.

21                   No organizations.  Don't have a favorite

22       newspaper.

23                   THE COURT:  Any friends or relatives in law

24       enforcement?

25                   PROSPECTIVE JUROR #13:  My cousin is a cop.

Voir Dire                                   43

1           THE COURT:  Do you think that relationship would

2      affect your ability to be fair?

3           PROSPECTIVE JUROR #13:  No.

4           THE COURT:  Do you have any opinion about the

5      criminal justice system which would affect your ability to

6      be fair?

7           PROSPECTIVE JUROR #13:  No.

8           THE COURT:  Were you ever the victim of a crime,

9      ma'am?

10          PROSPECTIVE JUROR #13:  No.

11          THE COURT:  As far as you know, any family member

12     or friend ever the victim of a crime?

13          PROSPECTIVE JUROR #13:  My mom.  Her house was

14     burglarized.

15          THE COURT:  How long ago are we talking about?

16          PROSPECTIVE JUROR #13:  Like nine years ago.

17          THE COURT:  Do you think knowing about that

18     circumstance, would that affect your ability to be fair

19     here?

20          PROSPECTIVE JUROR #13:  No.

21          THE COURT:  Were you, a family member or friend

22     ever accused of a crime?

23          PROSPECTIVE JUROR #13:  No.

24          THE COURT:  Any prior jury service?

25          PROSPECTIVE JUROR #13:  No.

1           THE COURT:  First time?

2           PROSPECTIVE JUROR #13:  Uh-hum.

3           THE COURT:  Is there any reason why you couldn't

4    sit here?

5           PROSPECTIVE JUROR #13:  No.

6           THE COURT:  Thank you very much.

7           Miss Landy, if you will, please.

8           PROSPECTIVE JUROR #13:  Christina Landy.  I'm 20

9    years old.  I live in Marine Park.

10          In college.  Have a high school diploma.  I work

11   in CVS Pharmacy in Kings Plaza.  Single. I have no

12   children.

13          I read and write.

14          I don't have any organizations.  I read The Daily

15   News.

16          My father is a retired police officer and I have

17   several cousins and uncles who are police officers or

18   retired.

19          THE COURT:  Do you think those relationships

20   would affect your ability to be fair?

21          PROSPECTIVE JUROR #14:  I don't think so.

22          THE COURT:  I'm not challenging your choice of

23   words.  When you say "think," does that mean you are

24   uncertain or it's just a matter of speech?

25          PROSPECTIVE JUROR #14:  No.  I'm uncertain.

                          KL

1              THE COURT:  You're uncertain.

2              Counsel, do I have your assurance -- do I have

3       your consents, rather?

4              MR. RODRIGUEZ:  Yes.

5              MS. GREGORY:  Yes.

6              THE COURT:  Because I don't have her assurance.

7              Ma'am, return downstairs to Central Jury.  Leave

8       the questionnaire on the seat.

9              Miss Szplitgejber.

10             PROSPECTIVE JUROR #12:  I don't speak English,

11      that's the problem.

12             THE COURT:  I see.  All right.

13             Miss Coleman, if you will, please.

14             PROSPECTIVE JUROR #11:  My name is Alie Coleman.

15      I live in Canarsie.

16             I went to LIU. I'm a dispatcher for the New York

17      City Transit Authority.

18             I'm divorced.  I don't have any children.

19             And I write short stories for children.

20             I don't belong to any organizations. I read The

21      Daily News and The Post.

22             THE COURT:  Any friends or relatives in law

23      enforcement?

24             PROSPECTIVE JUROR #11:  No, I don't have any.

25             THE COURT:  Do you have any opinion about the

KL

1     criminal justice system which would affect your ability to

2     be fair?

3                    PROSPECTIVE JUROR #11:  No.

4                    THE COURT:  Were you ever the victim of a crime?

5                    PROSPECTIVE JUROR #11:  Yes.

6                    THE COURT:  Are you able to talk about it

7     publicly?

8                    PROSPECTIVE JUROR #11:  Yes.

9                    THE COURT:  What happened?

10                    PROSPECTIVE JUROR #11:  I got robbed in the

11    subway.

12                    THE COURT:  How long ago?

13                    PROSPECTIVE JUROR #11:  1983.

14                    THE COURT:  Did you report that to the police?

15                    PROSPECTIVE JUROR #11:  Yes, I did.

16                    THE COURT:  Were you physically injured during

17    the course of the robbery?

18                    PROSPECTIVE JUROR #11:  Yes.

19                    THE COURT:  Were you hospitalized?

20                    PROSPECTIVE JUROR #11:  Yes.

21                    THE COURT:  How long?

22                    PROSPECTIVE JUROR #11:  About two days.  My arm

23    was broken.

24                    THE COURT:  Okay.  Anybody arrested in connection

25    with that?

1          PROSPECTIVE JUROR #11:  The person we didn't

2     know.  He was not apprehended, the person who did it.

3          THE COURT:  He was?

4          PROSPECTIVE JUROR #11:  Was not.

5          THE COURT:  Do you think that circumstance would

6     affect your ability to sit on a criminal case, ma'am?

7          PROSPECTIVE JUROR #11:  Definitely not, no.

8          THE COURT:  Any friend or family member ever the

9     victim of a crime?

10          PROSPECTIVE JUROR #11:  No, not that I know of.

11          THE COURT:  Ever accused of a crime?

12          PROSPECTIVE JUROR #11:  No.

13          THE COURT:  Any family member or friend ever

14     accused?

15          PROSPECTIVE JUROR #11:  No.

16          THE COURT:  Any prior jury service?

17          PROSPECTIVE JUROR #11:  Yes.

18          THE COURT:  Civil or criminal?

19          PROSPECTIVE JUROR #11:  It was criminal, I think.

20          THE COURT:  How long ago was that?

21          PROSPECTIVE JUROR #11:  That was about seven

22     years.

23          THE COURT:  Was it here in Kings County?

24          PROSPECTIVE JUROR #11:  Yes, it was.

25          THE COURT:  Was it 360 Adams Street?

1          PROSPECTIVE JUROR #11:  That's 360 Adams, I

2     believe.

3          THE COURT:  Do you remember what kind of case it

4     was?

5          PROSPECTIVE JUROR #11:  Rape.

6          THE COURT:  Were you one of the first 12 or were

7     you an alternate juror?

8          PROSPECTIVE JUROR #11:  One of the first 12.

9          THE COURT:  Did the jury deliberate?

10         PROSPECTIVE JUROR #11:  Yes, they did.

11         THE COURT:  Was a verdict reached?

12         PROSPECTIVE JUROR #11:  Yes, it was.

13         THE COURT:  What was the verdict?

14         PROSPECTIVE JUROR #11:  The person was found

15    innocent.

16         THE COURT:  Now, anything about your service on

17    that case that would affect your ability to sit on this

18    case?

19         PROSPECTIVE JUROR #11:  No.  I would just have to

20    listen to the evidence.

21         THE COURT:  Do you remember who the judge was?

22         PROSPECTIVE JUROR #11:  No.  I'm sorry.

23         THE COURT:  Left no impression on you?

24         PROSPECTIVE JUROR #11:  It's been a long time

25    ago.

KL

1              THE COURT:  My name is Lott, L-O-T-T.

2              Is there any reason why you couldn't sit on this

3        case?

4              PROSPECTIVE JUROR #11:   There's no reason.

5              THE COURT:  And you could be a fair juror?

6              PROSPECTIVE JUROR #11:  Definitely.

7              THE COURT:   Mr. Rookwood, please.

8              PROSPECTIVE JUROR ##10:  My name is William

9        Rookwood.   I live in East New York.

10             I have college. I'm a correction officer.

11             I'm married.  I got five children.

12             THE COURT:  Your wife, what does she do, sir?

13             PROSPECTIVE JUROR #10:  She's a parole officer.

14             THE COURT:  Any areas of interest or hobbies

15       you'd care to mention?

16             PROSPECTIVE JUROR #10:  I'm a cyclist and I do

17       scuba diving.

18             THE COURT:  Belong to any organizations other

19       than professional organizations?

20             PROSPECTIVE JUROR #10:  No.

21             THE COURT:  Favorite newspaper, at least one you

22       read more than others?

23             PROSPECTIVE JUROR #10:  I watch a lot of

24       television.

25             THE COURT:  A lot of television?

1          PROSPECTIVE JUROR #10:  Yes.

2          THE COURT:  Do you watch All My Children, General

3     Hospital?

4          PROSPECTIVE JUROR #10:  No.  Just sports.

5          THE COURT:  I record mine.  Yeah, I watch sports

6     too.

7          You obviously know people in law enforcement.

8     The question is would you allow those relationships to

9     affect your ability to be fair?

10          PROSPECTIVE JUROR #10:  Not at all.

11          THE COURT:  Do you have any opinion about the

12    criminal justice system which would affect your ability to

13    be fair?

14          PROSPECTIVE JUROR #10:  No.

15          THE COURT:   Were you ever the victim of a crime,

16    sir?

17          PROSPECTIVE JUROR #10:  No.

18          THE COURT:  As far as you know, any family member

19    or friend ever the victim of a crime?

20          PROSPECTIVE JUROR #10:  About in 1988 my car was

21    stolen, that's about it.

22          THE COURT:  Do you think that circumstance, would

23    that affect your ability to sit on a criminal case?

24          PROSPECTIVE JUROR #10:  Not at all.

25          THE COURT:  Were you ever accused of a crime?

1           PROSPECTIVE JUROR #10:  No.

2           THE COURT:  As far as you know, any family member

3      or friend ever accused?

4           PROSPECTIVE JUROR #10:  No.

5           THE COURT:  Any prior jury service?

6           PROSPECTIVE JUROR #10:  Yes.

7           THE COURT:  When was that?

8           PROSPECTIVE JUROR #10:  Couple of years ago.  I

9      wasn't selected.

10          THE COURT:  You came in but weren't selected?

11          PROSPECTIVE JUROR #10:  Right.

12          THE COURT:  Anything about that experience that

13     would affect your ability to sit on this case?

14          PROSPECTIVE JUROR #10:  No.

15          THE COURT:  Is there any reason why you couldn't

16     sit on this case?

17          PROSPECTIVE JUROR #10:  No.

18          THE COURT:  Thank you very much.

19          Mr. Robinson, if you will, please, sir.

20          PROSPECTIVE JUROR #9:  My name is Barry Robinson.

21     I live on Nostrand Avenue.

22          THE COURT:  The area of Brooklyn you reside in;

23     the area not the address.

24          PROSPECTIVE JUROR #9:  Brooklyn, Flatbush.

25          THE COURT:  Educational background.  College?

1        High school?

2                    PROSPECTIVE JUROR #9:  No, no.

3                    THE COURT:  High school?

4                    PROSPECTIVE JUROR #9:  None.

5                    THE COURT:  Okay.  Are you working?

6                    PROSPECTIVE JUROR #9:  Yes, sir.

7                    THE COURT:  What kind of work do you do?

8                    PROSPECTIVE JUROR #9:  Porter.

9                    THE COURT:  Married?  Single?  Divorced?

10                   PROSPECTIVE JUROR #9:  Married.

11                   THE COURT:  Your wife, what does she do, sir?

12                   PROSPECTIVE JUROR #9:  She's a home attendant.

13                   THE COURT:  Any children?

14                   PROSPECTIVE JUROR #9:  Two.

15                   THE COURT:  Any areas of interest or hobbies

16       you'd care to mention?  What sort of things do you do when

17       you're not working?  Atlantic City or the horses or --

18                   PROSPECTIVE JUROR #9:  Watch TV.

19                   THE COURT:  Watch TV. All right.  You don't watch

20       the afternoon TV?

21                   PROSPECTIVE JUROR #9:  No, sir.  I work.

22                   THE COURT:  Do you belong to any organizations

23       you'd care to mention?

24                   PROSPECTIVE JUROR #9:  No, sir.

25                   THE COURT:  Favorite newspaper?

KL

1          PROSPECTIVE JUROR #9:  None of them.

2          THE COURT:  How do you get your news?  Through

3     television?

4          PROSPECTIVE JUROR #9:  Yes, sir.

5          THE COURT:  Do you have any friends or relatives

6     in law enforcement?

7          PROSPECTIVE JUROR #9:  No, sir.

8          THE COURT:  Do you have any opinion about the

9     criminal justice system which would affect your ability to

10    be fair?

11         PROSPECTIVE JUROR #9:  No, sir.

12         THE COURT:  Were you, a family member or friend

13    ever the victim of a crime?

14         PROSPECTIVE JUROR #9:  I don't know.

15         THE COURT:  Ever accused of a crime?

16         PROSPECTIVE JUROR #9:  I don't know of one.

17         THE COURT:  Any family member or friend ever

18    accused, as far as you know?

19         PROSPECTIVE JUROR #9:  No.

20         THE COURT:  Is this yours first time being called

21    for jury duty?

22         PROSPECTIVE JUROR #9:  Yes, sir.

23         THE COURT:  Is there any reason why you could not

24    sit on this case?

25         PROSPECTIVE JUROR #9:  I don't know, sir.

Case 1:11-cv-05172-SLT-LB   Document 61-1   Filed 06/05/13   Page 54 of 339 PageID #: 2168

1          THE COURT:  No?

2          PROSPECTIVE JUROR #9:  I don't know.

3          THE COURT:  Okay.  Thank you.

4          Miss Francois.

5          PROSPECTIVE JUROR #8:  My name is Muriel

6     Francois.  I live in East Flatbush, Clarkson.   I'm

7     married.

8          THE COURT:  All right.  The educational

9     background.

10         PROSPECTIVE JUROR #8:  I'm a college student.

11         THE COURT:  You're married?

12         PROSPECTIVE JUROR #8:  Yes.

13         THE COURT: Are you working?

14         PROSPECTIVE JUROR #8:  No.  I'm a student.

15         THE COURT:  Okay.  All right.  Your husband, what

16    does he do?

17         PROSPECTIVE JUROR #8:  My husband is a driver, a

18    yellow cab.

19         THE COURT:  Any children, ma'am?

20         PROSPECTIVE JUROR #8:  No.

21         THE COURT:  Any areas of interest or hobbies

22    you'd care to mention?

23         PROSPECTIVE JUROR #8:  My hobby is go to church,

24    the school and then sometimes I read newspaper.

25         THE COURT:  What newspaper do you read?

1          PROSPECTIVE JUROR #8:  I read Daily News and

2     recently my Koran newspaper.

3          THE COURT:  Do you have any friends or relatives

4     in law enforcement?  Know any lawyers, judges?

5          PROSPECTIVE JUROR #8:  No.

6          THE COURT:  Police officers?

7          PROSPECTIVE JUROR #8:   I have my father's cousin

8     is a police officer.

9          THE COURT:  Do you think that relationship, at

10    least knowing about that relationship, would that affect

11    your ability to be fair?

12          PROSPECTIVE JUROR #8:  I don't think so.

13          THE COURT:  Do you have any opinion about the

14    criminal justice system which would affect your ability to

15    be fair?

16          PROSPECTIVE JUROR #8:  No, I don't think so.

17          THE COURT:  Were you, a family member or friend

18    ever the victim of a crime?  Car stolen, house burglarized,

19    anything like that?

20          PROSPECTIVE JUROR #8:  No.

21          THE COURT:  Were you ever accused of a crime?

22          PROSPECTIVE JUROR #8:  No.

23          THE COURT:  What about a family member or friend

24    ever being accused?

25          PROSPECTIVE JUROR #8:   I don't have no friends.

KL

1          THE COURT:  All right:   You don't?

2          PROSPECTIVE JUROR #8:  No.

3          THE COURT:  Have you ever served on a jury

4     before?

5          PROSPECTIVE JUROR #8: Yes.

6          THE COURT:  Civil or criminal?

7          PROSPECTIVE JUROR #8:  It was criminal.

8          THE COURT:  How long ago was that?

9          PROSPECTIVE JUROR #8:  That was 1996.

10          THE COURT:  Now, was it here in Kings County?

11          PROSPECTIVE JUROR #8:  It was in -- I don't

12     remember.

13          THE COURT:  Were you living here in Brooklyn at

14     the time?

15          PROSPECTIVE JUROR #8:  Yes.  In the same area.

16          THE COURT:  The case, do you remember what kind

17     of charge was involved?

18          PROSPECTIVE JUROR #8:  I think this was a

19     criminal case, but it's like a death penalty case.

20          THE COURT:  Let me ask you this:  How many jurors

21     were there?  Were there twelve or were there six?

22          PROSPECTIVE JUROR #8:  I don't remember how many,

23     but we have a lot of people there.

24          THE COURT:  Were you actually on the jury that

25     decided the case?

1          PROSPECTIVE JUROR #8:  They were asking me

2     questions, but I wasn't staying on this case.

3               THE COURT:  So they let you go?

4               PROSPECTIVE JUROR #8:  I doing two days only.

5               THE COURT:  It's probably a civil case, probably

6     a civil case.

7               Is there any reason why you couldn't sit on this

8     case?

9               PROSPECTIVE JUROR #8:  Just because I go to

10    school, that's the only reason.

11              THE COURT:  What are your hours at school?

12              PROSPECTIVE JUROR #8:  I'm taking the --

13              THE COURT:  Your hours.  Do you go in the

14    morning?

15              PROSPECTIVE JUROR #8:  Yes.  I have classes at 2

16    o'clock starting.

17              THE COURT:  Two o'clock.  That would present a

18    problem, for us at least.

19              Counsel, do I have your consents?

20              MS. GREGORY:  Yes.

21              MR. RODRIGUEZ:  Yes.

22              THE COURT:  Ma'am, you're not off jury duty, just

23    off this case.  I guess what you should probably do is go

24    downstairs and tell them you're a student.  And good luck.

25    You're off this case, not off jury duty.

1              THE COURT:  Mr. Connor.

2              PROSPECTIVE JUROR #7:  DeShawn Connor, 23.

3       Brownsville.

4              High school graduate.  I work for Century 21.

5              MR. RODRIGUEZ:  I can't here.

6              THE COURT:  He works for Century 21.

7              Just back up.  Your first name again.

8              PROSPECTIVE JUROR #7:  DeShawn.

9              THE COURT:  You're 23?

10             PROSPECTIVE JUROR #7:  Yes.

11             THE COURT:  Area of Brooklyn you reside in?

12             PROSPECTIVE JUROR #7:  Brownsville.

13             THE COURT:  High school, you said?

14             PROSPECTIVE JUROR #7:  Yes.

15             THE COURT:  And you're working?

16             PROSPECTIVE JUROR #7:  Century 21.

17             THE COURT:  Married? Single? Divorced?

18             PROSPECTIVE JUROR #7:  Single.

19             THE COURT:  Any children?

20             PROSPECTIVE JUROR #7:  No.

21             THE COURT:  Any areas of interest or hobbies

22      you'd care to mention?

23             PROSPECTIVE JUROR #7:  No.

24             THE COURT:  No sports?

25             PROSPECTIVE JUROR #7:  No.

1          THE COURT:  Do you belong to any organizations

2     you'd care to mention?

3          PROSPECTIVE JUROR #7:  No.

4          THE COURT:  Favorite newspaper?

5          PROSPECTIVE JUROR #7:  No.

6          THE COURT:  How do you get your news then?

7     Television?

8          PROSPECTIVE JUROR #7:  Channel One.

9          THE COURT:  Channel One, Okay.

10          Any friends or relatives in law enforcement?

11          PROSPECTIVE JUROR #7:  No.

12          THE COURT:  Do you have any opinion about the

13     criminal justice system which would affect your ability to

14     be fair?

15          PROSPECTIVE JUROR #7:  No.

16          THE COURT:  Were you ever the victim of a crime?

17     Car stolen, house burglarized, anything like that?

18          PROSPECTIVE JUROR #7:  No.

19          THE COURT:  What about a friend or family member

20     ever been the victim of a crime?

21          PROSPECTIVE JUROR #7:  No.

22          THE COURT:   Ever accused of a crime?

23          PROSPECTIVE JUROR #7:  No.

24          THE COURT:  As far as you know, any family member

25     or friend ever accused?

1          PROSPECTIVE JUROR #7:  No.

2          THE COURT:  Any prior jury service, or this is

3     your first time?

4          PROSPECTIVE JUROR #7:  First time.

5          THE COURT:  Any reason why you could not sit on

6     this case?

7          PROSPECTIVE JUROR #7:  No.

8          THE COURT:  All right.

9          Folks, I need to speak with Miss Corley

10    privately.  Once that's done, we'll come back and I'll

11    allow at least one of the lawyers, maybe both of them, to

12    speak with you.  Just step out of the courtroom, please.

13    Don't discuss this case.  We'll have you back in a moment.

14          Miss Corley, allow them to get past you, but then

15    remain.

16          (Whereupon, the prospective jurors exited the

17    courtroom with the exception of Prospective Juror #6.)

18          THE COURT:  Miss Corley, if you will, you had

19    indicated someone had been the victim of a crime?

20          PROSPECTIVE JUROR #6:  It was myself.

21          THE COURT:  What happened?

22          PROSPECTIVE JUROR #6:  It was a mugging.

23          THE COURT:  How long ago was that?

24          PROSPECTIVE JUROR #6:  Maybe ten years ago.

25          THE COURT:  Were you physically injured during

KL

Voir Dire                                61

1     the course of the mugging?

2              PROSPECTIVE JUROR #6:  No.

3              THE COURT:  Did you go to the hospital or did you

4     engage any counseling after the mugging?

5              PROSPECTIVE JUROR #6:  Not in counseling, no.  It

6     was reported and the person was convicted.

7              THE COURT:  Okay.  So the person -- it was

8     reported and an arrest was made and there was a conviction?

9              PROSPECTIVE JUROR #6:  Uh-hum.

10             THE COURT:  Did you have to testify?

11             PROSPECTIVE JUROR #6:  Yes.

12             THE COURT:  That happened here in Kings County?

13             PROSPECTIVE JUROR #6:  Yes.

14             THE COURT:  Anything about that circumstance that

15    would affect your ability to sit on this case?

16             PROSPECTIVE JUROR #6:  No.

17             THE COURT:  All right.  Do you remember who the

18    assistant district attorney was?

19             PROSPECTIVE JUROR #6:  I can't remember.

20             THE COURT:  What about the police officers who

21    were involved, do you remember who they were?

22             PROSPECTIVE JUROR #6:  No.

23             THE COURT:  Now, what about somebody being

24    accused of a crime?

25             PROSPECTIVE JUROR #6:  Yes.

1          THE COURT:  Who was that?

2          PROSPECTIVE JUROR #6:  That was my brothers.

3          THE COURT:  What was he accused of doing?

4          PROSPECTIVE JUROR #6:  We're not that close, but

5    I know that they're, I think -- I'm not sure what they were

6    convicted of.

7          THE COURT:  You say he was convicted of

8    something?

9          PROSPECTIVE JUROR #6:  Yes.

10         THE COURT:  How long ago was he convicted? Is it

11   one brother or more than one brother?

12         PROSPECTIVE JUROR #6:  More than one brother.  It

13   was two.

14         THE COURT:  Let me ask you this:  The two

15   brothers, now are they currently incarcerated someplace?

16         PROSPECTIVE JUROR #6:  Yes.

17         THE COURT:  Is that Upstate someplace?

18         PROSPECTIVE JUROR #6:  Yes.

19         THE COURT:  So they were convicted of felonies?

20         PROSPECTIVE JUROR #6:  Right.

21         THE COURT:  Did you ever go to any of the

22   proceedings involving the brothers?

23         PROSPECTIVE JUROR #6:  No.

24         THE COURT:  How did you find out?  Through the

25   other family members?

                          KL

1          PROSPECTIVE JUROR #6:  Yes.

2          THE COURT:  Do you have any opinion, do you have

3     any opinion as to whether they were treated fairly or

4     unfairly?

5          PROSPECTIVE JUROR #6:  I don't have an opinion.

6          THE COURT:  Does your family have any opinion as

7     to whether your brothers were treated fairly or unfairly?

8          PROSPECTIVE JUROR #6:  No.

9          THE COURT:  Do you think the fact that you have

10    two brothers who were incarcerated, who are incarcerated,

11    would that affect your ability to be fair?

12         PROSPECTIVE JUROR #6:  No.

13         THE COURT:  Now, as far as you know, were they

14    arrested and convicted here in Kings County?

15         PROSPECTIVE JUROR #6:  Yes.

16         THE COURT:  So the same office, that was the DA's

17    office, that sort of represented you when you were a

18    complainant, prosecuted your brothers, is that correct?

19         PROSPECTIVE JUROR #6:  I have no idea.

20         THE COURT:  Okay.  All right.

21         Either side, any questions about her being the

22    victim or her brothers being accused?  I'll only allow you

23    to ask those questions here privately now.  Either side,

24    anything?

25         Miss Gregory?

                            KL

1            MS. GREGORY:  I don't have anything.

2            THE COURT:  Mr. Rodriguez?

3            MR. RODRIGUEZ:  No.

4            THE COURT:  Ma'am, just step outside.

5            (Whereupon, Prospective Juror #6 exited the

6    courtroom.)

7            THE COURT:  Miss Gregory, how long do you think

8    your voir dire is going to be?

9            MS. GREGORY:  About 15 minutes, your Honor.

10           THE COURT:  That will take us beyond the lunch

11   hours.  Let's get the jurors back in.

12           I tell you what, tell everybody back outside

13   2:15.  Not 2:30, 2:15 promptly.  Okay?

14           COURT OFFICER:  Yes, Judge.

15           THE COURT:  With that, I will see you all this

16   afternoon.  Try to get here a little before 2:15, Okay?

17   But we're going to try to start promptly at 2:15.

18           You might want to wait and let the jurors clear

19   the floor before counsel leaves, though.

20           MR. RODRIGUEZ:  Yeah, I'm not going to leave yet.

21           (Whereupon, the luncheon recess was taken.)

22

23

24

25

Proceedings                                    65

1              AFTERNOON SESSION:

2                      (Case on trial continued.  Whereupon the jury

3      panel entered the courtroom and resumed their seats.)

4                      MR. RODRIGUEZ:  Before we proceed, may we

5      approach one second, your Honor?

6                      THE COURT:  Certainly may.

7                      (Off-the-record bench conference.)

8                      (Whereupon, the following occurred at sidebar,

9      out of the presence and hearing of the prospective jurors:)

10                     MR. RODRIGUEZ:  I have a problem with the way the

11     building is, I guess set up.  My client's in.  And he's in,

12     and we go through the machinations to try to avoid this

13     jury from knowing that he's in, such that we allow them to

14     leave, we leave later and such.  But in coming into the

15     courtroom today, we could not get in.  The jurors were in

16     the hallway and obviously saw myself, obviously saw the

17     assistant out in the hallway.  My client was not there.

18     When they came in, he was seated at the table, the defense

19     table, and in close proximity to two court officers.  There

20     is a possibility that I believe that this veneer is tainted

21     as a result of the manner in which the jurors were brought

22     in and he was there and the fact that they were present in

23     the hallway as we came in.  Because now I believe that

24     they're aware that my client's in.

25                     THE COURT:  Miss Gregory?

                                   KL

Proceedings                    66

1          MS. GREGORY:  Your Honor, I don't have any real

2     position on it.

3          Obviously we were outside with the jurors.  It's

4     happened in the other building as well, that situation has

5     happened to me.  So I don't --

6          THE COURT:  Well, I'm not going to be

7     presumptuous in that regard either.

8          Let me just say this, counsel:  The Court was on

9     the bench, the clerk was there, the reporter was there, the

10    court officers were in place.  The jurors could assume that

11    we were there and you were late.

12         MR. RODRIGUEZ:  Well, the problems is the doors

13    were locked; we couldn't get in.

14         THE COURT:  Only you would know that, counsel.

15    When the court officer came, he let people in at that

16    point.

17         MR. RODRIGUEZ:  No.  The problem was I came and

18    the assistant district attorney both came and attempted to

19    open the door and the doors were locked.

20         MS. GREGORY:  That's true.  Then we went around.

21         MR. RODRIGUEZ:  Then we went around to get away.

22    And it was obvious that the doors were locked.  And all the

23    jurors were sitting and standing right near the door.

24         THE COURT:  But they were told to remain outside.

25    I understand.  Okay, you have your objection.

                         KL

Proceedings                                    67

1              MR. RODRIGUEZ:  I made my record.

2              THE COURT:  And the Court feels at this point

3    that your position is rather presumptuous.  And if you feel

4    like you want to voir dire on it, you can, but you do it at

5    your peril.

6              MR. RODRIGUEZ:  I made my record.  I don't think

7    I'm going to move on it.

8              THE COURT:  Okay.

9              (Open court.)

10             THE CLERK:  Case on trial.  All parties are

11   present.

12             THE COURT:  Counsel, Juror Number Twelve had

13   indicated that -- Prospective Juror Number Twelve had

14   indicated she has some language problem.  Does either side

15   want to pursue this any further or do I have your consents

16   in terms of asking her to return to Central Jury?

17             MR. RODRIGUEZ:  I will consent, your Honor.

18             MS. GREGORY:  I consent, your Honor.

19             THE COURT:  Miss Gregory, please proceed.

20             Ten minutes or less, ma'am, please.

21             MS. GREGORY:  Thank you, your Honor.

22             Good afternoon, ladies and gentlemen.

23             Again, my name is Miss Gregory.  I'm an assistant

24   DA, and I'll be handling this case.

25             This is the time both of us lawyers get to talk

KL

1    to you.  And after the trial starts, if you're selected as

2    a juror in this case, we won't be able to talk to you

3    anymore directly and have you answer questions.  So I'm

4    going to ask some questions of the group here.

5             And I'd ask that the people in the audience

6    listen too, so when it's your turn if you have a response

7    to something that's been raised here, you can let us know

8    too.  Okay?

9             And as the Judge said, there are no right or

10   wrong answers.  We're just trying to get a feel if you'll

11   be a good juror for this particular case.  And if not, then

12   there are other cases.

13            I believe the Judge was explaining that, you

14   know, the witnesses in this case are going to come in here

15   and they're going to get in that chair and they're going to

16   answer questions, and that's going to be testimony.

17            Miss Ebron, so the witness is going to take the

18   stand and give responses to questions that are asked of him

19   or her.

20            What I'm trying to get across to you and the rest

21   of the potential jurors here is that what that witness

22   says, that is testimony.

23            PROSPECTIVE JUROR #1:  Yes.

24            MS. GREGORY:  Does everyone understand that?  So

25   it's the same as if there were physical evidence, say if

KL

1    there was a robbery and somebody had a weapon.

2              MR. RODRIGUEZ:  Objection, your Honor.

3              THE COURT:  What's the objection, counsel?

4              MR. RODRIGUEZ:  It's not the same as physical

5    evidence.  And it may -- there are many distinctions

6    between what physical evidence is and what testimonial

7    evidence is.

8              MS. GREGORY:  I'll rephrase it, your Honor.

9              MR. RODRIGUEZ:  Thank you.

10             THE COURT:  Just disregard the colloquy between

11   counsel.  Also the colloquy between counsel and the Court.

12             Please understand that anything these lawyers say

13   at this point, it's not evidence.  They're trying to elicit

14   an opinion from you.

15             Please proceed.

16             MS. GREGORY:  Thank you, your Honor.

17             Miss Small-English, again, if I mispronounce one

18   of your names, let me know.  And I apologize in advance.

19             What if in an instance -- let's say you were

20   picked as a juror for this trial and you hear from the one

21   witness in the case, and that's the person that the crime

22   happened to.  And that's the only thing you heard.  There

23   were no other eyewitnesses; just had this one person coming

24   in and telling you what happened to them on this one

25   particular occasion.

KL

1          Let's say you believed that witness; you found

2     them to be credible and you believed them beyond a

3     reasonable doubt.

4          Is there anything about the fact that it was just

5     one witness that you'd be basing your decision on as a

6     juror, is there anything about the way that you were raised

7     or your life experience that you would say, "Okay, I didn't

8     have a problem with what that person was saying, but I need

9     more than just that one witness"?

10         PROSPECTIVE JUROR #2:  No.  I have to hear what

11    she had to say.

12         MS. GREGORY:  So if you found that witness

13    believable, you'd be able to base a decision just on that

14    one witness?

15         PROSPECTIVE JUROR #2: Yes.

16         MS. GREGORY:  What about you, Mr. Ellis?

17         PROSPECTIVE JUROR #3:  No.

18         MS. GREGORY:  You wouldn't be able to?

19         THE COURT:  Mr. Ellis, the law is simply this:

20    It's not a question of the number of witnesses.  It's the

21    quality of the testimony.  You can convict on the basis of

22    one witness, provided you believe the witness beyond a

23    reasonable doubt.

24         PROSPECTIVE JUROR #3:  If the witness' testimony

25    was sufficient, then I would have to.

Voir Dire                                                71

1          THE COURT:  Unfortunately, she did not phrase it

2     that way.  It's not the number of witnesses, it's the

3     quality of the testimony.  And you can convict on the basis

4     of one witness, provided you believe that witness beyond a

5     reasonable doubt.

6          Okay?

7          PROSPECTIVE JUROR #3:  Okay.

8          MS. GREGORY:  So you'd be able to follow the

9     Judge's ruling if you believed the person?  I'm not saying

10    if you didn't.

11         PROSPECTIVE JUROR #3:  Right.

12         MS. GREGORY:  Is there anybody here who'd say

13    "no.  I'd need more than just that one person"?

14         What about you, Miss Lawrence?

15         PROSPECTIVE JUROR #13:  It's just depending on

16    how the witness put their testimony across.  If it was

17    jumbled --

18         MS. GREGORY:  Okay.  But the point that I had

19    made with Miss English was that if you believed the person.

20         PROSPECTIVE JUROR #13: If I believed them --

21         MS. GREGORY:  Right.  And there's nothing that --

22    I mean, you haven't heard anything yet, so you don't know.

23         PROSPECTIVE JUROR #13: No.

24         MS. GREGORY:  But if you believed the person, the

25    fact that it was just one person --

1    PROSPECTIVE JUROR #13:  That would be good.

2    MS. GREGORY:  Okay, thank you.

3    Miss Duda, good afternoon.  How are you?

4    PROSPECTIVE JUROR #5:  Good afternoon.

5    MS. GREGORY:  Is it a fair thing to say that

6    people react to stressful situations differently?

7    PROSPECTIVE JUROR #5:  Yes.

8    MS. GREGORY:  If the witness in this case comes

9    in and explains what happened to her and how she reacted,

10   and if you were selected as a juror in this case and you

11   thought to yourself, "I wouldn't have reacted that way,"

12   would that automatically make you disqualify what the

13   witness had to say?

14   PROSPECTIVE JUROR #5:  No.  You can't put

15   yourself in the trial.  I would have to listen and believe

16   this person.

17   MR. RODRIGUEZ:  I'm sorry, your Honor.

18   I couldn't hear you.

19   PROSPECTIVE JUROR #5:  I said you can't put your

20   personality, your feelings, inside the trial.  I mean, you

21   have to objectively, like --

22   MS. GREGORY:  Treat them objectively?

23   PROSPECTIVE JUROR #5: Yes.

24   THE COURT:  That's absolutely right, ma'am.

25   PROSPECTIVE JUROR #5:  Excuse me?

KL

Voir Dire                                    73

1        THE COURT:  That's absolutely right.

2        MS. GREGORY:  So it's fair to say that people

3    have different reactions to something that they might

4    perceive as stressful?

5        PROSPECTIVE JUROR #5:  Yes.

6        MS. GREGORY:  Miss Corley, good afternoon.  How

7    are you?

8        PROSPECTIVE JUROR #6:  I'm Okay.

9        MS. GREGORY:  What if you heard that the witness

10   was, you know, coming home late.  I believe the Judge

11   indicated that the crime in this case happened between 4

12   and 5 o'clock in the morning.  And the witness in this case

13   is a young woman in her twenties.  Does that fact alone,

14   that someone maybe was out doing something, that you'd

15   think, "well, if the person wasn't out at that hour of the

16   morning or that early in the morning," you know, "you

17   shouldn't have been out," do you feel -- let me ask you, do

18   you feel just because someone was out late, they don't

19   deserve the protection of the law?

20       PROSPECTIVE JUROR #6:  No.

21       MS. GREGORY:  Is there anybody that doesn't agree

22   with what Miss Corley's opinion was?

23       Mr. Connor, how are you?

24       PROSPECTIVE JUROR #7:  All right.

25       MS. GREGORY:  You understand this case is about a

KL

1    sexual assault?  That's what the Judge indicated.

2              PROSPECTIVE JUROR #7:  (Shakes head up and down.)

3              MS. GREGORY:  Do you think there's any specific

4    way that a person who is the complaining witness in that

5    type of case, a sexual assault, do you think there's any

6    way that they should behave when they're telling you about

7    that incident?  Do you expect them to cry?  Do you expect

8    them to be one way or another?

9              PROSPECTIVE JUROR #7:  No.

10             MS. GREGORY:  Is it fair to say that, you know,

11   the victim, the witness in this case, might cry, or might

12   not?

13             PROSPECTIVE JUROR #7: Yeah.

14             MS. GREGORY:  And that's something that some of

15   your other people had said that I'm going to ask you if you

16   agree with, is it not based on so much how the witness says

17   something, but whether you believe it or not and whether

18   you find it credible?

19             PROSPECTIVE JUROR #7: Yes.

20             MS. GREGORY:  So not more or less believable if

21   someone cries or not?

22             PROSPECTIVE JUROR #7:  No.

23             MS. GREGORY:  Could you imagine, Mr. Robinson,

24   that a witness in a sexual assault case might not cry when

25   she comes in to testify?  Could you imagine that scenario?

1      PROSPECTIVE JUROR #9:  No.

2          MS. GREGORY:  What if the witness had to like

3  steel herself to come in, you know, and she had to be

4  stoic?

5          MR. RODRIGUEZ:  Objection, your Honor.

6          THE COURT:  Yeah, sustained.

7          MS. GREGORY:  Well, let me ask you, if the

8  witness didn't cry --

9          MR. RODRIGUEZ:  Objection.

10          THE COURT:  What's the objection, counsel?

11          MR. RODRIGUEZ:  She says if the witness -- do you

12  want me to make the objection right now?

13          THE COURT:  Sure.

14          What I'm saying at this point is this:  Nothing

15  she's saying is evidence.  Is it conceivable to you that a

16  person can come in and tell a story without tears or is it

17  conceivable the person can come in and tell a story with

18  tears.  Both answers should be yes.

19          The question ultimately is you must base your

20  decision on the quality of the testimony.  As Miss Duda

21  said, you've got to be objective.  You cannot allow that to

22  influence the decision you make here.

23          PROSPECTIVE JUROR #9:  Yes, sir.

24          THE COURT:  Please proceed.

25          MS. GREGORY:  Thank you, your Honor.

1          Mr. Coleman, how are you?

2          PROSPECTIVE JUROR #10:  Rookwood.

3          MS. GREGORY:  I'm sorry.

4          I'm going to ask you, you've heard that this

5    incident happened in 2002, and now here we are in 2005.  Do

6    you think that time affects people's recall?

7          PROSPECTIVE JUROR #10:  I guess so.

8          MS. GREGORY:  Okay.  So let me ask you, if I was

9    asking you about what you had for dinner yesterday, you'd

10   have a pretty good recall about that?

11         PROSPECTIVE JUROR #10:  Yes.

12         MS. GREGORY:  And then if I asked you today, you

13   know, what you had a couple of months ago on a specific

14   day, your recall might not be as --

15         PROSPECTIVE JUROR #10:  Good as yesterday.

16         MS. GREGORY:  Okay.

17         Can you understand, and bear -- not bear.  Could

18   you understand that a person who gave their account of how

19   something happened on more than one occasion and then time

20   passed and then they came to you during the trial, you're a

21   witness -- you're a juror in that trial and --

22         MR. RODRIGUEZ:  Objection.

23         THE COURT:  I don't know exactly -- look, the

24   fact that you may not be able to recall what you had for

25   dinner say two weeks ago doesn't mean you didn't have

Voir Dire                               77

1      dinner.  And ultimately that's the issue you have to decide

2      here, was a crime committed and did the defendant do it, on

3      the basis of whatever this witness has to say and what

4      other evidence they have.

5                  Can you do that?

6                  PROSPECTIVE JUROR #10: Yes, sir.

7                  MS. GREGORY:  I'm just going to delve in a little

8      bit further on that.

9                  If the person didn't use the exact same words as

10     they might have used three years ago than they're using

11     today, would that automatically make you disqualify what

12     they had to say and not believe them?

13                 PROSPECTIVE JUROR #10:  No.  I'd have to listen

14     to what the evidence is at this time and judge them.

15     Because I can't judge them on the last statements.

16                 MS. GREGORY:  Right.  And I think it's fair to

17     say, obviously, big points of your life, an account of

18     something that happened to you, you may recall, but not

19     every specific individual point would you necessarily

20     recall, and that doesn't necessarily mean that it didn't

21     happen?

22                 PROSPECTIVE JUROR #10:  Right.  At this point,

23     yeah.

24                 MS. GREGORY:  Miss Coleman, good afternoon.  How

25     are you?

KL

1           PROSPECTIVE JUROR #11:  Hi.

2           MS. GREGORY:  Do you have a certain image in your

3    head -- you told us that you read the papers and you watch

4    television?

5           PROSPECTIVE JUROR #11:  Yes.

6           MS. GREGORY:  Do you have any specific image in

7    your head of what a sex offender looks like?

8           PROSPECTIVE JUROR #11:  No.  It could be --

9           MR. RODRIGUEZ:  Objection.

10          THE COURT:  The objection is sustained.  The

11   objection is sustained.

12          MS. GREGORY:  Is it fair to say that a sex

13   offender could look like anybody?

14          MR. RODRIGUEZ:  Objection, your Honor.

15          THE COURT:  Sustained.

16          PROSPECTIVE JUROR #11:  Yes.

17          THE COURT:  I understand that.

18          Ma'am, look, you may have some preconceived

19   notions.  They can't come in to play here.  They really

20   can't.  You have to look at this with a blank mind and

21   examine the evidence objectively.

22          PROSPECTIVE JUROR #11:  Yes.

23          THE COURT:  That's what you have to do.

24          MS. GREGORY:  Miss Lawrence, if you were selected

25   as a juror in this case and you sat and you listened

                              KL

Voir Dire                                    79

1    thoughtfully to the evidence that you heard in the case and

2    you looked at any physical evidence that came into the

3    case, if you believed that I had presented my case and you

4    found the witnesses credible beyond a reasonable doubt,

5    would you be able to come back with a guilty verdict, if

6    you believed that?

7                   PROSPECTIVE JUROR #13:  Yes.

8                   MS. GREGORY:  How about the rest of you?

9    Is there anybody here that couldn't do that?  Obviously you

10   haven't heard anything yet.  But I'm saying, if you were

11   selected and you sat through this all and you believed the

12   evidence beyond a reasonable doubt, would you be able to

13   come back with a guilty verdict?

14                  PROSPECTIVE JUROR #11:  Yes.

15                  THE COURT:  Lawyers try to make this like law

16   school.

17                  Let me say this, they want to ask it, in any

18   event, this is the rule:  If after hearing the evidence you

19   have a reasonable doubt as to defendant's guilt, you must

20   acquit.

21                  If you feel based on the evidence he is guilty

22   beyond a reasonable doubt, you must convict.

23                  That's the rule.  You have no choice.

24                  Please proceed.

25                  MS. GREGORY:  That's all, your Honor.  Thank you.

                              KL

1          Thank you ladies and gentlemen.

2          THE COURT:  Mr. Rodriguez.

3          MR. RODRIGUEZ:  Thank you.

4          Ladies and gentlemen, good afternoon.

5          Again, as Miss Gregory stated, I ask that you all

6     listen so that we can avoid asking the same questions

7     continuously.  All right?

8          And if you have any questions, during the course

9     of while I'm asking questions, if you have a question, you

10    have a concern about your ability to be a fair juror,

11    please, please, now is the time to say something.

12         Voir dire means to speak the truth.  So this is

13    the time to speak the truth.  This is what this is, voir

14    dire, speak the truth.

15         And the reason for that is that Jose Fuentes sits

16    here charged with a very serious crime.  So we need whoever

17    is going to make the decision about whether or not he's

18    guilty or innocent of charges brought from the prosecution,

19    we need to know that you can view these charges fairly; not

20    be swayed by bias, not be swayed by the severity of the

21    crime.

22         You know, do you mind if I just point to you and

23    not call your name?  Does anyone have a problem with that?

24    It's not disrespectful or anything, but it makes it easier

25    for me.

1             This is a crime, the charges are rape.  Very

2      serious charges.

3             Would you agree with that?

4             PROSPECTIVE JUROR #13:  Yes.

5             MR. RODRIGUEZ:  Okay.  And the woman at the time

6      was a young woman, much like your age.  And she's going to

7      take the stand and you're going to see her there and think,

8      "well, she's about my age.  That could have been me."

9             Do you agree that that's something that could

10     come in your mind?

11            PROSPECTIVE JUROR #13:  Yeah.

12            MR. RODRIGUEZ:  Yeah.  And it's such a horrible

13     thing.  And no one disagrees with the severity of the

14     crime, if it happened, all right.  If it's true, no one

15     disagrees with that.  But when you see her sit there, are

16     you going to be able to put your feelings of sympathy,

17     empathy, you know, of kind of connecting with her because

18     you're in the same age, are you going to be able to put

19     that aside?

20            PROSPECTIVE JUROR #13:  I don't think the same

21     age really has anything to do with it.  Any kind of crime

22     that happened to anybody, so if you walk around feeling

23     just because it happened to one person, that doesn't mean

24     it's going to happen to you.

25            MR. RODRIGUEZ:  Or that it even happened.

1    PROSPECTIVE JUROR #13:  Yes, that's true.

2    MR. RODRIGUEZ:  Because there's an indictment

3    here, it's a piece of paper.  That's what brings the case

4    to this courtroom.  That's the charges.  It's going to be

5    read at one point.  You're going to hear the charges.  And

6    they're ugly charges.

7    But when you hear them, can you put that aside,

8    what you've heard in that document, and only make a

9    decision from what comes from this bench, if you believe

10   it?  Can you do that?

11   Can you do that?  Can you base guilt or innocence

12   strictly upon whether or not the prosecution proves their

13   case?  Can you do that?

14   PROSPECTIVE JUROR #3:  If it's believable.

15   MR. RODRIGUEZ:  Okay.  Now, getting back to this.

16   She mentioned testimony, right.

17   Testimony is like any evidence.  Testimony is one

18   thing, but evidence is another.  Anybody can sit up there

19   and say something, right, ma'am?  Anybody can put their

20   hand up and swear to tell the truth, the whole truth and

21   nothing but the truth so help me God, take their seat and

22   swear to you, look at you, cry and say "this is what

23   happened to me."

24   Does that make it true necessarily?

25   PROSPECTIVE JUROR #11:  No.

1        MR. RODRIGUEZ:  And in fact, one thing the

2   prosecutor talked about is whether someone makes prior

3   statements that are different than another statement.

4   Isn't that the way you tell whether someone is being

5   truthful or not, if their story changes over a period of

6   time?

7        PROSPECTIVE JUROR #11: Yes.

8        MR. RODRIGUEZ:  Would you consider that, the

9   changed story, with whether they're being honest, truthful?

10       Would you agree with that, ma'am?

11       PROSPECTIVE JUROR #1: Yes.

12       MR. RODRIGUEZ:  How about you?

13       PROSPECTIVE JUROR #2: Yes.

14       MR. RODRIGUEZ: And you?

15       PROSPECTIVE JUROR #5: Yes.

16       MR. RODRIGUEZ: And you?

17       PROSPECTIVE JUROR #6: Yes.

18       MR. RODRIGUEZ:  So while you may not remember

19   dinner three, four weeks ago -- maybe you might -- but if

20   things start changing, it's something you could consider,

21   Okay.

22       Just like tears don't mean -- the lack of tears

23   don't mean that it didn't happen, tears don't mean that it

24   did, right?  Agree with that?

25       PROSPECTIVE JUROR #6: Yes.

1          MR. RODRIGUEZ:  Okay.  Now, no one here had

2     family members the victim of a crime, right, anything like

3     that, right?

4               Have you ever been in a situation where you have

5     felt threatened by anyone, by a male or anything like that,

6     on a personal level?

7          MS. GREGORY:  Objection, your Honor.

8          THE COURT:  Yeah.  No, we're not going down that

9     road, counsel.

10              Just like trying to describe what a sex offender

11    looks like, please.

12         MR. RODRIGUEZ:  I'll move on.

13              But there's nothing in your history that would

14    prevent you from being fair to a man charged with rape,

15    right?

16         PROSPECTIVE JUROR #2:  I have no problems with

17    that.

18         MR. RODRIGUEZ:  You, anything in your history?

19         PROSPECTIVE JUROR #1:  No.

20         MR. RODRIGUEZ:  Anyone, family member, anything

21    in your history that would prevent you from being fair?

22         PROSPECTIVE JUROR #13:  No.

23         MR. RODRIGUEZ:  As he sits here, the Judge has

24    told you he has the presumption of innocence, he's presumed

25    innocent.

1              Does anybody have a problem with the fact that

2       he's sitting here presumed innocent?

3              You understand the presumption of innocence,

4       you're viewed as innocent unless and until you're proved to

5       be guilty, all right.

6              And we don't have -- there's something called a

7       burden of proof.  The Judge is going to describe that for

8       you, what the burden of proof is.  But one of the things is

9       that means the case has to be proved from this table.  They

10      have to prove that he's guilty of anything.

11             It also means that the presumption of innocence,

12      burden of proof, means that he doesn't have to take the

13      stand.  I don't have to ask -- he doesn't have to say one

14      question, be asked one question, take the stand and say

15      anything.  I don't have to put in one piece of evidence.  I

16      can sit back and do absolutely nothing.  If they don't

17      prove their case, you have to acquit.

18             Do you understand that?  Do you agree with that?

19      Do you agree with that?

20             PROSPECTIVE JUROR #10:  Yes.

21             MR. RODRIGUEZ:  Do you have any children?

22             PROSPECTIVE JUROR #10:  Yes.

23             MR. RODRIGUEZ:  How many kids you got?

24             PROSPECTIVE JUROR #10:  Five kids.

25             MR. RODRIGUEZ:  Any close in age?

1        PROSPECTIVE JUROR #10:  I don't know how old he

2   is.  Close in age to what?

3        MR. RODRIGUEZ:  Like a four-year-old and

4   five-year-old, close in age.

5        PROSPECTIVE JUROR #10:  Yes.  I have a twelve and

6   a ten.

7        MR. RODRIGUEZ:  Now, this twelve and ten, has

8   there ever been a question about what happened, what

9   happened, and you ask one what happened, right, you ask the

10  other what happened?

11        PROSPECTIVE JUROR #5:  Yes.

12        MR. RODRIGUEZ:  Do you understand in a trial, in

13  our system of things, you don't have to hear from him?  You

14  know, the one who accuses, it's like my grandmother said,

15  "point one finger, three fingers point back at you."

16        You don't have to, you don't have to hear from

17  him.  Can you accept that?

18        PROSPECTIVE JUROR #10:  I can.

19        MR. RODRIGUEZ:  Now, you may not hear from him in

20  this case.

21        PROSPECTIVE JUROR #10:  I understand that.

22        MR. RODRIGUEZ:  Can you understand that?

23        PROSPECTIVE JUROR #9:  Yes.

24        MR. RODRIGUEZ:  Can you understand that?

25        PROSPECTIVE JUROR #7:  Yes.

Voir Dire                                          87

1           MR. RODRIGUEZ:  Now, one of the things you're

2     going to hear, you may hear people take the stand sometimes

3     and they've done things in their lives that are not right.

4     Can you weigh those things that they've done in other

5     instances and promise me that you will not make a decision

6     should you hear that somebody did something bad in some

7     other instance and not use that as a sole basis for

8     determining whether or not this person is guilty of this

9     case?  Can you promise me that?

10          PROSPECTIVE JUROR #10:  Yeah.

11          MR. RODRIGUEZ:  Can you promise me that?

12          PROSPECTIVE JUROR #11: Yes.

13          MR. RODRIGUEZ:  Can you?

14          PROSPECTIVE JUROR #5: Yes.

15          MR. RODRIGUEZ:  Can you?

16          PROSPECTIVE JUROR #6: Yes.

17          MR. RODRIGUEZ:  You?

18          PROSPECTIVE JUROR #13: Yes.

19          MR. RODRIGUEZ:  You?

20          PROSPECTIVE JUROR #9: Yes.

21          MR. RODRIGUEZ:  You?

22          PROSPECTIVE JUROR #7: Yes.

23          MR. RODRIGUEZ: Can you?

24          PROSPECTIVE JUROR #1: Yes.

25          MR. RODRIGUEZ: You?

Voir Dire                                    88

1              PROSPECTIVE JUROR #2: Yes.

2              MR. RODRIGUEZ: And you?

3              PROSPECTIVE JUROR #3: Yes.

4              MR. RODRIGUEZ:  Now, during the course of this

5     case, there are different types of witnesses you're going

6     to hear from.

7              You may hear from a witness who was present when

8     something happened.  Like the complaining witness,

9     obviously, is the person who is accusing my client.  She's

10    obviously one type of witness.  She's there to see what

11    happened.

12             You may also hear from what they call expert

13    witnesses or people who will come in here and offer you

14    opinions.

15             Now, you, each of you come here with something,

16    you all come here with opinions, but you all come here with

17    common sense.  And in determining whether to believe a

18    witness who takes the stand, any witness, I don't care if

19    it's a lay witness, an expert witness, you always use your

20    common sense in making the determination whether or not you

21    want to give credibility to what is said.

22             Do you understand?

23             Is there any reason why your opinion is any worse

24    than anyone else's?

25             PROSPECTIVE JUROR #3:  No.

KL

1          MR. RODRIGUEZ:  You have a right to your opinion,

2     right?

3          PROSPECTIVE JUROR #2:  Yes.

4          MR. RODRIGUEZ:  You have experience in life,

5     right?

6          PROSPECTIVE JUROR #2:  Yes.

7          MR. RODRIGUEZ:  You bring that experience

8     with you everywhere you go?

9          PROSPECTIVE JUROR #2:  Yes.

10          MR. RODRIGUEZ:  If you hear something that

11     doesn't make sense to you, flies in the face of your

12     experiences in life, will you use that as a determination

13     whether or not you give something credibility?

14          THE COURT:  Again, if an expert witness comes in,

15     you're free to accept or reject that witness' opinion, just

16     as you would any other witness.

17          PROSPECTIVE JUROR #2:  Yes, sir.

18          THE COURT:  The witness is able to give the

19     opinion because of his experience or expertise in a certain

20     area, but is treated like any other witness.

21          Counsel is asking you questions without giving

22     you some background information to begin with.

23          And any witness is to be treated, they're all to

24     be treated the same.  So regardless of what they say, you

25     listen to it and you decide "do I accept it or reject it"

1        using your common sense and life experiences.

2                    Okay?

3                    PROSPECTIVE JUROR #2: Yes, sir.

4                    THE COURT:  Please proceed.

5                    MR. RODRIGUEZ:  Can you agree with that also?

6                    PROSPECTIVE JUROR #1:  Yes.

7                    MR. RODRIGUEZ: Can you?

8                    PROSPECTIVE JUROR #7:  Yes.

9                    MR. RODRIGUEZ:  Can you?

10                   PROSPECTIVE JUROR #9:  Yes.

11                   MR. RODRIGUEZ: Can you?

12                   PROSPECTIVE JUROR #10: Yes.

13                   MR. RODRIGUEZ:  Does anyone disagree with that?

14                   How are you doing?

15                   PROSPECTIVE JUROR #6:  I'm fine.

16                   MR. RODRIGUEZ:  Now, the Judge is going to tell

17       you the elements of a crime, of whatever crime, whatever

18       number of elements.  There may be one, may be five

19       elements, whatever the number of elements of any charge.

20       Can you follow the Judge's instructions that tell you that

21       the People must prove each and every element?

22                   Let's say there's five elements; they can't prove

23       four.

24                   THE COURT:  Stay away from that.  That's really

25       relating to the burden of proof.  I'll deal with that.

1          The bottom line, you must be convinced beyond a

2     reasonable doubt of the defendant's guilt to convict.

3          If you're not, you must acquit.

4          For the moment, that's all you need to know.

5          MR. RODRIGUEZ:  And one of the things that the

6     prosecutor talked about is people react differently to

7     stress, and that anyone is subject to a different reaction.

8          But there are other things besides stress that

9     cause people to react, correct?  Perhaps the entire story

10    is not true, that's something that might be a reason why

11    people react the way they do.  Perhaps they don't want to

12    say anything because of other reasons.

13          You know, just because I or the prosecutor throw

14    it out there doesn't mean it's true.  You have to make the

15    decision whether or not it's truthful.  You have to make

16    the decision whether or not people's failure to react is

17    based on stress or something else.  Those are the decisions

18    you all make.

19          Can you all promise me that if you're chosen on

20    this jury, that you will do so, that you will make a

21    decision based upon what you believe the facts of the case

22    are?

23          Can you do that?

24          PROSPECTIVE JUROR #1:  Yes.

25          MR. RODRIGUEZ: You?

1              PROSPECTIVE JUROR #2:  Yes.

2              MR. RODRIGUEZ: You?

3              PROSPECTIVE JUROR #7: Yes.

4              MR. RODRIGUEZ: You?

5              PROSPECTIVE JUROR #9: Yes.

6              MR. RODRIGUEZ: You?

7              PROSPECTIVE JUROR #5: Yes.

8              MR. RODRIGUEZ: You?

9              PROSPECTIVE JUROR #6:  Yes.

10             MR. RODRIGUEZ: You?

11             PROSPECTIVE JUROR #13: Yes.

12             MR. RODRIGUEZ:  And finally, finally, if she

13     fails, if the prosecution fails to prove their case beyond

14     a reasonable doubt, will you acquit my client?

15             PROSPECTIVE JUROR #13:  Yes.

16             MR. RODRIGUEZ:  Will you?

17             PROSPECTIVE JUROR #6:  Yes.

18             MR. RODRIGUEZ:  Ma'am?

19             PROSPECTIVE JUROR #11:  Yes.

20             MR. RODRIGUEZ: Will you?

21             PROSPECTIVE JUROR #5:  Yes.

22             MR. RODRIGUEZ: And you?

23             PROSPECTIVE JUROR #10:  Yes.

24             MR. RODRIGUEZ: You?

25             PROSPECTIVE JUROR #9:  Yes.

1        MR. RODRIGUEZ: You?

2        PROSPECTIVE JUROR #7:  Yes.

3        MR. RODRIGUEZ: You?

4        PROSPECTIVE JUROR #3:  Yes.

5        MR. RODRIGUEZ: You?

6        PROSPECTIVE JUROR #2:  Yes.

7        MR. RODRIGUEZ: And you?

8        PROSPECTIVE JUROR #1:  Yes.

9        MR. RODRIGUEZ:  Notwithstanding these are serious

10   charges, that woman may sit up there and cry, but if you

11   don't believe it, you're not going to allow sympathy to

12   affect you?  Can you promise me that you will not allow

13   sympathy or feeling bad for her, if they don't prove their

14   case, can you promise me you'll send my client home and

15   acquit him?

16        PROSPECTIVE JUROR #1:  Yes.

17        MR. RODRIGUEZ:  Can you?

18        PROSPECTIVE JUROR #2:  Yes.

19        MR. RODRIGUEZ:  Everyone?

20        PROSPECTIVE JURORS:  (Chorus of yes.)

21        MR. RODRIGUEZ: Any questions?

22        Thank you very much for your time.

23        THE COURT:  Those of you in the audience, just

24   step outside.  Don't leave the floor.

25        Those in the box, just step outside.

KL

1          We'll have you back in a moment.

2          Don't discuss the case, any aspects of it.  Just

3     step outside, please.

4          (Whereupon, all prospective jurors exited the

5     courtroom.)

6          THE COURT:  I'm just going to remind counsel,

7     during the course of their voir dire, just think about what

8     you're saying.

9          Mr. Rodriguez, you did indicate at the end that

10    if they found your client not guilty, would they send him

11    home.

12         MR. RODRIGUEZ:  I know.  I caught myself.  It

13    just ran right out of my mouth.

14         THE COURT:  I understand.

15         Okay.  In any event, just think about what you're

16    saying.

17         All right.  Now, are we ready?

18         THE CLERK:  I believe so.

19         Judge, we previously excused jurors four, eight

20    twelve and 14.

21         THE COURT:  Call the names out.

22         THE CLERK:  David Debellotte, Muriel Francois,

23    number twelve I can't pronounce it, she was the language,

24    and number 14, Christina Landy.

25         THE COURT:  That's correct.

KL

1          Okay.  Then please proceed.

2          THE CLERK:  Entire panel for cause, People?

3          MS. GREGORY:  None.

4          THE COURT:  Defense?

5          MR. RODRIGUEZ:  None.

6          THE CLERK:  Entire panel peremptorily, People?

7          MS. GREGORY:  Number seven.

8          MR. RODRIGUEZ:  Who's that?

9          MS. GREGORY:  Mr. Connor.

10         MR. RODRIGUEZ:  Okay.

11         MS. GREGORY:  Number nine, Mr. Robinson.

12         And number 11, Miss Coleman.

13         THE CLERK:  Defense?

14         MR. RODRIGUEZ:  Could I see the board a minute.

15         THE CLERK:  Certainly may.

16         Mr. Connor was sitting in seat number seven.

17         THE COURT:  In the back.

18         MR. RODRIGUEZ:  Up in the back?

19         THE COURT:  That's correct.

20         MR. RODRIGUEZ:  Seat number one.

21         THE COURT:  Ebron you're challenging?

22         MR. RODRIGUEZ:  Yes, Ebron.

23         Seat number two.

24         THE COURT:  Small-English.

25         MR. RODRIGUEZ:  Seat five.

Voir Dire                                    96

1              THE COURT:  Duda.

2              MR. RODRIGUEZ:  And I don't know what number he

3       was, Mr. Rookwood.

4              THE COURT:  Number ten.

5              MR. RODRIGUEZ:  That's it.

6              THE CLERK:  Juror #3, Robert Ellis, is our first

7       juror selected.

8              Juror #6, Michelle Corley, second juror selected.

9              MR. RODRIGUEZ:  I thought I got --

10             THE COURT:  You got Duda, number five.

11             MR. RODRIGUEZ:  I thought I said six too.

12             THE CLERK:  Do you wish to exercise a challenge?

13             MR. RODRIGUEZ:  Yes.

14             THE COURT:  Are you challenging Duda now?

15             MR. RODRIGUEZ:  And Corley, number six.

16             THE CLERK:  Corley is challenged by the defense.

17             Then the second juror selected is Dana Lawrence.

18             And both those jurors are acceptable to both

19       sides?

20             MR. RODRIGUEZ:  Yes.

21             MS. GREGORY:  Yes.

22             THE CLERK:  Then we have two jurors.

23             THE COURT:  Would you get Miss Lawrence and Mr.

24       Ellis in, please.

25             THE CLERK:  Counsel, People have exercised three

KL

1    challenges, the defense five.

2              Do you concur?

3              MR. RODRIGUEZ:  That's correct.

4              MS. GREGORY:  Yes.

5              (Whereupon the two selected jurors entered the

6    courtroom.)

7              THE COURT:  Just in the front row will be fine.

8              Mr. Ellis, Miss Lawrence, the both of you were

9    selected to sit on this case.  I'm going to give you some

10   rules to govern your conduct.  When you're sworn, I'll

11   repeat these rules.

12             In a moment you're going to be shown where the

13   jury room is.  Once you know that, you're to be back here

14   tomorrow 12 noon, Okay.

15             Keep an open mind.  Do not form, or express, any

16   opinion as to the guilt or non-guilt of this defendant

17   until you've heard all the evidence, you've heard the

18   closing arguments of the attorneys, I've instructed you on

19   the law, you've gone into the jury room and began jury

20   deliberations.

21             Do not discuss this case with anyone; not even

22   among yourselves.  Do not listen to anybody else talking

23   about this case in your presence.

24             Do not visit any scene alleged to be involved

25   here.

1          Do not try to investigate any fact on your own.

2    Do not read, watch or listen to any accounts of this case

3    should there be any in the news media.

4          And if you have a computer and surf the Internet

5    trying to get information, do not do it in terms of trying

6    to get information about this case or anybody involved with

7    the case.

8          Immediately report any attempts by anyone to

9    approach you or a fellow juror in connection with your jury

10   service.

11         And until you're discharged, you're not to accept

12   compensation or discuss the acceptance of compensation for

13   supplying information about this case with anyone.

14         With those warnings in mind, follow the officers.

15   They're going to show you where the jury room is.  Once

16   you've satisfied yourself you know where it is, tomorrow at

17   12:00.

18         (Whereupon, the selected jurors exited the

19   courtroom.)

20         THE COURT:  What I would like is the people who

21   were in the audience in the courtroom again.

22         Those in the box will go back down to Central

23   Jury.

24         But have the people seated in the audience come

25   in first.

                              KL

1            (Whereupon, the prospective jurors in the

2       audience entered the courtroom.)

3            THE COURT:  Those of you in the audience, Mr.

4       LaRose is going to call the names of 14 of you.  Please

5       take your seats as indicated.

6            THE CLERK:  Sharon Wilson, take seat number one,

7       ma'am.  W-I-L-S-O-N.

8            Leo Reilly R -E-I-L-L-Y, seat number two.

9            Carmen Layne,  L-A-Y-N-E, seat three.

10           James Leighton, L-E-I-G-H-T-O-N, seat four.

11           Daniel Jensen, J-E-N-S-E-N, seat five, please.

12           Morris John, J-O-H-N, seat six, please.

13           Alexander Marants, last name is spelled

14      M-A-R-A-N-T-S, seat 7, please.

15           Crystal Logan, last name is spelled L-O-G-A-N,

16      seat eight, please.

17           Anna Rozenblat, last name is spelled

18      R-O-Z-E-N-B-L-A-T, seat nine.

19           Jeanine James, last name is spelled J-A-M-E-S,

20      seat ten.

21           Daniel Tandy, last name is spelled  T-A-N-D-Y,

22      seat 11.

23           Tamara Sklyar, S-K-L-Y-A-R, seat twelve.

24           Joseph Wright, last name is spelled W-R-I-G-H-T,

25      seat 13.

1          Veronica Thomas, T-H-O-M-A-S, seat 14.

2              THE COURT:  Those of you who are in the box, were

3     you able to hear my comments about the rules that apply in

4     all criminal cases, the indictment not being evidence, the

5     defendant being presumed innocent, the burden of proof

6     being on the prosecution, a defendant having no obligation

7     to testify, the standard of proof being, the standard being

8     proof beyond a reasonable doubt?  Were you able to hear

9     those rules earlier?

10             The bottom line is this:  Is there anyone who

11    feels that he or she cannot follow those principles?

12    Anybody?

13             I've introduced the lawyers, as well as the

14    defendant.  Any of these people seem familiar to you to the

15    extent that you might of seen them before coming into the

16    courtroom on the street?

17             I read some names.  Any of the names sound

18    familiar, Gina Colon, Tammy Little, Police Officer Kevin

19    Fedynak, Nurse Durant, Woodhull Hospital, Nurse Dan

20    McSwiggan, Detective Steven Litwin, Marie Samples, Don

21    Lewittes, Aubry Weekes, any of those names sound familiar?

22             And finally, I know you may know the area, but

23    I'm more concerned about anybody working, living or

24    visiting in and about 474 Marcy Avenue on a regular basis.

25    Anybody?

KL

1              All right.

2              Then Miss Wilson, do you have the questionnaire?

3       Please, in a loud, clear voice, just go right down.

4              PROSPECTIVE JUROR #1:  Sharon Wilson.

5       Forty-eight.  I live in Fort Greene.

6              College.  Stock coordinator.  Soon to be

7       officially divorced.  Two children.

8              Cooking.  No organizations. No favorite

9       newspapers.

10             THE COURT:  Any friends or relatives in law

11      enforcement, ma'am?

12             PROSPECTIVE JUROR #1:  No.

13             THE COURT:  Any opinion about the criminal

14      justice system which would affect your ability to be fair?

15             PROSPECTIVE JUROR #1: No.

16             THE COURT:  Were you, a family member or friend

17      ever the victim of a crime?

18             PROSPECTIVE JUROR #1: No.

19             THE COURT:  Ever accused of a crime?

20             PROSPECTIVE JUROR #1:  No.

21             THE COURT:  What about a family member or friend?

22             PROSPECTIVE JUROR #1:  No.

23             THE COURT:  Any prior jury experience in terms of

24      you actually being a juror?

25             PROSPECTIVE JUROR #1:  No.

KL

1          THE COURT:  Is there any reason why you could not

2     sit here?

3          PROSPECTIVE JUROR #1:  No.

4          THE COURT:  Thank you.

5          Mr. Reilly, if you will, please, sir.

6          PROSPECTIVE JUROR #2:  Yes.

7          Leo Reilly. I'm 34.  I live in Sunset Park.

8          I have a high school diploma, one year of

9     college.

10          I'm a maintenance supervisor for the Transit

11     Authority.

12          Never married.  Single.  No children.

13          No interests or hobbies to mention.

14          No organizations.

15          THE COURT:  Favorite newspaper?

16          PROSPECTIVE JUROR #2:  I read The News and The

17     Post.

18          THE COURT:  Any friends or relatives in law

19     enforcement?

20          PROSPECTIVE JUROR #2: I have some friends in law

21     enforcement, but not --

22          THE COURT:  Are these police officers, correction

23     officers, judges, lawyers?

24          PROSPECTIVE JUROR #2:  Police officers.

25          THE COURT:  Do you think those relationships

KL

Voir Dire                                        103

1        would affect your ability to be fair?

2                    PROSPECTIVE JUROR #2:  No.

3                    THE COURT:  Any opinion about the criminal

4        justice system which would affect your ability to be fair?

5                    PROSPECTIVE JUROR #2: No.

6                    THE COURT:  Were you ever the victim of a crime?

7                    PROSPECTIVE JUROR #2:  Yes.  I was mugged once.

8                    THE COURT:  How long ago?

9                    PROSPECTIVE JUROR #2:  That was around '95.

10                   THE COURT:  Were you physically injured during

11       the course of the mugging so you had to be hospitalized?

12                   PROSPECTIVE JUROR #2: No.

13                   THE COURT:  Do you think that circumstance would

14       affect your ability to be fair?

15                   PROSPECTIVE JUROR #2:  No.

16                   THE COURT:  Any friend or relative ever the

17       victim of a crime?

18                   PROSPECTIVE JUROR #2:  No.

19                   THE COURT:  Ever accused of a crime?

20                   PROSPECTIVE JUROR #2: Yes.

21                   THE COURT:  You?

22                   PROSPECTIVE JUROR #2: Yes.

23                   THE COURT:  Obviously it didn't amount to much

24       because you wouldn't be here otherwise.  What about a

25       friend or family member?

KL

Voir Dire                                              104

1           PROSPECTIVE JUROR #2: Yes.

2           THE COURT:  Okay.  We'll take that privately.

3           Any prior jury experience in terms of you

4    actually sitting on a jury?

5           PROSPECTIVE JUROR #2: No.

6           THE COURT:  Is there any reason why you couldn't

7    sit?

8           PROSPECTIVE JUROR #2: No.

9           THE COURT:  Thank you.

10          Miss Layne, if you will.

11          PROSPECTIVE JUROR #3:  Carmen Layne. Sixty-one.

12   I live in Canarsie.

13          College.  Registered nurse.  Divorced.  I have

14   two kids.

15          No interests.  No organization.

16          I read The Daily News.

17          THE COURT:  Any friends or relatives in law

18   enforcement?

19          PROSPECTIVE JUROR #3:  No.

20          THE COURT:  Any opinion about the criminal

21   justice system which would affect your ability to be fair?

22          PROSPECTIVE JUROR #3:  No.

23          THE COURT:  Were you, a family member or friend

24   ever the victim of a crime?

25          PROSPECTIVE JUROR #3:  No.

KL

1          THE COURT:  Were you ever accused of a crime?

2          PROSPECTIVE JUROR #3:  No.

3          THE COURT:  As far as you know, any family member

4     or friend ever accused?

5          PROSPECTIVE JUROR #3:  No.

6          THE COURT:  Any prior jury service where you

7     actually sat on a jury or were a member of a grand jury,

8     anything like that?

9          PROSPECTIVE JUROR #3: I was elected, but the case

10    was dismissed.

11         THE COURT:  You were selected?

12         PROSPECTIVE JUROR #3: Yes.

13         THE COURT:  It was a civil case?

14         PROSPECTIVE JUROR #3: It was a civil.

15         THE COURT:  And they settled it?

16         PROSPECTIVE JUROR #3: They settled it.

17         THE COURT:  And you were discharged?

18         PROSPECTIVE JUROR #3: Yes.

19         THE COURT:  How long ago was that, ma'am?

20         PROSPECTIVE JUROR #3:  '98.

21         THE COURT:  Anything about that experience that

22    would affect your ability to sit on this case?

23         PROSPECTIVE JUROR #3:  No.

24         THE COURT:  Okay.  Is there any reason, any

25    reason why you could not sit on this case?

KL

1              PROSPECTIVE JUROR #3:  One.  I have treated the

2       victim of a rape before in the hospital.

3              THE COURT:  Okay.  I think we'll take that one

4       privately.

5              I'll make a note of it, ma'am.  We'll speak to

6       you privately about it.

7              Mr. Leighton.

8              PROSPECTIVE JUROR #4:  James Leighton.

9       Twenty-five.  Live in Williamsburg.

10             Have a BFA in photography.  Work in photography.

11             Single. No children.

12             Interests involving work, photography, art.

13             No organizations.

14             THE COURT:  Favorite newspaper?

15             PROSPECTIVE JUROR #4:  The Times.

16             THE COURT:  Any friends or relatives in law

17      enforcement?

18             PROSPECTIVE JUROR #4:  No.

19             THE COURT:  Any opinion about the criminal

20      justice system which would affect your ability to be fair?

21             PROSPECTIVE JUROR #4:  No.

22             THE COURT:  Were you, a family member or friend

23      ever the victim of a crime?

24             PROSPECTIVE JUROR #4:  Yes.

25             THE COURT:  What are we talking about?

                              KL

Voir Dire                                                                 107

1          PROSPECTIVE JUROR #4:  Both.

2          THE COURT:  Are you able to talk about it

3     publicly? ?

4          PROSPECTIVE JUROR #4:  I'd rather do it in

5     private.

6          THE COURT:  Not a problem.

7          Ever accused of a crime?

8          PROSPECTIVE JUROR #4:  No.

9          THE COURT:  Any family member or friend ever

10    accused?

11         PROSPECTIVE JUROR #4: No.

12         THE COURT:  Any prior jury service?

13         PROSPECTIVE JUROR #4:  Not serving, no.

14         THE COURT:  Any reason why you couldn't sit?

15         PROSPECTIVE JUROR #4:  No.

16         THE COURT:  Mr. Jensen, if you will, please.

17         PROSPECTIVE JUROR #5:  Daniel Jensen.

18    Twenty-five.  Park Slope.

19         College.  I'm an actor.  And I work in the

20    theatre as a day job.

21         Single.

22         Music, theatre.

23         THE COURT:  Have you been in any productions on

24    TV or anything like that?

25         PROSPECTIVE JUROR #5:  Nothing you've seen.

KL

1    Mostly stage.

2              And read The New York Times.

3              THE COURT:  Any friends or relatives in law

4    enforcement?

5              PROSPECTIVE JUROR #5:  I have two uncles that are

6    police officers in Detroit.

7              THE COURT:  Do you think those relationships

8    would affect your ability to be fair and impartial in this

9    case?

10             PROSPECTIVE JUROR #5:  No.

11             THE COURT:  Any opinion about the criminal

12   justice system which would affect your ability to be fair?

13             PROSPECTIVE JUROR #5:  No.

14             THE COURT:  Ever the victim of a crime?

15             PROSPECTIVE JUROR #5:  I was mugged once.

16             THE COURT:  Are you able to talk about it

17   publicly?

18             PROSPECTIVE JUROR #5:  Yeah.

19             THE COURT:  What happened?

20             PROSPECTIVE JUROR #5 : Someone pulled a knife on

21   me and asked for my money.

22             THE COURT:  Were you physically injured at all?

23             PROSPECTIVE JUROR #5:  No.

24             THE COURT:  Did you call the police?

25             PROSPECTIVE JUROR #5:  Yes.

1              THE COURT:  Any arrests made?

2              PROSPECTIVE JUROR #5:  No.

3              THE COURT:  Do you think that circumstance would

4    affect your ability to sit on a criminal case?

5              PROSPECTIVE JUROR #5:  No.

6              THE COURT:  Any friend or family member, as far

7    as you know, ever the victim of a crime?

8              PROSPECTIVE JUROR #5:  No.

9              THE COURT:  Ever accused of a crime?

10             PROSPECTIVE JUROR #5:  No.

11             THE COURT:  Any family member or friend ever

12   accused?

13             PROSPECTIVE JUROR #5:  No.

14             THE COURT:  Is there any prior jury service?

15             PROSPECTIVE JUROR #5:  No.

16             THE COURT:  First time?

17             PROSPECTIVE JUROR #5: Uh-hum.

18             THE COURT:  Is there any reason why you can't

19   sit?

20             PROSPECTIVE JUROR #5: No.

21             THE COURT:  Thank you.

22             Mr. John, if you will, please.

23             PROSPECTIVE JUROR #6:  Morris John.

24   Twenty-eight.  Live in East New York.

25             College and trade school.

1                    I'm a Honda technician.

2                    Married.  Three kids.

3                    THE COURT:  Your wife, what does she do, sir?

4                    PROSPECTIVE JUROR #6:  She's studying to be a

5          nurse.

6                    THE COURT:  Any areas of interest or hobbies

7          you'd care to mention?

8                    PROSPECTIVE JUROR #6:  Not really.

9                    THE COURT:  Just to get you to talk.  But if

10         you've got none, you've got none.

11                   Belong to any organizations?

12                   PROSPECTIVE JUROR #6:  No.

13                   THE COURT:  Favorite newspaper?

14                   PROSPECTIVE JUROR #6:  Not really.

15                   THE COURT:  How do you get your news then?

16         Through television?

17                   PROSPECTIVE JUROR #6: Yes.

18                   THE COURT:  Any friends or relatives in law

19         enforcement?

20                   PROSPECTIVE JUROR #6:  Yeah, friends.

21                   THE COURT:  Do you think those relationships

22         would affect your ability to be fair?

23                   PROSPECTIVE JUROR #6:  No.

24                   THE COURT:  Any opinion about the criminal

25         justice system which would affect your ability to be fair?

KL

1                    PROSPECTIVE JUROR #6:  No.

2                    THE COURT:  Were you, a family member or friend

3          ever the victim of a crime?

4                    PROSPECTIVE JUROR #6:  Cars stolen, that's all.

5                    THE COURT:  Do you think that circumstance would

6          affect your ability to be fair?

7                    PROSPECTIVE JUROR #6:  No.

8                    THE COURT:  Were you, a family member or friend

9          ever accused of a crime?

10                   PROSPECTIVE JUROR #6:  No.

11                   THE COURT:  Any prior jury service?

12                   PROSPECTIVE JUROR #6:  No.

13                   THE COURT:  First time?

14                   PROSPECTIVE JUROR #6:  Yeah.

15                   THE COURT:  Is there any reason why you can't

16         sit?

17                   PROSPECTIVE JUROR #6:  No.

18                   THE COURT:  Thank you, sir.

19                   Mr. Wright, if you will, please, sir.

20                   PROSPECTIVE JUROR #13:  Joseph Wright.

21         Twenty-eight years old.  I live in Flatbush area.

22                   Completed high school.  One year of college.  I'm

23         a clerical jeweler.

24                   I'm single.  I had a daughter.  She passed four

25         months ago.

                              KL

Voir Dire                                              112

1              Play basketball?

2              THE COURT:  Are you a Knick fan?

3              PROSPECTIVE JUROR #13: No.

4              THE COURT:  Okay.

5              PROSPECTIVE JUROR #13: I read The Post.

6              THE COURT:  You go back to front or front to

7    back?

8              PROSPECTIVE JUROR #13:  Front to back.

9              THE COURT:  You do, huh? Are you sure you're a

10   sports fan?

11             PROSPECTIVE JUROR #13: Yeah.

12             THE COURT:  Okay.  Any friends or relatives in

13   law enforcement, sir?

14             PROSPECTIVE JUROR #13:  My sister.  She's a

15   corrections officer.

16             THE COURT:  Do you think that relationship would

17   affect your ability to be fair?

18             PROSPECTIVE JUROR #13: No.

19             THE COURT:  Any opinion about the criminal

20   justice system which would affect your ability to be fair?

21             PROSPECTIVE JUROR #13: No.

22             THE COURT:  Were you, a family member or friend

23   ever the victim of a crime?

24             PROSPECTIVE JUROR #13:  Yeah.  I was robbed at

25   gunpoint.  And another occasion I was shot at.

                              KL

1           THE COURT:  The robbery, how long ago was that?

2           PROSPECTIVE JUROR #13: The robbery was a year

3      ago.

4           THE COURT:  Did you report that to the police?

5           PROSPECTIVE JUROR #13:  Yeah.

6           THE COURT:  Any arrest made there?

7           PROSPECTIVE JUROR #13: No.

8           THE COURT:  And the shooting, what happened

9      there?

10           PROSPECTIVE JUROR #13:  I was at a basketball

11      game.  I was supposed to play that night.  I was in the

12      crowd in the bleachers, you know, for about an hour,

13      because I had the last game.  And a guy came up to me and

14      said, "can I get my stuff behind you?"

15           So I said,  "no problem."

16           I stood up for a minute.  A kid, looked around 18

17      years old, slid down in my seat.  And I said, "you're in my

18      seat."

19           Long story short, his friend stood up, said

20      "don't let him talk to you like that."  So he stood up,

21      backed out a gun.

22           A friend of mine that was hosting the basketball

23      game ran across the court to stop the situation.  He kind

24      of separated us.

25           I went to the other half of the court.  Something

1      told me, you know, "it's not the place for you to be," so I

2      jogged out of the park.  As I'm jogging out the park to get

3      to my car, I hear somebody say "Yo."

4                    I turn around.  He's about ten feet from me

5      pointing a gun at me and fired three shots at me.

6                    THE COURT:  Did you call the police?

7                    PROSPECTIVE JUROR #13: No.

8                    THE COURT:  Okay.  Do you think that circumstance

9      would affect your ability to sit on a criminal case?

10                    PROSPECTIVE JUROR #13:  No.

11                    THE COURT:  Any friends or family member ever

12     accused of a crime?

13                    PROSPECTIVE JUROR #13:  I was accused of a crime.

14                    THE COURT:  We'll take that one privately.

15                    Have you ever sat on a jury before?

16                    PROSPECTIVE JUROR #13: No.  First time.

17                    THE COURT:  First time?

18                    PROSPECTIVE JUROR #13: Yeah.

19                    THE COURT:  All right.  Is there any reason why

20     you can't sit?

21                    PROSPECTIVE JUROR #13: No.

22                    THE COURT:  Thank you, sir.  We'll talk to you

23     privately, though.

24                    Miss Thomas, if you will, please.

25                    PROSPECTIVE JUROR #14: Veronica Thomas.  Age 38.

Voir Dire                                                    115

1        I live in East Flatbush.

2              College.  I'm an executive administrative

3        assistant.

4              Married.

5              THE COURT:  Your husband, what does he do, ma'am?

6              PROSPECTIVE JUROR #14:  He's a sales specialist

7        and construction worker.

8              THE COURT:  Any children?

9              PROSPECTIVE JUROR #14:  Yes.  One daughter.

10             THE COURT:  Any areas of interests or hobbies

11       you'd care to mention?

12             PROSPECTIVE JUROR #14:  Entertaining and

13       traveling.

14             THE COURT:  Do you belong to any organizations

15       you'd care to mention?

16             PROSPECTIVE JUROR #14:  No.

17             THE COURT:  Favorite newspaper?

18             PROSPECTIVE JUROR #14: I read all of them, but

19       mainly The Daily News.

20             THE COURT:  Any friends or relatives in law

21       enforcement?

22             PROSPECTIVE JUROR #14:  No.

23             THE COURT:  Any opinion about the criminal

24       justice system which would affect your ability to be fair?

25             PROSPECTIVE JUROR #14:  No.

KL

Voir Dire                                              116

1          THE COURT:  Were you ever the victim of a crime?

2          PROSPECTIVE JUROR #14:  I was robbed.  But like,

3     I don't know, ten or more years ago.

4          THE COURT:  Were you physically injured during

5     the robbery?

6          PROSPECTIVE JUROR #14:  No.

7          THE COURT:  Was that reported to the police?

8          PROSPECTIVE JUROR #14:  Yes.

9          THE COURT:  Any arrests made?

10         PROSPECTIVE JUROR #14:  No.

11         THE COURT:  Do you think what happened to you ten

12    years ago, would that affect your ability to sit on this

13    case?

14         PROSPECTIVE JUROR #14: Definitely not.

15         THE COURT:  What about a family member or friend

16    ever having been the victim of a crime?

17         PROSPECTIVE JUROR #14:  No, I can't recall.

18         THE COURT:  Ever accused of a crime?

19         PROSPECTIVE JUROR #14:  Harassment, is that a

20    crime?

21         THE COURT:  It's a violation.

22         PROSPECTIVE JUROR #14:  No.

23         THE COURT:  We'll take that one privately.  No,

24    it's a non-criminal offense, ma'am.

25         PROSPECTIVE JUROR #14:  So the answer is no.

KL

1                THE COURT:  But we'll discuss that privately.

2                Any prior jury service?

3                PROSPECTIVE JUROR #14:  Yes, 2000.

4                THE COURT:  What kind of case?

5                PROSPECTIVE JUROR #14: Civil.  Like an

6        automobile.

7                THE COURT:  Did you actually sit and was there

8        deliberations or was it settled before?

9                PROSPECTIVE JUROR #14:  No, it was settled

10       before.  I left before.  They didn't pick me.

11               THE COURT:  Anything about your service on that

12       case, or that, I mean on that civil matter, would that

13       affect your ability to sit on this case?

14               PROSPECTIVE JUROR #14:  No.

15               THE COURT:  Is there any reason why you couldn't

16       sit?

17               PROSPECTIVE JUROR #14:  Before?

18               THE COURT:  Here.

19               PROSPECTIVE JUROR #14:  Because I was also in an

20       accident.  My case was also pending for the first.

21               THE COURT:  That would be a good reason.  That's

22       why they didn't let you sit?

23               PROSPECTIVE JUROR #14: That's why they didn't let

24       me sit.

25               THE COURT:  Any reason you can't sit here on this

1        case?

2                    PROSPECTIVE JUROR #14:  Oh, I can sit here.  No

3        problem.

4                    THE COURT:  Thank you, ma'am.

5                    Miss Sklyar.

6                    PROSPECTIVE JUROR #12:  I don't be speaking

7        English.

8                    THE COURT:  You're doing fine.

9                    We'll speak to you privately.

10                    Mr. Tandy.

11                    PROSPECTIVE JUROR #11:  Daniel Tandy.  Age 55.

12        Live in Bay Ridge.

13                    College.  I'm a member of the New York Stock

14        Exchange.

15                    Married.  My wife works in marketing.  Three

16        children.  Two over 18, one under.

17                    I'm a member and fund-raiser for the Centurion

18        Foundation.

19                    I read The Times front to back and Post back to

20        front.

21                    Chief Scagnelli from Transit is a very close

22        friend.

23                    THE COURT:  Would you allow that relationship to

24        affect your ability to be fair here?

25                    PROSPECTIVE JUROR #11: No.

                              KL

Voir Dire                                        119

1              THE COURT:  Any opinion about the criminal

2       justice system which would affect your ability to be fair?

3              PROSPECTIVE JUROR #11: No.

4              THE COURT:  Were you, a family member or friend

5       ever the victim of a crime?

6              PROSPECTIVE JUROR #11:  Just car theft.

7              THE COURT:  Do you think that circumstance would

8       affect your ability to sit on a criminal case?

9              PROSPECTIVE JUROR #11: No.

10             THE COURT:  Ever accused of a crime?

11             PROSPECTIVE JUROR #11: No.

12             THE COURT:  Any family member or friend ever

13      accused, as far as you know?

14             PROSPECTIVE JUROR #11:  No.

15             THE COURT:  Any prior jury service where you sat

16      on a jury or grand jury?

17             PROSPECTIVE JUROR #11:  Not sat.  I was selected

18      and the case was settled.

19             THE COURT:  Civil case?

20             PROSPECTIVE JUROR #11: Civil.

21             THE COURT:  Anything about your service on that

22      case that would affect your ability to sit on this case?

23             PROSPECTIVE JUROR #11:  No.

24             THE COURT:  Any reason why you couldn't sit here?

25             PROSPECTIVE JUROR #11:  I hope not.  But I should

                              KL

Voir Dire                                                                120

1     mention that I have a stress test scheduled for Friday

2     morning.  Which if I get picked I would try to reschedule

3     for the afternoon, based on what you said.

4                    THE COURT:  Well, if you are selected, we're

5     flexible in that regard.  We may not be in session on

6     Friday.  But if you get selected, you'll let us know.

7                    PROSPECTIVE JUROR #11:  Definitely.

8                    THE COURT:  Before you change the schedule, I

9     mean.

10                   PROSPECTIVE JUROR #11: Oh.  Okay, yes.

11                   THE COURT:  Miss James.

12                   PROSPECTIVE JUROR #10:  Jeanine James.

13    Twenty-nine. Live in Flatlands.

14                   Highest level, law degree.  Occupation, attorney.

15                   Single.

16                   THE COURT:  What kind of cases? Are you a private

17    practitioner?

18                   PROSPECTIVE JUROR #10:  No. I work for a firm,

19    personal injury and real estate.

20                   THE COURT:  Yes, ma'am.  Okay.

21                   PROSPECTIVE JUROR #10:  No kids.

22                   Hobbies and interests are general.

23                   All professional organizations.

24                   I read The New York Times and the New York Law

25    Journal.

KL

1                    I have a lot of law enforcement friends.

2                    THE COURT:  Do you think those relationships

3          would affect your ability to be fair?

4                    PROSPECTIVE JUROR #10:  No.

5                    THE COURT:  More specifically, do you know any

6          lawyers who do criminal work?

7                    PROSPECTIVE JUROR #10:  Yes.  I was an intern at

8          the DA's office.

9                    THE COURT:  This DA's office?

10                   PROSPECTIVE JUROR #10:  Yes.

11                   THE COURT:  When was that?

12                   PROSPECTIVE JUROR #10: Five, six years ago.

13                   THE COURT: Anything about that relationship that

14         would affect your ability to be fair and impartial?

15                   PROSPECTIVE JUROR #10: No.

16                   THE COURT:  Any opinion about the system, the

17         criminal justice system, which would affect your ability to

18         be fair?

19                   PROSPECTIVE JUROR #10:  No.

20                   THE COURT:  Were you ever the victim of a crime?

21                   PROSPECTIVE JUROR #10: Yes.

22                   THE COURT:  Are you able to talk about it

23         publicly?

24                   PROSPECTIVE JUROR #10: Yes.

25                   THE COURT:  What happened?

1                    PROSPECTIVE JUROR #10: My home was burglarized.

2                    THE COURT:  How long ago?

3                    PROSPECTIVE JUROR #10: Ten years ago.  Ten or

4          more.

5                    THE COURT:  Did you report that?

6                    PROSPECTIVE JUROR #10: Yes.

7                    THE COURT:  Any arrests made?

8                    PROSPECTIVE JUROR #10: No.

9                    THE COURT:  Do you think that circumstance would

10         affect your ability to be fair?

11                   PROSPECTIVE JUROR #10: No.

12                   THE COURT:  To sit on the case?

13                   PROSPECTIVE JUROR #10: No.

14                   THE COURT:  Any family member or friend, as far

15         as you know, the victim of a crime?

16                   PROSPECTIVE JUROR #10: I think so, yeah.

17                   THE COURT:  What sort of things are we talking

18         about?

19                   PROSPECTIVE JUROR #10: Muggings, burglary.

20                   THE COURT:  Again, do you think those, knowing

21         about those circumstances, would that affect your ability

22         to sit?

23                   PROSPECTIVE JUROR #10: No.

24                   THE COURT:  Were you, a family member or friend

25         ever accused of a crime?

1                    PROSPECTIVE JUROR #10: No.

2                    THE COURT:  Any prior jury service?

3                    PROSPECTIVE JUROR #10: No.

4                    THE COURT:  Your first time?

5                    PROSPECTIVE JUROR #10: First time.

6                    THE COURT:  Is there any reason why you couldn't

7        sit?

8                    PROSPECTIVE JUROR #10: Not that I know of.  Other

9        than what I told you.

10                   THE COURT:  Pardon?

11                   PROSPECTIVE JUROR #10: Other than what I told

12       you, that's it.

13                   THE COURT:  All right.

14                   Miss Rozenblat.

15                   PROSPECTIVE JUROR #9:  Anna Rozenblat.

16       Twenty-seven.  I live in Midwood.

17                   College.  I'm a programmer.

18                   Single. No children.

19                   Interests, like art design.

20                   No organizations.

21                   New York Times.

22                   THE COURT:  Any friends or relatives in law

23       enforcement?

24                   PROSPECTIVE JUROR #9: No.

25                   THE COURT:  Any opinion about the criminal

Voir Dire                                                        124

1     justice system which would affect your ability to be fair?

2                     PROSPECTIVE JUROR #9: No.

3                     THE COURT:  Were you, a family member or friend

4     ever the victim of a crime?

5                     PROSPECTIVE JUROR #9: Yeah.  Actually --

6                     THE COURT:  Who are we talking about?

7                     PROSPECTIVE JUROR #9:  -- my cousin was raped

8     about five years ago.

9                     THE COURT:  I'll make a note it and we'll talk

10    about it privately.  Okay.

11                    Anyone ever accused of a crime, you, family

12    member or friend?

13                    PROSPECTIVE JUROR #9:  No.

14                    THE COURT:  Any prior jury service, ma'am?

15                    PROSPECTIVE JUROR #9:  No.

16                    THE COURT:  I'll reserve the last question until

17    after we speak with you.

18                    Miss Logan, if you will, please, ma'am.

19                    PROSPECTIVE JUROR #8:  Crystal Logan. Live in

20    Bedford Stuyvesant.  Got a high school diploma.

21                    Not married.  No kids.

22                    Playing cards, that's all.

23                    THE COURT:  What do you play?

24                    PROSPECTIVE JUROR #8: Spades.

25                    THE COURT:  Been a long time.  Do you win,

                                  KL

1 though?

2     PROSPECTIVE JUROR #8:  Yeah.

3     THE COURT:  Do you belong to any organizations

4 you'd care to mention, ma'am?

5     PROSPECTIVE JUROR #8:  No.

6     THE COURT:  Do you read newspapers?

7     PROSPECTIVE JUROR #8:  No.

8     THE COURT:  How do you get your news?  Through

9 television?

10     PROSPECTIVE JUROR #8: Channel One.

11     THE COURT:  Okay.  Any friends or relatives in

12 law enforcement?

13     PROSPECTIVE JUROR #8:  No.

14     THE COURT:  Any opinion about the criminal

15 justice system which would affect your ability to be fair?

16     PROSPECTIVE JUROR #8: No.

17     THE COURT:  Were you, a family member or friend

18 ever the victim of a crime?

19     PROSPECTIVE JUROR #8:  No.

20     THE COURT:  Ever accused of a crime?

21     PROSPECTIVE JUROR #8: No.

22     THE COURT:  As far as you know, any family member

23 or friend ever accused?

24     PROSPECTIVE JUROR #8: No.

25     THE COURT:  Any prior jury service, or this is

1          your first time?

2                    PROSPECTIVE JUROR #8:  First time.

3                    THE COURT:  Are you nervous?

4                    PROSPECTIVE JUROR #8: Huh?

5                    THE COURT:  Are you nervous?

6                    PROSPECTIVE JUROR #8:  (Shakes head from side to

7          side.)

8                    THE COURT:  Good.  Is there any reason why you

9          couldn't sit on this case, ma'am?

10                   PROSPECTIVE JUROR #8:  No.

11                   THE COURT:  Thank you very much.

12                   Mr. Marants, if you will, please, sir.

13                   PROSPECTIVE JUROR #7:  I'm afraid it's going to

14         be not enough my language to understand everything clearly.

15         Sorry.

16                   THE COURT:  All right.

17                   Folks, if you will, just step outside, please.

18         We'll have you back in a moment.

19                   Mr. Marants, just stay where you are.

20                   Everybody else in the back, step outside.  We'll

21         have you back.

22                   ( All prospective jurors exit the courtroom

23         except for Mr. Marants, Prospective Juror #7.)

24                   THE COURT:  Mr. Marants, have you been able to

25         understand some of the things that have been said here?

1          PROSPECTIVE JUROR #7:  I understand I can say

2     like 60, 70 percent.  But it's too fast.  Sometimes you

3     talk too fast, it's not easy to get it.  And not so easy to

4     get my personal, personal --

5                    THE COURT:  Opinion?

6                    PROSPECTIVE JUROR #7:  Opinion, yes.

7                    THE COURT:  Let me ask you this:  We have a

8     reporter taking down the evidence that's going to come out.

9                    PROSPECTIVE JUROR #7:  I understand the evidence,

10    Okay.

11                   THE COURT:  At the jury's request he can read

12    this back to the jury.

13          Do you think if you were selected and if you

14    missed something, if he read it back slow enough for you,

15    would that help you in terms of being able to understand?

16                   PROSPECTIVE JUROR #7:  I'm afraid it's not going

17    to be easy for me.

18                   THE COURT:  Okay.

19          Counsel, in light of that answer, does either

20    side wish to pursue that any further?

21                   MR. RODRIGUEZ:  No, your Honor.

22                   MS. GREGORY:  No, your Honor.

23                   THE COURT:  Do I have your consents?

24                   MS. GREGORY:  Yes.

25                   MR. RODRIGUEZ:  Yes, your Honor.

                              KL

Voir Dire                                                  128

1            THE COURT:  Thank you very much.   Return

2    downstairs to Central Jury, please.

3            I need Miss Rozenblat.  She's number nine.

4            (Prospective Juror #7 exited the courtroom and

5    Prospective Juror #9 entered the courtroom.)

6            THE COURT:  Just have a seat in the front row

7    there, ma'am.

8            If you will, please, give us your name again.

9            PROSPECTIVE JUROR #9:  Anna Rozenblat.

10           THE COURT:  You had indicated you had a cousin

11   who was raped?

12           PROSPECTIVE JUROR #9: Yes.

13           THE COURT:  How long ago was that?

14           PROSPECTIVE JUROR #9:  That was five years ago.

15           THE COURT:  Where did that occur?

16           PROSPECTIVE JUROR #9:  That was in Russia.

17           THE COURT:  In Russia.  Were the police called?

18           PROSPECTIVE JUROR #9:  Like she called after two

19   days, and like they didn't believe she was raped.  She

20   called a private car and she was raped by the driver.  So

21   --

22           THE COURT:  So was there any kind of arrest or

23   prosecution?

24           PROSPECTIVE JUROR #9: No.

25           THE COURT:  Do you think because of what happened

KL

1          to your friend -- cousin, would that affect your ability to

2          sit on this case and be a fair juror?

3                      PROSPECTIVE JUROR #9:  I, I guess I would

4          empathize with the girl, but I don't know.  I mean, it

5          depends, of course, but I'm not sure, honestly.  I'm not

6          sure.  She, I remember she was so traumatized.

7                      THE COURT:  What I'm saying is this, and the law

8          requires that if a juror can't give his or her unequivocal

9          assurance, then they really can't sit:  Are you saying that

10         unequivocally you could not be fair?

11                     PROSPECTIVE JUROR #9:  No.  I could be fair.THE

12         COURT:  But would you allow what happened to your cousin,

13         would that affect a decision you might make here?

14                     PROSPECTIVE JUROR #9:  I hope not.

15                     THE COURT:  When you say "hope," are you saying

16         that because you're nervous or you're uncertain?

17                     PROSPECTIVE JUROR #9:  I guess I'm uncertain.

18         But of course I would listen to the evidence and I would

19         try my best to be fair.

20                     THE COURT:  Okay.  I appreciate it.  We can

21         always find fair jurors.  My problem is because you did say

22         that in part it is due to some uncertainty, I think we

23         ought to excuse you.

24                     Do I have your consents, counsel?

25                     MS. GREGORY:  Yes.

Voir Dire                                                   130

1                    MR. RODRIGUEZ:  Yes, your Honor.

2                    THE COURT:  Thank you very much.  Return to the

3        Central Jury, the large room you came from this morning.

4                    PROSPECTIVE JUROR #9:  Sorry.

5                    THE COURT:  No, no problem.  It's best we know

6        now.

7                    (Whereupon, Prospective Juror #9 exited the

8        courtroom.)

9                    THE COURT:  Counsel, do I need to bring in Miss

10       Sklyar?  She's number 12.

11                   MS. GREGORY:  No, your Honor.

12                   THE COURT:  She indicated she had a language

13       concern.

14                   MR. RODRIGUEZ:  No.

15                   THE COURT:  All right.

16                   Then if you will, get Miss Thomas in, please.

17       She's number 14.

18                   (Whereupon, Prospective Juror #14 entered the

19       courtroom.)

20                   THE COURT:  Your name again, please?

21                   PROSPECTIVE JUROR #14:  Veronica Thomas.

22                   THE COURT:  You can sit down.  I just, I wrote

23       the word "accused."  Someone was accused of something?

24                   PROSPECTIVE JUROR #14:  Well, harassment.

25                   THE COURT:  And who was involved with that?

Voir Dire                                                131

1              PROSPECTIVE JUROR #14:  My husband was cheating

2    with this girl.  And she called me.  I called her and she

3    went to the DA. They called me into the police station.

4              THE COURT:  Okay.  Did it ultimately wind up

5    being a case in Criminal Court?

6              PROSPECTIVE JUROR #14:  Yeah.  120 Schermerhorn.

7              THE COURT:  Yes, ma'am.  How long ago are we

8    talking about?

9              PROSPECTIVE JUROR #14:  It happened October last

10   year.

11             THE COURT:  And what happened to the case in the

12   end?

13             PROSPECTIVE JUROR #14:  It was through in July.

14   I guess they said it was dismissed or sealed.

15             THE COURT:  Did they give you an ACD or just an

16   outright dismissal, do you remember?

17             PROSPECTIVE JUROR #14:  They just gave me a

18   letter and said July it would be dismissed.  And it was, I

19   don't know if it was an ACD or what.

20             THE COURT:  Did you have to retain a lawyer?

21             PROSPECTIVE JUROR #14: No.

22             THE COURT:  Anything about that experience that

23   would affect your ability to sit on this case?

24             PROSPECTIVE JUROR #14: No.

25             THE COURT:  Could you be a fair and impartial

KL

1      juror?

2                      PROSPECTIVE JUROR #14:  I didn't hear you.

3                      THE COURT:  Could you be a fair and impartial

4      juror to both sides?

5                      PROSPECTIVE JUROR #14:  Definitely.

6                      THE COURT:  Miss Gregory, anything you want to

7      ask her about it?

8                      MS. GREGORY:  No.

9                      THE COURT:  Mr. Rodriguez, anything?

10                     MR. RODRIGUEZ:  Nothing.  Thank you.

11                     THE COURT:  Ma'am, step outside.

12                     PROSPECTIVE JUROR #14:  Sure.

13                     (Whereupon, Prospective Juror #14 exited the

14     courtroom.)

15                     THE COURT:  I need Mr. Wright.

16                     (Whereupon, Prospective Juror #13 entered the

17     courtroom.)

18                     THE COURT:  Just have a seat.  Your name again,

19     sir?

20                     PROSPECTIVE JUROR #13:  Joseph Wright.

21                     THE COURT:  Mr. Wright, I've got down here

22     someone had been accused of something.

23                     PROSPECTIVE JUROR #13:  Yeah.  I was accused.

24                     THE COURT:  What were you accused of doing?

25                     PROSPECTIVE JUROR #13:  I was actually accused

                                  KL

Voir Dire                                              133

1    for four different situations, all robberies, though.  One

2    person said I robbed him at gunpoint, took a watch.  The

3    other one said I took a wallet.  Another one said I just

4    hit him.

5              THE COURT:  When did all this happen?

6              PROSPECTIVE JUROR #13:  But all this stemmed from

7    one situation.  I was riding my bicycle.  I had just left

8    my girlfriend at night.  I was riding home, coming up a

9    one-way street and the police rode up behind me and said,

10   "sir, a young man just said you stole his bicycle."

11             So they said "you're going to have to wait right

12   here.  This young man is going to come in the back of the

13   police car.  And if he says it's you, we're going to have

14   to take you down."

15             And the young man said it was me.  I was brought

16   Downtown Brooklyn and I was there for a little while.  Then

17   they put me in a lineup, because they said they had a group

18   of guys who was doing robberies with bicycles.  And I think

19   three out of four people said that it was me.  So you know,

20   I had to end up going to court for it and I had an order of

21   protection against these people that I never even met.

22   However, the case was thrown out.

23             THE COURT:  How long were you in court?

24             PROSPECTIVE JUROR #13:  Maybe I was locked up for

25   about four days.

                              KL

Voir Dire                                                    134

1          THE COURT:  You were locked up four days.  But

2     how long did the case go on?

3          PROSPECTIVE JUROR #13:  The case only lasted

4     maybe one day.

5          THE COURT:  After you got out?

6          PROSPECTIVE JUROR #13:  Yeah.  Yeah.

7          THE COURT:  Did you retain a lawyer or was one

8     provided for you?

9          PROSPECTIVE JUROR #13:  I was actually provided

10    with a Legal Aid.

11         THE COURT:  Do you think, do you have any opinion

12    as to whether you were treated unfairly or fairly by the

13    system?

14         PROSPECTIVE JUROR #13:  At the time the situation

15    happened, I was around 18 years old.  I mean, I really,

16    it's really hard for me to say whether I was treated fairly

17    or unfairly.

18         THE COURT:  How do you feel about it now?  That's

19    what I'm asking.

20         PROSPECTIVE JUROR #13:  Right now at this point

21    in time I realize things happen, mistaken identity happens

22    a lot, so it really doesn't bother me.

23         THE COURT:  Would that circumstances, those

24    instances, would they creep into any decision you might

25    make here?

Voir Dire                                    135

1              PROSPECTIVE JUROR #13:  No.

2              THE COURT:  Okay.

3              Miss Gregory?

4              MS. GREGORY:  I don't have any questions, your

5    Honor.

6              THE COURT:  Mr. Rodriguez?

7              MR. RODRIGUEZ:  I have no questions.

8              THE COURT:  Step outside, sir.  We'll have you

9    back in a moment.  Thank you.

10             (Whereupon, Prospective Juror #13 exited the

11   courtroom.)

12             THE COURT:  I need Mr. Leighton.  He's number

13   four, Leighton.

14             (Whereupon, Prospective Juror #4 entered the

15   courtroom.)

16             THE COURT:  Just have a seat right there, sir.

17   Your name again?

18             PROSPECTIVE JUROR #4:  James Leighton.

19             THE COURT:  I have someone having been the victim

20   of a crime?

21             PROSPECTIVE JUROR #4: Yes.

22             THE COURT:  Who was that now?

23             PROSPECTIVE JUROR #4: My mother was raped in

24   2000.

25             THE COURT:  Did that occur here in Kings County

KL

1    or someplace else?

2              PROSPECTIVE JUROR #4:  No.  That was, I believe

3    in Nassau County.

4              THE COURT:  Anyone arrested in connection with

5    that?

6              PROSPECTIVE JUROR #4: No.

7              THE COURT:  The case is still open, as far as you

8    know?

9              PROSPECTIVE JUROR #4: Yeah.

10             THE COURT:  Any opinion as to whether she was

11   treated fairly or unfairly?  The police were called, right?

12             PROSPECTIVE JUROR #4:  Yes.

13             THE COURT:  And an investigation was undertaken?

14             PROSPECTIVE JUROR #4:  Yes.

15             THE COURT:  Any impressions as to whether she was

16   treated fairly or unfairly by the system?

17             PROSPECTIVE JUROR #4:  There was never a

18   conclusion to it, so I don't know.  I wasn't there during

19   the investigation.

20             THE COURT:  Well, let me ask you this:  Do you

21   think as a result of this experience your mother had, would

22   that in any way affect any decision you might make here in

23   this case?

24             PROSPECTIVE JUROR #4:  I don't think I would be

25   completely objective to it.

Voir Dire                                    137

1            THE COURT:  Counsel, either side want to go any

2     further with this?

3            MS. GREGORY:  No.

4            MR. RODRIGUEZ:  No.

5            THE COURT:  Do I have your consents?

6            MS. GREGORY:  Yes.

7            MR. RODRIGUEZ:  Yes.

8            THE COURT:  Thank you very much, sir.  Return

9     downstairs to Central Jury.

10            (Whereupon, Prospective Juror #4 exited the

11     courtroom.)

12            THE COURT:  I need Miss Layne.

13            THE COURT:  Your name again, please.

14            PROSPECTIVE JUROR #3:  Carmen Layne.

15            THE COURT:  Miss Layne, you indicated that, I

16     guess in during the course of your work as a nurse, you

17     have been involved with victims of rape?

18            PROSPECTIVE JUROR #3:  Yes.  I had one case way

19     back that a lady was raped.  I don't know if it was a

20     husband or a boyfriend, I don't remember.

21            THE COURT:  How long ago was this?

22            PROSPECTIVE JUROR #3:  A little while.

23            THE COURT:  Was she beaten up or what?

24            PROSPECTIVE JUROR #3:  She wasn't beaten up.  I

25     think it was her husband or boyfriend.  He raped her and

                                  KL

Voir Dire                                          138

1       then put his hand inside her.  And she had such a bad

2       infection, I think she wound up with a hysterectomy,

3       because the tears was so severe.

4                    THE COURT:  Do you think that circumstance would

5       affect your ability to sit on this case involving the

6       allegations of rape?

7                    PROSPECTIVE JUROR #3:  I don't know.  Because I

8       look at the victim, not the case.  We're just treating a

9       person.

10                   THE COURT:  Do you have some doubts about it?

11      We're not sitting in judgment.  We just need to know.

12                   PROSPECTIVE JUROR #3:  Yeah.  Because when I see

13      the person, you know --

14                   THE COURT:  So you think if you might see the

15      person, the victim here, you might have some problems, is

16      that what you're saying?

17                   PROSPECTIVE JUROR #3: Yeah.

18                   THE COURT:  Okay.

19                   Counsel, does either side wish to pursue this any

20      further?

21                   MS. GREGORY:  No, your Honor.

22                   MR. RODRIGUEZ:  No.

23                   THE COURT:  Do I have your consents?

24                   MS. GREGORY:  Yes.

25                   MR. RODRIGUEZ:  Yes, your Honor.

                              KL

Voir Dire                                                    139

1          THE COURT:  Ma'am, thank you very much.

2          By the way, you have not discussed that with

3     anybody over lunch?

4          PROSPECTIVE JUROR #3: No.

5          THE COURT:  You need not do so.  Go back

6     downstairs to Central Jury, the large room you came from

7     this morning, Central Jury.

8          (Whereupon, Prospective Juror #3 exited the

9     courtroom.)

10         THE COURT:  Mr. Reilly please.  He's number two.

11         (Whereupon, Prospective Juror #2 entered the

12    courtroom.)

13         THE COURT:  Your name again, sir?

14         PROSPECTIVE JUROR #2:  Leo Reilly.

15         THE COURT:  Mr. Reilly, I believe someone had

16    been the victim of a crime or accused of a crime.  Which

17    one was it?

18         PROSPECTIVE JUROR #2:  It was both.

19         THE COURT:  Let's start with the victim of a

20    crime.  Who was that?

21         PROSPECTIVE JUROR #2:  Yes, myself.  I was

22    mugged.  I can't remember how long ago.  It was in the

23    nineties, mid-nineties. But it wasn't anything.  They got a

24    hundred dollars from me, pushed me to the ground.

25         THE COURT:  Did you call the police?

KL

Voir Dire                                        140

1          PROSPECTIVE JUROR #2:  Yes, I did.

2          THE COURT:  Any arrests made?

3          PROSPECTIVE JUROR #2:  Not that I was made aware

4     of, no.

5          THE COURT:  What about accused, accusations, who

6     was accused?

7          PROSPECTIVE JUROR #2:  I was accused.

8          THE COURT:  Of what?

9          PROSPECTIVE JUROR #2: I was accused of rape.

10         THE COURT:  How long ago was that?

11         PROSPECTIVE JUROR #2:  That was '98.

12         THE COURT:  Was that here in Kings County or

13    someplace else?

14         PROSPECTIVE JUROR #2:  Here, Kings County.

15         THE COURT:  Were you arrested?

16         PROSPECTIVE JUROR #2:  Yes.

17         THE COURT:  Did you spend any time in jail

18    initially?

19         PROSPECTIVE JUROR #2:  Initially, no.  I'm sorry,

20    a thousand dollars bail.  My brother and I were charged

21    as --

22         THE COURT:  Codefendants.

23         PROSPECTIVE JUROR #2:  -- defendants.  My brother

24    was released on his own recognizance.  I was held in a

25    thousand dollars bail because it was alcohol related and I

                              KL

1          had an alcohol related offense prior to that, a DWI.

2                    THE COURT:  How long before the case was

3          resolved?

4                    PROSPECTIVE JUROR #2:  Third time in court.

5                    THE COURT:  Third time?

6                    PROSPECTIVE JUROR #2:  Yes.

7                    THE COURT:  It was dismissed?

8                    PROSPECTIVE JUROR #2:  Yes.

9                    THE COURT:  Anything about that experience that

10         would affect your ability to sit on this kind of case?

11                   PROSPECTIVE JUROR #2:  I don't believe so.  I

12         believe that it was the system operated the way it should.

13         I was innocent of that crime, and I believe that they knew

14         that, they were fully aware of that.  And so it didn't -- I

15         believe that the system worked.

16                   THE COURT:  Well, do I have your assurance that

17         if selected to sit on this case, you will not allow that

18         circumstance in any way to affect your ability to be fair

19         and impartial?

20                   PROSPECTIVE JUROR #2:  No, no.

21                   THE COURT:   You will not allow it to affect your

22         ability to be fair?

23                   PROSPECTIVE JUROR #2:  I believe, I believe I can

24         be very fair about it.

25                   THE COURT:  Miss Gregory, any questions?

1          MS. GREGORY:  I just -- Mr. Reilly, the person

2     that accused you and your brother, was that someone who was

3     a stranger or someone that you both knew?

4          PROSPECTIVE JUROR #2:  She was a stranger.  We

5     didn't know her that well.

6          MS. GREGORY:  You said you didn't know her that

7     well?

8          PROSPECTIVE JUROR #2:  Well, we knew her.  When

9     you say "stranger" -- a few times.

10          MS. GREGORY:  All right.  Thank you.

11          I don't have any other questions.

12          THE COURT:  Mr. Rodriguez?

13          MR. RODRIGUEZ:  No, I have no questions.

14          THE COURT:  Step outside, sir.  We'll have you

15     back in a moment.

16          PROSPECTIVE JUROR #2: Okay.

17          (Whereupon, Prospective Juror #2 exited the

18     courtroom.)

19          THE COURT:  I believe that's everybody who

20     indicated they wanted to talk to us.  Is that correct?

21          MS. GREGORY:  Yes.

22          THE COURT:  It's not likely, counsel, we're going

23     beyond 5 o'clock.  So this will probably be the last round.

24          Let's get those jurors in.

25          (Whereupon, the prospective jurors entered the

KL

Voir Dire                                    143

1        courtroom.)

2                THE COURT:  Miss Sklyar, just remain where you

3        are.  Actually, you can return downstairs to Central Jury.

4        Go back downstairs to the large room you came from this

5        morning.

6                PROSPECTIVE JUROR #12:  Thank you.

7                THE COURT:  Thank the lawyers, ma'am.

8                PROSPECTIVE JUROR #12:  Thank you.

9                First floor?

10               COURT OFFICER:  Second floor.

11               THE COURT:  Miss Gregory.

12               MS. GREGORY:  Thank you, your Honor.

13               Good afternoon, ladies and gentlemen.

14               I'm going to ask you some of the same questions

15       that I asked of the group that was before you.  And if

16       there's anything that was raised in the group prior to you

17       that you feel you had something that you'd like to say

18       about that, you can pick this time to do that as well.

19               As I said to the other group, we're just trying

20       to find fair and impartial jurors that can sit and listen

21       to this case and reach a decision in the end.

22               Miss Wilson, good afternoon.  How are you?  We

23       had spoke about, the Judge had explained that our law here

24       is that if you believe one witness and you believe that

25       witness beyond a reasonable doubt, that you, the law says

                                KL

1    that you can base your decision on that.

2            Now, is there anything in your own personal

3    experience or your religion or anything like that that

4    would, that you personally would require more than that?

5            PROSPECTIVE JUROR #1:  No.  I feel I can be

6    objective.

7            MS. GREGORY:  So if the evidence was credible to

8    you and you only heard from one person but you found it

9    believable, that would be enough?

10           PROSPECTIVE JUROR #1:  Yes, I will.

11           MS. GREGORY:  Is there anybody here that

12   notwithstanding that rule of law, would still think "I need

13   more than just the one witness"?  Anybody that feels that

14   way?

15           Mr. Reilly?

16           PROSPECTIVE JUROR #2:  No.

17           MS. GREGORY:  You're Okay with that?

18           PROSPECTIVE JUROR #2:  Yes.

19           MS. GREGORY:  And everyone else?  Great.  Thank

20   you.

21           Miss Logan, how are you?

22           PROSPECTIVE JUROR #8:  Fine.

23           MS. GREGORY:  Have you heard of DNA being used to

24   solve cases?

25           PROSPECTIVE JUROR #8:  (Shakes head up and down.)

1          MS. GREGORY:  And when you talk about DNA, it's

2    talking about science.

3          MR. RODRIGUEZ:  Your Honor, I'm objecting.

4          THE COURT:  Overruled.  Overruled.

5          MS. GREGORY:  If you're picked to be a juror in

6    this case, there will be some DNA evidence.  And to some

7    people that seems scary, science and languages, and a

8    certain way of using the English language that we're not

9    all that familiar with.

10         If you're chosen as a juror in this case, would

11   you be able to listen to that evidence?

12         PROSPECTIVE JUROR #8:  Yes.

13         MS. GREGORY:  Would you keep an open mind, all of

14   you, if you were chosen and listen to the witness that was

15   to testify about this DNA evidence and not just turn it off

16   because it must be too broad and above your head?

17         Miss James, how are you?

18         PROSPECTIVE JUROR #10:  Fine, thanks.

19         MS. GREGORY:  I had talked with the other group

20   about people reacting to stress or a violent sort of

21   situation.  Would you agree that people, not all people

22   react similarly?

23         PROSPECTIVE JUROR #10:  Yes.

24         MS. GREGORY:  And if a person didn't react in the

25   same manner that you think that you might have, would you

KL

Voir Dire                                    146

1    discredit what they had to say?

2              PROSPECTIVE JUROR #10:  No.

3              MS. GREGORY:  Mr. Tandy, good afternoon.

4              PROSPECTIVE JUROR #11:  Good afternoon.

5              MS. GREGORY:  I'm going to raise the issue with

6    you -- if you recall, the incident in this case happened in

7    2002.  And obviously that was some years ago.  Would you

8    expect that a person, whether they were talking about

9    something very serious or maybe not so serious, would you

10   expect that they would use the exact same words to describe

11   it as they described it three years ago?

12             PROSPECTIVE JUROR #11:  I think it's very

13   possible that it could vary.

14             MS. GREGORY:  And if it did vary in some points,

15   let's say, but not totally, if it did vary, would that

16   variance alone make you find it not believable?

17             MR. RODRIGUEZ:  Objection, your Honor.

18             THE COURT:  Well, it depends on what the

19   discrepancy is.  I mean, for the moment, if you hear one

20   account and there are discrepancies, ultimately you can use

21   that in determining whether you believe the person is

22   telling the truth or not.

23             PROSPECTIVE JUROR #11: Yes.

24             THE COURT:  But it just depends on ultimately

25   your assessment.

                          KL

Voir Dire                                                     147

1            PROSPECTIVE JUROR #11: Right.

2            THE COURT:  Can you do that?

3            PROSPECTIVE JUROR #11: Yes.

4            MS. GREGORY:  Is there anybody in the group that

5    sits here that wouldn't agree with Mr. Tandy and would say

6    no?

7            THE COURT:  I'm sorry.  What I mean is this:  In

8    the first instance, you can't just simply say "I'm not

9    going to listen."  You've got to listen to the entire

10   circumstance, take in any discrepancies and ultimately come

11   to a conclusion.  You just can't turn your mind off and say

12   "I'm not going to listen."  That's what she's really

13   saying.

14           Please proceed.

15           MS. GREGORY:  Mr. Jensen, how are you?

16           PROSPECTIVE JUROR #5:  Okay.

17           MS. GREGORY:  We talked about the fact that when

18   the witnesses come in, regardless of who the witness is,

19   whether it's the complaining witness, the victim, or the

20   other witnesses that will testify, that what they're saying

21   in response to the question, that that's evidence.

22           PROSPECTIVE JUROR #5:  Right.

23           MS. GREGORY:  And if you find that evidence, that

24   testimony that they give, credible, then you can believe

25   it.

Voir Dire                                        148

1            PROSPECTIVE JUROR #5: Yeah.

2            MS. GREGORY:  So you understand that what the

3     words that the people are speaking in response to the

4     question, that that is evidence?

5            PROSPECTIVE JUROR #5: Yes.

6            MS. GREGORY:  What about you, Mr. John, do you

7     understand that?

8            PROSPECTIVE JUROR #6:  Yes.

9            MS. GREGORY:  And let me stick with you for a

10    little bit.  Mr. Rodriguez, the defense counsel, was

11    talking about sympathy and how that might play into your

12    decision if you're selected as a juror in this case.

13           Could you assure us that if you were selected as

14    a juror in this case, that sympathy for the complainant in

15    this case or for the defendant in this case wouldn't weigh

16    into your decision?

17           PROSPECTIVE JUROR #6:  Yes.

18           MS. GREGORY:  I'm not saying that you might not

19    feel sympathy for either of them, but I'm saying you

20    wouldn't let that play into the decision that you would

21    have to make in the end?

22           PROSPECTIVE JUROR #6: No.

23           MS. GREGORY:  Miss Thomas, how are you?

24           PROSPECTIVE JUROR #14:  I'm Okay.

25           MS. GREGORY:  Is there anything that you heard

1        about this case since you've been here and listening to the

2        responses of other people that, you know, has raised any

3        issues for you that you feel this isn't the case for you?

4                    PROSPECTIVE JUROR #14:  No.

5                    MS. GREGORY:  So you think if you're chosen,

6        you'll be --

7                    PROSPECTIVE JUROR #14: I'll listen.

8                    MS. GREGORY:  You'll listen to the evidence that

9        was presented.  And if you found it to be credible beyond a

10       reasonable doubt, would you be able to find the defendant

11       guilty at that point?

12                   PROSPECTIVE JUROR #14:  Yes.

13                   MS. GREGORY:  Is there anybody here who couldn't

14       do that?

15                   And Mr. Wright, the same question to you:  Do you

16       think if you were chosen as a juror in this case and you

17       heard all the evidence and all the testimony is in and you

18       find it to be credible, would you be able to find the

19       defendant guilty?

20                   PROSPECTIVE JUROR 13:  Yes.

21                   MS. GREGORY:  Okay.  Thank you, sir.

22                   Thank you.

23                   THE COURT:  Mr. Rodriguez.

24                   MR. RODRIGUEZ:  Thank you, Judge.

25                   Good afternoon.

                                  KL

Voir Dire                                      150

1              I'm not going to belabor you with my version of

2      the voir dire.  I'm going to ask some simple questions.

3              How are you doing today?

4              PROSPECTIVE JUROR #8:  Okay.

5              MR. RODRIGUEZ:  She asked you, the prosecutor

6      asked you about DNA.

7              You're not going to have a problem being able to

8      listen to it, correct?

9              PROSPECTIVE JUROR #8:  No.

10             MR. RODRIGUEZ:  Now, you may find that DNA

11     testimony or testimony by experts, is very technical, very

12     lengthy. Will everybody here be able to listen to it?

13     Anybody feel that "oh, man, I don't want to hear this"?  It

14     may be late in the day or very early in the morning.

15     Anyone feel -- because the real question I'm asking is

16     before you make your decision about the case, whoever takes

17     the stand, you need to make a decision based on all of the

18     evidence, and not make the decision early in the case.  You

19     need to hear everything.

20             Can you promise me that you will weigh

21     everything?

22             PROSPECTIVE JUROR #13:  Yes.

23             MR. RODRIGUEZ:  Can you do that?  For example,

24     she may ask questions, the prosecutor just stated testimony

25     is evidence, believable testimony, the question and the

KL

Voir Dire                                          151

1    answer, right.  She said that.  And you agree that would be

2    it, right?

3              What about cross-examination, though?

4    Cross-examination is testimony.  And then there's an answer

5    or something is refuted.  Would you take that into

6    consideration?

7              THE COURT:  Let me just say this:  There's no

8    obligation for the defense to do anything.  But it's the

9    question, coupled with the answer, that constitutes the

10   evidence, whether asked by the People or the defense.

11             Okay.

12             MR. RODRIGUEZ:  So it's not just -- if I choose

13   to cross-examine someone and their answers are their

14   discrepancies, you may consider that as well.  Would you

15   agree with that?

16             PROSPECTIVE JUROR #6:  Yes.

17             MR. RODRIGUEZ:  Now, Mr. Tandy, I noticed that

18   when asked by counsel about recall, and I know the Judge

19   cleared this up, but I want to make sure, that the mere

20   fact that someone, the mere fact that there's a time lapse

21   between when something happens and when someone testifies,

22   if there's a discrepancy in between what she said then and

23   what she's saying now, I want to know that you would

24   consider that when considering whether she's credible or

25   not?

                            KL

Voir Dire                                          152

1              PROSPECTIVE JUROR #11:  I'd carefully consider

2      everything everybody says in all respects.  So I'm not sure

3      what you're asking.  I'm going to listen to the testimony

4      and decide.

5              MR. RODRIGUEZ:  How do you feel about that?

6              PROSPECTIVE JUROR #10:  I feel that everybody has

7      to be considered and taken into consideration.

8              MR. RODRIGUEZ:  You were an intern for the

9      district attorney's office?

10             PROSPECTIVE JUROR #10:  Yes, I was.

11             MR. RODRIGUEZ:  What bureau were you in?

12             PROSPECTIVE JUROR #10:  The red zone.

13             MR. RODRIGUEZ:  Red zone.  What kind of cases

14     were they?

15             PROSPECTIVE JUROR #10:  Misdemeanor cases.

16             MR. RODRIGUEZ:  Misdemeanor cases.

17             THE COURT:  By the way, do you know Miss Gregory?

18             PROSPECTIVE JUROR #10: No, I don't.

19             THE COURT:  Was she there when you were there,

20     ma'am?

21             PROSPECTIVE JUROR #10:  I don't know.  I never

22     saw her.

23             MR. RODRIGUEZ:  Any sex cases in the

24     misdemeanors?

25             PROSPECTIVE JUROR #10:  No.

                            KL

Voir Dire                                                    153

1          MR. RODRIGUEZ:  You're an attorney, right?

2          PROSPECTIVE JUROR #10: Yes.

3          MR. RODRIGUEZ:  You've had training in law?

4          PROSPECTIVE JUROR #10:  Yes.

5          MR. RODRIGUEZ:  You probably know more law than

6     the entire jury.  If you're on the panel, if you're

7     selected -- more than everyone put together -- could you

8     promise not to use your knowledge as an attorney -- not

9     your knowledge that everyone possesses, common sense,

10    obviously, but use it to persuade everyone in the jury to

11    follow your way of seeing things?

12         PROSPECTIVE JUROR #10: Yes.

13         THE COURT:  Wait a minute.  Wait a minute.

14         In terms of the law, you must accept it as I give

15    it.

16         Factually, you can use your own common sense and

17    life experiences to decide that.

18         You can do that, right?

19         PROSPECTIVE JUROR #10:  Yes.

20         THE COURT:  But in terms of the law, it's as I

21    give it.

22         MR. RODRIGUEZ:  And you promise that if you were

23    selected, that's what you would do?

24         PROSPECTIVE JUROR #10:  Yes.

25         MR. RODRIGUEZ:  You would be fair to Mr. Fuentes,

KL

1   Jose?

2                   PROSPECTIVE JUROR #10:  Yes.

3                   MR. RODRIGUEZ:  Now, this is a serious, violent

4   crime, rape charge, very violent.

5                   THE COURT:  Indeed it is, counsel.

6                   Let me just say this again, as I said initially,

7   any personal considerations a juror might have about the

8   nature of a crime is immaterial here.

9                   It's clinical:  Was a crime committed.  Did the

10  defendant do it.

11                  You're not here to pass judgment on the defendant

12  or the crime.

13                  It's the quality of the evidence.

14                  Please proceed.

15                  MR. RODRIGUEZ:  Okay.

16                  In that same vein, now you may find that

17  perhaps -- I'm not saying it's the case, but you may find

18  perhaps you didn't like something that he did.  But if it's

19  not a crime, you won't convict him because you don't like

20  who you think he is, right?

21                  PROSPECTIVE JUROR #10:  I don't understand.

22                  MR. RODRIGUEZ:  Okay.  If they don't prove that

23  he committed a crime, but you find that something he did,

24  perhaps it may have been you didn't morally care for it or

25  like it --

                              KL

1                    THE COURT:  Could we come up.  Come up.

2                    MR. RODRIGUEZ:  Sure.

3                    (Off-the-record bench conference.)

4                    MR. RODRIGUEZ:  Can you be fair --

5                    PROSPECTIVE JUROR #2:  Yes.

6                    MR. RODRIGUEZ:  -- to my client and be fair to

7     everyone, a fair juror to everyone, including the

8     complaining witness and my client?

9                    PROSPECTIVE JUROR #2:  Yes.

10                   MR. RODRIGUEZ:  Can you be fair?

11                   PROSPECTIVE JUROR #1:  Yes.

12                   MR. RODRIGUEZ:  Can you look over at him right

13    now -- and he's not guilty of anything, correct?

14                   PROSPECTIVE JUROR #1: Yes.

15                   MR. RODRIGUEZ:  He's not guilty of anything, is

16    he?

17                   Do you think he's guilty of anything?  Do you?

18                   PROSPECTIVE JUROR #8:  I don't know.

19                   MR. RODRIGUEZ:  You don't know.  As he sits here

20    right now, has anything been proven against him in your

21    mind?

22                   PROSPECTIVE JUROR #8:  No.

23                   MR. RODRIGUEZ:  So as of right now, based on what

24    you've heard, you have no opinion whether he's guilty or

25    not, correct?

1              PROSPECTIVE JUROR #8:  No.

2              MR. RODRIGUEZ:  You as well, right?

3              PROSPECTIVE JUROR #2:  Yes.

4              MR. RODRIGUEZ:  How about you, ma'am, do you have

5     an opinion on his guilt or innocence at this point?

6              PROSPECTIVE JUROR #10:  No.

7              MR. RODRIGUEZ:  Sir?

8              PROSPECTIVE JUROR #11:  No opinion.

9              MR. RODRIGUEZ:  How are you doing today?

10             PROSPECTIVE JUROR #5:  Okay.

11             MR. RODRIGUEZ:  Anything about this case that

12    would give you a difficult time in rendering a fair verdict

13    in this case?

14             PROSPECTIVE JUROR #5:  No.

15             MR. RODRIGUEZ:  Anything about the type of case

16    it is?

17             PROSPECTIVE JUROR #5:  No.

18             MR. RODRIGUEZ:  How about you?

19             PROSPECTIVE JUROR #6:  No.

20             MR. RODRIGUEZ:  Some people have children here.

21             How old are your children?

22             PROSPECTIVE JUROR #6:  Four-and-a-half, three and

23    nine months.

24             MR. RODRIGUEZ:  Any girls?

25             PROSPECTIVE JUROR #6: One.

KL

1           MR. RODRIGUEZ:  He's charged with rape of a

2     woman.  The fact that you have a daughter, does that affect

3     your ability to be fair toward him?

4           PROSPECTIVE JUROR #6:  No.

5           MR. RODRIGUEZ:  Anybody else have children?

6           PROSPECTIVE JUROR #14:  I do.

7           MR. RODRIGUEZ:  How old?

8           PROSPECTIVE JUROR #14:  She's 19.

9           MR. RODRIGUEZ:  About the same age as the young

10    lady.  Can you be fair despite the fact that you may see a

11    young lady up here who may remind you of your daughter?

12    Can you be fair to my client?

13          PROSPECTIVE JUROR #14:  Definitely.

14          MR. RODRIGUEZ:  You can be?

15          PROSPECTIVE JUROR #14:  Yes.

16          MR. RODRIGUEZ:  You promise that you will be if

17    you're chosen as a juror?

18          PROSPECTIVE JUROR #14:  Yes.

19          MR. RODRIGUEZ:  Can you be, sir?

20          PROSPECTIVE JUROR #13:  Yes.

21          MR. RODRIGUEZ:  Who else had children?

22          Your children's ages?

23          PROSPECTIVE JUROR #11:  Twenty-five and 15.

24          MR. RODRIGUEZ:  Fifteen years old is close.

25    Twenty-five at one point was 20 years old.  Would that

1       affect, especially two daughters, that affect your ability

2       to be fair to my client in any form or fashion?

3                   PROSPECTIVE JUROR #11: Not that I can think of.

4                   MR. RODRIGUEZ:  Anything you could think of that

5       would make you feel unfair?

6                   PROSPECTIVE JUROR #11:  No.

7                   MR. RODRIGUEZ:  No?

8                   PROSPECTIVE JUROR #11:  No.

9                   MR. RODRIGUEZ:  Thank you all.

10                  THE COURT:  Ladies and gentlemen, step outside.

11      We'll have you back in a moment.

12                  (Whereupon, the prospective jurors exited the

13      courtroom.)

14                  THE COURT:  So the record is clear, during the

15      course of the voir dire, the first one as well as this one,

16      I asked counsel to come up to the bench one time in the

17      back.

18                  And Mr. Fuentes, you're in agreement with that,

19      is that correct?  You know what was going on?

20                  THE DEFENDANT:  Yes.

21                  THE COURT:  The last instance was your counsel I

22      thought was trying to suggest to the jury that if they

23      heard something about somebody's personal history and they

24      didn't like it, would they hold it against him.  Now, to me

25      that implied that perhaps you might be testifying.  But he

Voir Dire                                              159

1      can't commit to that.  So that's why I asked him to

2      rephrase his question to Miss James.

3                  You understand what I'm saying?

4                  THE DEFENDANT:  Yes, sir.

5                  THE COURT:  Okay.  But in any event you had

6      signed the Antommarchi waiver, but I want you to be sure of

7      what went on.  Okay?

8                  THE DEFENDANT:  I respect that.  Thank you, your

9      Honor.

10                 THE COURT:  So when you guys get ready, let me

11     know.

12                 (Brief pause in proceedings, after which the

13     matter continued as follows:)

14                 THE COURT:  Both sides ready?

15                 MS. GREGORY:  Yes.

16                 THE COURT:  Mr. LaRose, they appear to be ready.

17                 Read the names out of the remaining jurors we

18     have on the board.

19                 THE CLERK:  We have juror one, Wilson; two,

20     Reilly; five, Jensen; six, John; eight, Logan; ten, James;

21     eleven, Tandy; 13, Wright; and 14, Thomas.

22                 THE COURT:  Everybody clear about that, both

23     sides?

24                 MR. RODRIGUEZ:  Yes.

25                 MS. GREGORY:  Yes.

KL

1              THE CLERK:  Entire panel for cause, People?

2              MS. GREGORY:  Your Honor, I believe defense

3      counsel and I have an issue with number eight.

4              THE COURT:  Miss Logan?

5              MR. RODRIGUEZ:  Yes.

6              THE COURT:  If it's on consent, that's fine.

7              MR. RODRIGUEZ:  It's on consent.

8              MS. GREGORY:  Nothing else.

9              THE COURT:  Defense for cause?

10             MR. RODRIGUEZ:  Yes.  My concern is with Mr.

11     Jensen.  And perhaps --

12             THE COURT:  I'm listening.

13             MR. RODRIGUEZ:  The reason is he was mugged at

14     knifepoint.  And to this point we haven't really discussed

15     the circumstances of this case.  I don't believe anyone is

16     aware that this is an alleged knifepoint rape.  And my

17     concern is that the time he becomes made aware of the fact

18     that a knife was used in the course of this rape, that it

19     may affect his ability to be fair in this case.

20             THE COURT:  Well, look, the Court voir dired him

21     on it.  He was quite frank about it.  I mean, if, in fact,

22     you wanted to talk about the use of a knife and whether it

23     had an effect on him, you could have done so.  But more

24     importantly, I got from him, I got the impression, it had

25     no effect on him at all.  He was able to put that

1    circumstance aside.

2              MR. RODRIGUEZ:  I don't disagree with that.  But

3    I think he's not aware, or no one is aware at this point

4    that this is a knifepoint rape.  The allegation is that

5    this is a knifepoint rape, and I didn't think it was

6    appropriate during voir dire to open up the facts of the

7    case.

8              THE COURT:  But he was asked what effect, if any,

9    would his prior experience have on this case, and he said

10   none.

11             MR. RODRIGUEZ:  I understand.  But at this point

12   he's not aware that a knife is part of the allegation.

13   That's the argument.

14             THE COURT:  I understand that.  But you have not

15   shown -- Miss Gregory, do you have a position on this?

16             MS. GREGORY:  Your Honor, I don't think he said

17   anything that would disqualify him.

18             THE COURT:  Nor do I.

19             The Court asked him specifically about whether or

20   not that experience would affect his ability to be fair and

21   he said no, unlike some of the other jurors.

22             That challenge for cause is denied.

23             THE CLERK:  Any other challenges for cause,

24   defense?

25             MR. RODRIGUEZ:  No.

                              KL

1           THE CLERK:  Peremptorily, People, the entire

2      panel?

3           MS. GREGORY:  Number two.

4           THE CLERK:  Name, please.

5           MS. GREGORY:  Mr. Reilly.

6           THE COURT:  Anybody else, ma'am?

7           MS. GREGORY:  Number 13, Mr. Wright.  And number

8      14, Miss Thomas.

9           THE COURT:  That's Thomas, Wright and Reilly.

10          Anybody else?

11          MS. GREGORY:  No, your Honor.

12          THE COURT:  Okay.

13          Defense?

14          MR. RODRIGUEZ:  Yes.  Mr. Jensen, that would be

15      number five.

16          THE COURT:  Number five, yes, sir.

17          MR. RODRIGUEZ:  Mr. Jensen.

18          Number ten, Miss James.   Number 11, Mr. Tandy.

19          THE COURT:  So far it's Jensen, James and Tandy.

20      Anyone else?

21          MR. RODRIGUEZ:  None further.

22          THE CLERK:  So Miss Wilson, number one, is

23      acceptable and becomes our third juror, and Morris John,

24      number six, becomes our fourth juror.

25          THE COURT:  Get those two people in, please,

Voir Dire                                        163

1      Wilson and John.

2                THE CLERK:  Counsel, I have it People six,

3      defense eight.

4                MS. GREGORY:  Right.

5                (Whereupon, the two selected jurors entered the

6      courtroom.)

7                THE COURT:  Miss Wilson, Mr. John, both of you

8      have been selected to sit on this case.

9                I'm going to give you some rules that will govern

10     your conduct.

11               After you are sworn with the other jurors, I'll

12     repeat these rules.  Please keep them in mind.

13               In a moment you're going to be shown where the

14     jury room is.  You're to be in the jury room tomorrow, 12

15     noon.

16               Keep an open mind.  Do not form, or express, any

17     opinion as to the guilt or non-guilt of this defendant

18     until you have heard all the evidence, the summations of

19     the lawyers, my instructions on the law, and you've gone

20     into the jury room to begin jury deliberations.

21               Do not discuss this case with anyone, not even

22     your fellow jurors, nor should you allow anyone to talk

23     about this case in your presence.

24               Do not visit any location mentioned.

25               Do not try to investigate any fact on your own.

KL

1              Do not read, watch or listen to any accounts of

2      this case should there be any in the media.

3              And if you have a computer and surf the internet,

4      do not surf the internet trying to get any information

5      about this case or anybody involved in this case.

6              And immediately report any attempts by anyone to

7      try to influence you or a fellow juror about your jury

8      service or this case.

9              And until you're discharged, you may not accept

10     compensation or discuss the acceptance of compensation for

11     supplying information about this case with anyone.

12             With those warnings in mind, have a pleasant

13     evening.  He's going to take you to the jury room.  Once

14     you familiarize yourself with that, see you tomorrow

15     morning, at 12 noon in the jury room, please.

16             (Whereupon, the selected jurors exited the

17     courtroom.)

18             THE COURT:  Let's get the people in the audience

19     in, please.

20             MR. RODRIGUEZ:  Your Honor, we're just curious --

21     just a moment.  People are coming in.

22             THE COURT:  Take them back out.

23             (Prospective jurors exited the courtroom.)

24             THE COURT:  Yes, sir?

25             MR. RODRIGUEZ:  We were just curious that if

Proceedings                                                    165

1    there were any additional Rosario as to any of the

2    potential witnesses.  For the first time I'm being made

3    aware of the existence of Tammy Little.  I'm just curious

4    if there are any notes of any testimony that may have been

5    taken by someone in the district attorney's office, whether

6    she was interviewed by anyone.  And if that's the case --

7              THE COURT:  Could I do this, could I get these

8    jurors out and then we'll take this after the jurors leave.

9              MR. RODRIGUEZ:  Sure.

10             THE COURT:  Let's get the jurors in, please.

11             (Whereupon, the prospective jurors entered the

12   courtroom.)

13             THE COURT:  If you were in the jury box and your

14   name was not called, please return downstairs to the large

15   room you came from this morning.  If you were in the box to

16   my right, return to Central Jury.

17             If you were in the audience, please come in and

18   have a seat.  All those in the audience, come in, folks.

19             Those of you in the audience, Mr. LaRose is going

20   to call 14 names.  We're not going to proceed with any

21   further voir dire, but those 14 I'll need outside the

22   courtroom tomorrow morning, not 10:01, but I need them

23   there 10 o'clock.  Because I want to start promptly at 10

24   o'clock.

25             Everybody understand that?

KL

Voir Dire                                        166

1          He's going to call 14 names.  Those are the 14

2     we're going to try to voir dire tomorrow morning at 10

3     o'clock.

4          Mr. LaRose.

5          THE CLERK:  Michelle Ruben.

6          THE COURT:  You'll be in seat number one, Miss

7     Ruben.

8          THE CLERK:  R-U-B-E-N.

9          Maria Thompson, last name is spelled

10    T-H-O-M-P-S-O-N, you'll be in seat two.

11         Sherry Davis, last name is D-A-V-I-S, you'll be

12    in seat three.

13         Gina Flores, last name is spelled F-L-O-R-E-S,

14    you'll be in seat four.

15         Erline McIntosh, you'll be in seat five.  Last

16    name is spelled M-C-I-N-T-O-S-H.

17         Marie Joseph, last name J-O-S-E-P-H.  You'll be

18    in seat six.

19         Rebecca Vandesande, you'll be in seat seven. Last

20    name V-A-N-D-E-S-A-N-D-E, you'll be in seat seven.

21         Sandra Cole-McNaught, you'll be in seat eight.

22    Last name spelled C-O-L-E hyphen M-C-N-A-U-G-H-T, seat

23    eight.

24         Maureen Morrison, M-O-R-R-I-S-O-N, you'll be in

25    seat nine.

KL

Voir Dire                                              167

1              Kathleen Murray, you'll be in seat ten.  Last

2       name is spelled M-U-R-R-A-Y.

3              Matthew Zeno, last name is spelled Z-E-N-O,

4       you'll be in seat 11.

5              Awalda Rivera, R-I-V-E-R-A, Miss Rivera, you'll

6       be in seat twelve.

7              Roxanne Pons, you'll be in seat 13.  Last name is

8       spelled P-O-N-S.

9              And the first name S-H-W-W-E, last name is

10      S-K-Y-I.

11             How do you pronounce that, ma'am?

12             PROSPECTIVE JUROR #14:  Key (ph).

13             THE CLERK:  You'll be in seat 14.

14             THE COURT:  I'd like to see all of you tomorrow

15      at 10 o'clock.

16             All right.  Miss Pons, just remain and we'll

17      speak with you.

18             Anybody else whose name was called -- ma'am, I

19      will speak with you privately, I promise.  We will speak

20      with you privately.

21             Ten o'clock tomorrow morning.

22             With the names called specifically, try to get

23      here at 10 o'clock, because I want to start promptly.  Have

24      a pleasant day.  I'll see you all tomorrow outside.

25             Folks, listen.  Listen.  Just a minute.  You are

                                KL

Voir Dire                                                    168

1    not excused from jury duty.

2              The 14 names that were called, I'm going to voir

3    dire those people first thing in the morning.  If I don't

4    get the jury out of those 14, I'll voir dire you.  But I

5    want to make sure at least we have people available to voir

6    dire at 10 o'clock, because I know people have a tendency

7    to come in at 10:15, 10:20.

8              See you all outside tomorrow at 10 o'clock.

9              Have Miss Pons just wait outside, please.  I'll

10   speak to Miss Pons.

11             (Whereupon, the prospective jurors exited the

12   courtroom.)

13             THE COURT:  Have Miss Pons come in.

14             (Whereupon, Prospective Juror #13 entered the

15   courtroom.)

16             THE COURT:  I'm sorry.  I say Miss Pons.  It was

17   the other juror, must have been Rivera.  I apologize,

18   ma'am.

19             PROSPECTIVE JUROR #13:  That's Okay.  I'll see

20   you tomorrow.

21             (Whereupon, Prospective Juror #13 exited the

22   courtroom.)

23             THE COURT:  It's Miss Rivera.  I'm sorry, Rivera.

24   I thought it was Pons.

25             While we're waiting on Miss Rivera, let's deal

Proceedings                                                169

1      with this issue, counsel, about Rosario.

2                    COURT OFFICER:  She's off the floor, Judge.

3                    THE COURT:  Then we'll deal with it in the

4      morning.

5                    Mr. Rodriguez?

6                    MR. RODRIGUEZ:  I just ask if there's any

7      interview Rosario of Tammy Little or any other potential

8      witness, that it be turned over.

9                    THE COURT:  Two things.

10                   One, the statute requires once the jury is

11     selected for them to turn it over.

12                   But in the interest of fair play, ma'am, do you

13     have any?

14                   MS. GREGORY:  There is nothing for Miss Little.

15                   THE COURT:  Okay.  All right.  She has nothing,

16     counsel.

17                   We're going to try to open up at 10 o'clock.

18     Now, if you want to come here beforehand, please be here.

19                   Mr. LaRose will be here at 9:30.

20                   MR. RODRIGUEZ:  Your Honor, do we intend to open

21     tomorrow?

22                   THE COURT:  I'm going, I'm trying to get this

23     jury and open, yes, sir.

24                   MR. RODRIGUEZ:  Okay.

25                   MS. GREGORY:  We want to open tomorrow?

                              KL

Proceedings                                                    170

1              THE COURT:  Yeah.

2              MR. RODRIGUEZ:  You said Thursday initially.

3              THE COURT:  I'm trying -- is there going to be a

4    problem?

5              MS. GREGORY:  No, no.  I thought you had said

6    Thursday earlier today.

7              THE COURT:  What I said was if we try to complete

8    most of your testimony Thursday and Friday.  But if you're

9    telling me -- look, I tell you what, I'll be happy to just

10   get a jury selected.  If I get a jury selected I'll be

11   elated, and we'll go to Thursday.

12             (Whereupon, the trial of the action was adjourned

13   to Wednesday, October 26, 2005.)

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF KINGS : CRIMINAL TERM: PART 37
 2   ----------------------------------------x
     THE PEOPLE OF THE STATE OF NEW YORK
 3            -against-
     JOSE FUENTES,
 4                           Defendant.
     ----------------------------------------x
 5   Indictment #2465/04               JURY TRIAL
                                       320 Jay Street
 6                                     October 26, 2005


 7

     B e f o r e :
 8
         HONORABLE PLUMMER E. LOTT,
 9                           Justice, and a jury.

10       (Appearances same as previously noted.)

11                       KENNETH LETTS
                     OFFICIAL COURT REPORTER
12               - - - - - - - - - - - - - - -
                     (Case on trial continued pursuant to adjournment.
13   Appearances same as heretofore noted.  No jurors present.)

14               THE COURT:  Are we ready to proceed?

15               MR. RODRIGUEZ:  Yes, your Honor.

16               MS. GREGORY:  Yes, your Honor.

17               THE COURT:  All right.

18               If we can, let's get the jurors in, those in the

19   box in first.

20               Those whose names were called, bring them right

21   in the box.

22               (Whereupon, the prospective jurors entered the

23   courtroom.)

24               THE COURT:  Good morning, folks.

25               I made some comments yesterday about rules that
```

KL

Voir Dire                                          172

1     apply to all criminal cases.

2              The bottom line is this:  Is there any juror who

3     feels, any prospective juror who feels that he or she can't

4     follow the law?  Anybody who feels they can't do that?

5              I've introduced to you the attorneys and the

6     defendant.   Any of these people seem familiar to you in a

7     sense that before yesterday you might have seen them

8     outside this courtroom?

9              474 Marcy Avenue, do any of you live, visit or

10    work near that address on a regular basis?

11             Miss Rivera.

12             And Mr. Zeno, is that correct?

13             PROSPECTIVE JUROR #11:  Yes.

14             THE COURT:  Which is it?  Do you live --

15             PROSPECTIVE JUROR #11:  I live in Bed-Stuy, so I

16    know the neighborhood.

17             THE COURT:  Any opinion about the neighborhood

18    that would affect your ability to be fair and impartial?

19             PROSPECTIVE JUROR #11:  The only thing is since I

20    know a lot of people in the neighborhood, that might affect

21    me.  I have friends, friends of friends.  I'm there a lot.

22             So the only thing I can say about that is that I

23    may have an opinion because of that.  It's hard to say.

24             THE COURT:  The rule is you're supposed to base

25    your decision solely on the evidence and not any opinion

KL

Voir Dire                                                    173

1    about the area.

2              Let me ask you this:  Because you do have friends

3    in the area, do you think that would affect your ability

4    just to sit on the case?

5              PROSPECTIVE JUROR #11:  Yes.  Because my

6    neighborhood, I don't feel comfortable.  I live there.

7              THE COURT:  Counsel, do I have your consents?

8              MS. GREGORY:  Yes.

9              MR. RODRIGUEZ:  Yes, your Honor.

10             THE COURT:  Return to Central Jury, sir.

11             (Whereupon, Prospective Juror #11 exited the

12   courtroom.)

13             THE COURT:  Miss Rivera, you're familiar with

14   that address?

15             PROSPECTIVE JUROR #12:  Yes. I got friends that

16   live there.

17             THE COURT:  And I assume you would have a problem

18   sitting as a result of friends you have in the area?

19             PROSPECTIVE JUROR #12:  Yeah.

20             THE COURT:  She's shaking her head.

21             Counsel, either side wish to pursue this any

22   further?

23             MS. GREGORY:  No.

24             MR. RODRIGUEZ:  No.

25             THE COURT:  Do I have your consents?

KL

1           MS. GREGORY:  Yes, your Honor.

2           MR. RODRIGUEZ:  Yes, your Honor.

3           THE COURT:  Thank you very much, ma'am.  Return

4      to Central Jury downstairs on the second floor.

5           (Whereupon, Prospective Juror #12 exited the

6      courtroom.)

7           THE COURT:  Mr. LaRose, I need to fill seats 11

8      and twelve.

9           THE CLERK:  Yes, sir.

10          THE CLERK:  Wakencia Andre, last name A-N-D-R-E,

11     you will in seat number 11.

12          Kyle Burton, last name is spelled B-U-R-T-O-N,

13     you will be in seat twelve.

14          THE COURT:  Miss Andre and Mr. Burton, do either

15     of you recognize the attorneys or the defendant as somebody

16     you may have seen before coming into this courtroom?

17          PROSPECTIVE JUROR #11:  No.

18          PROSPECTIVE JUROR #12:  No.

19          THE COURT:  474 Marcy Avenue, do you live, work

20     or visit that area?

21          PROSPECTIVE JUROR #12:  No.

22          PROSPECTIVE JUROR #11:  No.

23          THE COURT:  All right.

24          Then to all of you, other than what's been

25     alleged here, do you think you know anything at all about

KL

Voir Dire                                                    175

1    this case?

2            PROSPECTIVE JURORS:  No.

3            THE COURT:  The names I read yesterday, Gina

4    Colon, Tammy Little, Kevin Fedynak, Nurse Durant from

5    Woodhull Hospital, Nurse Dan McSwiggan, Woodhull Hospital,

6    Steven Litwin, detective, Marie Samples, Don Lewittes,

7    Aubry Weekes, any of those names seem familiar to anyone?

8            And again, Miss Andre and Mr. Burton, can you

9    both follow the law?

10           PROSPECTIVE JUROR #11:  Yes.

11           PROSPECTIVE JUROR #12:  Yes.

12           THE COURT:  If you will, Miss Ruben, please, the

13   questionnaire, ma'am.

14           PROSPECTIVE JUROR #1:  Michelle Ruben, 28.

15           THE COURT:  Keep your voice up.

16           PROSPECTIVE JUROR #1:  Michelle Ruben, 28.  East

17   Flatbush.

18           One year of college.  Emergency room technician.

19           Single. No kids.

20           No interests or hobbies.

21           No organizations.

22           New York Times.

23           THE COURT:  Any friends or relatives in law

24   enforcement, ma'am?

25           PROSPECTIVE JUROR #1:  No.

KL

Voir Dire                                          176

1              Never been convicted of a crime.  No members of

2       the family.

3              THE COURT:  Any opinion about the criminal

4       justice system which would affect your ability to be fair?

5              PROSPECTIVE JUROR #1:  No.

6              THE COURT:  Were you ever accused of a crime?

7              PROSPECTIVE JUROR #1:  No.

8              THE COURT:  Any family member or friend ever

9       accused?

10             PROSPECTIVE JUROR #1:  No.

11             THE COURT:  Any prior jury service, ma'am?

12             PROSPECTIVE JUROR #1:  Never been selected.  Was

13      for Civil Court.

14             THE COURT:  Is there any reason why you couldn't

15      sit?

16             PROSPECTIVE JUROR #1:  No.

17             THE COURT:  Thank you.

18             Miss Thompson.

19             PROSPECTIVE JUROR #2:  Maria Thompson, 57. Live

20      in East Flatbush.

21             Finished high school.  I'm a teacher's assistant.

22             I'm married.

23             THE COURT:  Your husband, what does he do, ma'am?

24             PROSPECTIVE JUROR #2:  He's retired.

25             THE COURT:  Any children?

KL

1          PROSPECTIVE JUROR #2:  I have two.

2          THE COURT:  Any areas of interest or hobbies

3     you'd care to mention?

4          PROSPECTIVE JUROR #2:  I like music, I like

5     gospel.

6          THE COURT:  Do you belong to any organizations,

7     other than church?

8          PROSPECTIVE JUROR #2:  No.

9          THE COURT:  Favorite newspaper?

10         PROSPECTIVE JUROR #2:  I don't read too much.

11         THE COURT:  How do you get your news then?

12    Through television?

13         PROSPECTIVE JUROR #2:  Television.

14         THE COURT:  Any friends or family members in law

15    enforcement?

16         PROSPECTIVE JUROR #2:  No.

17         THE COURT:  Any opinion about the criminal

18    justice system which would affect your ability to be fair?

19         PROSPECTIVE JUROR #2:  (Shakes head up and down.)

20         THE COURT:  The answer is yes?

21         PROSPECTIVE JUROR #2:  Yeah.

22         THE COURT:  Okay.  We'll take that one privately,

23    ma'am.

24         Miss Davis, if you will, please.

25         PROSPECTIVE JUROR #3:  Sherry Davis.  I live in

KL

1      the Redhook section of Brooklyn.  Oh, I'm 45, sorry.

2               Education, I finished high school.  I have

3      business school in banking.  My occupation is bookkeeping;

4      I'm a bookkeeper.

5               I'm single.  I have children; I have five

6      children.

7               I have interests in music.

8               I don't belong to no organizations.

9               I do read the newspaper, watch TV.

10              THE COURT:  Any friends or family in law

11     enforcement?

12              PROSPECTIVE JUROR #3:  No.

13              THE COURT:  Any opinion about the criminal

14     justice system which would affect your ability to be fair?

15              PROSPECTIVE JUROR #3:  No.

16              THE COURT:  Were you, a family member or friend

17     ever the victim of a crime?

18              PROSPECTIVE JUROR #3:  Family.

19              THE COURT:  Are you able to talk about it

20     publicly?

21              PROSPECTIVE JUROR #3:  Yeah, sure.

22              THE COURT:  What happened?  And who was involved?

23              PROSPECTIVE JUROR #3:  My nephew was in a drug

24     raid.  They charged him.

25              THE COURT:  No, no, no.  Were you, family member

KL

1          or friend ever mugged?

2                     PROSPECTIVE JUROR #3:  No.

3                     THE COURT:  House burglarized?

4                     PROSPECTIVE JUROR #3:  No.

5                     THE COURT:  So you have a relative who was

6          accused of something?

7                     PROSPECTIVE JUROR #3:  Yes.

8                     THE COURT:  Do you want to discuss that publicly

9          or want to do it privately?

10                    PROSPECTIVE JUROR #3:  It's Okay.

11                    THE COURT:  So this was a drug raid?

12                    PROSPECTIVE JUROR #3:  Yeah.

13                    THE COURT:  And how long ago are we talking

14         about?

15                    PROSPECTIVE JUROR #3:  About a year, year-

16         and-a-half ago.

17                    THE COURT:  Was there an actual arrest?

18                    PROSPECTIVE JUROR #3:  Yeah, he was arrested.

19                    THE COURT:  And what happened to the case?

20                    PROSPECTIVE JUROR #3:  He was acquitted.

21                    THE COURT:  He went to trial?

22                    PROSPECTIVE JUROR #3:  No.  Never made it to

23         trial.

24                    THE COURT:  What, did they dismiss the case

25         against him or what?

KL

Voir Dire                                                    180

1          PROSPECTIVE JUROR #3:  Yes.

2          THE COURT:  Any opinion as to whether he was

3   treated fairly or unfairly?

4          PROSPECTIVE JUROR #3:  I think he was treated

5   fair.

6          THE COURT:  Do you think that circumstance would

7   in any way affect your ability to sit on this case, ma'am?

8          PROSPECTIVE JUROR #3:  No.

9          THE COURT:  Were you ever on a jury before?

10         PROSPECTIVE JUROR #3:  I was going to sit on a

11  civil case, but in the midst of it I was going for a

12  promotion so they excused me.

13         THE COURT:  And they excused you?

14         PROSPECTIVE JUROR #3:  Yes.

15         THE COURT:  Is there any reason why you couldn't

16  sit on this case?

17         PROSPECTIVE JUROR #3:  No.

18         THE COURT:  Thank you very much.

19         Miss Flores, if you will, please.

20         PROSPECTIVE JUROR #4:  Gina Flores.  I'm 28.  I

21  live in Williamsburg.

22         I'm a senior in college.  I do technical support.

23         I'm single. I have one child, and he's less than

24  18.

25         No hobbies, no organizations.

                           KL

Voir Dire                                           181

1                    The Daily News.

2                    THE COURT:  Any friends or relatives in law

3       enforcement?

4                    PROSPECTIVE JUROR #4:  No.

5                    THE COURT:  Any opinion about the criminal

6       justice system which would affect your ability to be fair?

7                    PROSPECTIVE JUROR #4:  No.

8                    THE COURT:  Were you ever the victim of a crime?

9                    PROSPECTIVE JUROR #4:  No.

10                   THE COURT:  Any family member or friend ever the

11      victim of a crime?

12                   PROSPECTIVE JUROR #4:  No.

13                   THE COURT:  Ever accused of a crime?

14                   PROSPECTIVE JUROR #4:  No.

15                   THE COURT:  As far as you know, any family member

16      or friend ever accused?

17                   PROSPECTIVE JUROR #4:  No.

18                   THE COURT:  Any prior jury service, ma'am?

19                   PROSPECTIVE JUROR #4:  No.

20                   THE COURT:  First time?

21                   PROSPECTIVE JUROR #4:  Yes.

22                   THE COURT:  Any reason you couldn't sit?

23                   PROSPECTIVE JUROR #4:  No.

24                   THE COURT:  Thank you.

25                   Miss McIntosh.

                          KL

1               PROSPECTIVE JUROR #5:  Eileen McIntosh, 43.  East

2      Flatbush.

3               College.  A scheduler.

4               I'm married.

5               THE COURT:  Your husband, what does he do, ma'am?

6               PROSPECTIVE JUROR #5:  Laborer.

7               I have one son, 19.

8               Computer games.

9               No organizations.

10              I don't read the newspaper, I don't watch TV.

11              News, I get it from friends.

12              THE COURT:  Any friends or relatives in law

13     enforcement?

14              PROSPECTIVE JUROR #5:  No.

15              THE COURT:  Any opinion about the criminal

16     justice system which would affect your ability to be fair?

17              PROSPECTIVE JUROR #5:  No.

18              THE COURT:  Were you ever the victim of a crime?

19              PROSPECTIVE JUROR #5:  Yes.

20              THE COURT:  Are you able to talk about it?

21              PROSPECTIVE JUROR #5:  Auto theft.

22              THE COURT:  Did you report that?

23              PROSPECTIVE JUROR #5:  Yes.

24              THE COURT:  Any arrests made?

25              PROSPECTIVE JUROR #5:  No.

KL

1          THE COURT:  Do you think that circumstance would

2     affect your ability to be fair?

3          PROSPECTIVE JUROR #5:  No, sir.

4          THE COURT:  What about a friend or family member

5     having been the victim of a crime?

6          PROSPECTIVE JUROR #5:  Yes.

7          THE COURT:  Who are we talking about?

8          PROSPECTIVE JUROR #5:  I don't want to talk about

9     it.

10         THE COURT:  Privately?

11         PROSPECTIVE JUROR #5:  Yes.

12         THE COURT:  Sure.

13         THE COURT:  Ever accused of a crime?

14         PROSPECTIVE JUROR #5:  No.

15         THE COURT:  As far as you know, any friend or

16    family member ever accused?

17         PROSPECTIVE JUROR #5:  Yes.

18         THE COURT:  Okay.  So accused and victim as well.

19         PROSPECTIVE JUROR #5:  Not victim, accused.

20         THE COURT:  I see.  Okay.

21         Any prior jury service, ma'am?

22         PROSPECTIVE JUROR #5:  Yes, but I didn't serve,

23    civil.

24         THE COURT:  Okay.  Is there any reason why you

25    couldn't sit on this case?

1              PROSPECTIVE JUROR #5:  No, sir.

2              THE COURT:  Miss Joseph.

3              PROSPECTIVE JUROR #6:  Marie Joseph. I live in

4      Canarsie.

5              High school.  My occupation is nursing assistant.

6              I'm married.

7              THE COURT:  Your husband, what does he do, ma'am?

8              PROSPECTIVE JUROR #6:  Baker.

9              THE COURT:  Any children?

10             PROSPECTIVE JUROR #6:  Yeah, two children.

11             THE COURT:  Any areas of interest or hobbies

12     you'd care to mention?

13             PROSPECTIVE JUROR #6:  No.

14             THE COURT:  Belong to any organizations you'd

15     care to mention?

16             PROSPECTIVE JUROR #6:   Church.

17             THE COURT:  Favorite newspaper?

18             PROSPECTIVE JUROR #6:  Daily News.

19             THE COURT:  Any friends or relatives in law

20     enforcement?

21             PROSPECTIVE JUROR #6:  No.

22             THE COURT:  Any opinion about the criminal

23     justice system which would affect your ability to be fair?

24             PROSPECTIVE JUROR #6:  No.

25             THE COURT:  Were you, a family member or friend

KL

Voir Dire                                                185

1       ever the victim of a crime?

2                   PROSPECTIVE JUROR #6:  No.

3                   THE COURT:  Ever accused of a crime?

4                   PROSPECTIVE JUROR #6:  No.

5                   THE COURT:  What about a family member or friend?

6                   PROSPECTIVE JUROR #6:  No.

7                   THE COURT:  Have you ever served on an actual

8       jury or grand jury before?

9                   PROSPECTIVE JUROR #6:  No.

10                  THE COURT:  Is there any reason why you could not

11      sit on this case, ma'am?

12                  PROSPECTIVE JUROR #6:  No.

13                  THE COURT:  Thank you.

14                  Miss Pons.

15                  PROSPECTIVE JUROR #13:  Roxanne Pons. Park Slope,

16      Brooklyn.

17                  Senior in college.

18                  I'm not married; single.  No children.

19                  Interests, science, anything scientific.

20                  Hobbies, sports.

21                  I don't belong to any organizations.

22                  I read Daily News, Times.

23                  I have a sister who's a police officer.

24                  THE COURT:  Do you think that relationship will

25      affect your ability to be fair?

KL

Voir Dire                                    186

1              PROSPECTIVE JUROR #13:  Not at all.

2              THE COURT:  Any opinion about the criminal

3      justice system which would affect your ability to be fair?

4              PROSPECTIVE JUROR #13:  No.

5              THE COURT:  Were you ever the victim of a crime?

6              PROSPECTIVE JUROR #13:  Never.

7              THE COURT:  As far as you know, any family member

8      or friend ever the victim?

9              PROSPECTIVE JUROR #13:  No.

10             THE COURT:  Ever accused of a crime?

11             PROSPECTIVE JUROR #13:  No.

12             THE COURT:  What about a family member or friend?

13             PROSPECTIVE JUROR #13:  No.

14             THE COURT:  Any prior jury service?

15             PROSPECTIVE JUROR #13:  Never.

16             THE COURT:  Is there any reason why you couldn't

17     sit?

18             PROSPECTIVE JUROR #13:  Not at all.

19             THE COURT:  Thank you.

20             Miss Skyi.

21             PROSPECTIVE JUROR #14:  Shwwe Skyi. I'm 42.  I

22     live in Bensonhurst.

23             THE COURT:  Just an area.

24             PROSPECTIVE JUROR #14:  Avenue P, Bensonhurst,

25     Brooklyn.

KL

1              Second year college.  My occupation is accounting

2     clerk.

3              I'm married, one child.

4              THE COURT:  Your husband, what does he do?

5              PROSPECTIVE JUROR #14:  A factory worker.

6              THE COURT:  Any areas of interest or hobbies?

7     What do you do in your spare time?

8              PROSPECTIVE JUROR #14:  Cooking and reading.

9              THE COURT:  Belong to any organizations you'd

10    care to mention?

11             PROSPECTIVE JUROR #14:  No.

12             THE COURT:  Do you have a favorite newspaper?

13             PROSPECTIVE JUROR #14:  Chinese Daily News.

14             THE COURT:  All right.  Any friends or family in

15    law enforcement?

16             PROSPECTIVE JUROR #14:  No.

17             THE COURT:  Any police officers, correction

18    officers?

19             PROSPECTIVE JUROR #14:  No.

20             THE COURT:  Lawyers, judges, anything like that?

21             PROSPECTIVE JUROR #14:  No.

22             THE COURT:  Do you have any opinion about the

23    criminal justice system which would affect your ability to

24    be fair?

25             PROSPECTIVE JUROR #14:  No.

Voir Dire                                                  188

1          THE COURT:  Were you ever the victim of a crime?

2    House broken into, car stolen, anything like that?

3          PROSPECTIVE JUROR #14:  No.

4          THE COURT:  What about a family member or friend

5    ever being the victim of a crime?

6          PROSPECTIVE JUROR #14:  No.

7          THE COURT:  Ever accused of a crime?

8          PROSPECTIVE JUROR #14:  (No response.)

9          THE COURT:  All right. I'll tell you what, Miss

10   Skyi, for the moment we'll go on to Mr. Burton and come

11   back to you.

12         PROSPECTIVE JUROR #12:  Kyle Burton, 32 years of

13   age.  Live in Bay Ridge.

14         College.  New York City firefighter.

15         I'm married.

16         THE COURT:  Your wife, what does she do, sir?

17         PROSPECTIVE JUROR #12:  New York City

18   schoolteacher.

19         I have two children.

20         Play football, video games, computer junkie.

21         I belong to the Vulcan Society, black

22   firefighters.

23         I read The Chief.

24         Friends in law enforcement.

25         THE COURT:  The people that you know, the bottom

KL

1      line is this:  Would you allow those relationships to

2      affect your ability to be fair?

3                      PROSPECTIVE JUROR #12:  No.

4                      THE COURT:  Okay.  Any opinion about the criminal

5      justice system which would affect your ability to be fair?

6                      PROSPECTIVE JUROR #12:  No.

7                      THE COURT:  Were you ever the victim of a crime?

8                      PROSPECTIVE JUROR #12:  No.

9                      THE COURT:  As far as you know, any family member

10     or friend ever the victim of a crime?

11                     PROSPECTIVE JUROR #12:  No.

12                     THE COURT:  Ever accused of a crime?

13                     PROSPECTIVE JUROR #12:  No.

14                     THE COURT:  As far as you know, any family member

15     or friend ever accused?

16                     PROSPECTIVE JUROR #12:  No.

17                     THE COURT:  Any prior jury service?

18                     PROSPECTIVE JUROR #12:  No.

19                     THE COURT:  Is there any reason why you couldn't

20     sit on this case?

21                     PROSPECTIVE JUROR #12:  No.

22                     THE COURT:  Miss Andre, if you will, please,

23     ma'am.

24                     PROSPECTIVE JUROR #11:  Wakencia Andre, age 25.

25     East Flatbush.

KL

Voir Dire                                    190

1                    High school.    CNA.

2                    Married.

3                    THE COURT:  Your husband, what does he do?

4                    PROSPECTIVE JUROR #11:  He's a parking lot

5        manager.

6                    THE COURT:  Any children?

7                    PROSPECTIVE JUROR #11:  Two.

8                    THE COURT:  Any areas of interests or hobbies

9        you'd care to mention?

10                   PROSPECTIVE JUROR #11:  No.

11                   THE COURT:  Any organizations you'd care to

12       mention?

13                   PROSPECTIVE JUROR #11:  No.

14                   THE COURT:  Favorite newspaper?

15                   PROSPECTIVE JUROR #11:  No.

16                   THE COURT:  You don't have one?

17                   PROSPECTIVE JUROR #11:  Read it from time to

18       time.

19                   THE COURT:  Get your news through television or

20       what?

21                   PROSPECTIVE JUROR #11:  Television.

22                   THE COURT:  Any friends or relatives in law

23       enforcement, ma'am?

24                   PROSPECTIVE JUROR #11:  No.

25                   THE COURT:  Any opinion about the criminal

KL

Voir Dire                                                    191

1    justice system which would affect your ability to be fair?

2                   PROSPECTIVE JUROR #11:  No.

3                   THE COURT:  Were you ever the victim of a crime?

4                   PROSPECTIVE JUROR #11:  No.

5                   THE COURT:  As far as you know, any family member

6    or friend ever the victim of a crime?

7                   PROSPECTIVE JUROR #11:  No.

8                   THE COURT:  Ever accused of a crime?

9                   PROSPECTIVE JUROR #11:  No.

10                   THE COURT:  As far as you know, any family member

11   or friend ever accused?

12                   PROSPECTIVE JUROR #11:  No.

13                   THE COURT:  Any prior jury service?

14                   PROSPECTIVE JUROR #11:  No.

15                   THE COURT:  First time?

16                   PROSPECTIVE JUROR #11:  Yes.

17                   THE COURT:  Is there any reason why you couldn't

18   sit?

19                   PROSPECTIVE JUROR #11:  Yes.

20                   THE COURT:  Okay.

21                   PROSPECTIVE JUROR #11:  I have orientation for a

22   job.

23                   THE COURT:  When?

24                   PROSPECTIVE JUROR #11:  Thursday and Friday.

25                   THE COURT:  Okay.  So this Thursday and this

KL

Voir Dire                                              192

1    Friday?

2                PROSPECTIVE JUROR #11:  Yes.

3                THE COURT:  I see.

4                Counsel, do I have your consents on that?

5                MR. RODRIGUEZ:  Yes, your Honor.

6                MS. GREGORY:  Yes.

7                THE COURT:  Ma'am, look, I can't get you off jury

8    duty.  You have to go downstairs.  You should tell them

9    downstairs that you have some job concerns.  Okay?

10               PROSPECTIVE JUROR #11:  Okay.

11               THE COURT:  Good luck.

12               (Whereupon, Prospective Juror #11 exited the

13   courtroom.)

14               THE COURT:  Kathleen Murray, if you will, ma'am,

15   please.

16               PROSPECTIVE JUROR #10:  Kathleen Murray, 24.  I

17   live in Clinton Hill.

18               College.  I'm a printer.

19               I'm married and my husband's a bartender.  No

20   children.

21               I'm an artist.

22               No organizations.

23               I don't read the newspaper.  I listen NPR.

24               THE COURT:  Any friends or relatives in law

25   enforcement?

                              KL

Voir Dire                                             193

1          PROSPECTIVE JUROR #10:  No.

2          THE COURT:  Any opinion about the criminal

3    justice system which would affect your ability to be fair?

4          PROSPECTIVE JUROR #10:  No.

5          THE COURT:  Were you ever the victim of a crime?

6          PROSPECTIVE JUROR #10:  Yes.

7          THE COURT:  Are you able to talk about it

8    publicly?

9          PROSPECTIVE JUROR #10:  No.

10         THE COURT:  What I'll do is we'll deal with the

11   balance of the questionnaire privately as well.

12         PROSPECTIVE JUROR #10:  Okay.

13         THE COURT:  Miss Morrison, is that correct?

14         PROSPECTIVE JUROR #9:  Yes, sir.

15         Maureen Morrison, age 47.  I live in the

16   Flatbush area of Brooklyn.

17         College.  I'm a financial counselor.

18         I am married.

19         THE COURT:  Your husband, what does he do, ma'am?

20         PROSPECTIVE JUROR #9:  He's a colonel in the Air

21   Force and an engineer with The City.

22         I have two children.

23         THE COURT:  Any areas of interest or hobbies

24   you'd care to mention?

25         PROSPECTIVE JUROR #9:  No.

                          KL

Voir Dire                                        194

1          THE COURT:  Any organizations?

2          PROSPECTIVE JUROR #9:  Organization is the

3    church.

4          No newspaper.  I watch the television.

5          THE COURT:  Any friends or relatives in law

6    enforcement?

7          PROSPECTIVE JUROR #9:  No.

8          THE COURT:  Any opinion about the criminal

9    justice system which would affect your ability to be fair?

10         PROSPECTIVE JUROR #9:  No.

11         THE COURT:  Were you ever the victim of a crime?

12         PROSPECTIVE JUROR #9:  No.

13         THE COURT:  Any family member or friend ever the

14   victim of a crime?

15         PROSPECTIVE JUROR #9:  No.

16         THE COURT:  Ever accused of a crime?

17         PROSPECTIVE JUROR #9:  No.

18         THE COURT:  As far as you know, any family member

19   or friend ever accused?

20         PROSPECTIVE JUROR #9:  No.

21         THE COURT:  Any prior jury service?

22         PROSPECTIVE JUROR #9:  Yes.

23         THE COURT:  Criminal or civil?

24         PROSPECTIVE JUROR #9:  I think it's civil.

25         THE COURT:  How long ago was it?

KL

Voir Dire                                              195

1              PROSPECTIVE JUROR #9:  I served three times.  The

2    last time was about six years ago.

3              THE COURT:  The last time you served, how many

4    jurors were there, six or were there 12?

5              PROSPECTIVE JUROR #9:  Twelve.

6              THE COURT:  So that probably was a criminal case.

7    Was it 120 Schermerhorn or 360?

8              PROSPECTIVE JUROR #9:  360.

9              THE COURT:  Do you remember what it was about?

10              PROSPECTIVE JUROR #9:  They had gone to, did

11    surgery on the woman's eye and she was blind.

12              THE COURT:  Well, you wouldn't have had 12 jurors

13    on a civil case.  Did the jury deliberate?

14              PROSPECTIVE JUROR #9:  No.  We actually sat like

15    this, listened to the evidence, but they settled.

16              THE COURT:  Okay.  It was civil.  It was civil.

17    It's unusual for them to have that many jurors, though.

18              PROSPECTIVE JUROR #9:  Well, it's six years ago,

19    so I probably can't remember if it was 12.

20              THE COURT:  In any event, anything about your

21    service on that case that would affect your ability to sit

22    on this case?

23              PROSPECTIVE JUROR #9:  No.

24              THE COURT:  Is there any reason why you couldn't

25    sit on this case?

KL

Voir Dire                                           196

1          PROSPECTIVE JUROR #9:  No.

2          THE COURT:  Thank you, very much.

3          PROSPECTIVE JUROR #9:  You're welcome.

4          THE COURT:  Miss Cole-McNaught.

5          PROSPECTIVE JUROR #8:  Sandra Cole-McNaught.  I'm

6   49 years old.  I live in Crown Heights.

7          I have a Ph.D.  I'm an educator by occupation.

8          I'm divorced.  Three children, ages 28, 21 and

9   12.

10         My hobbies are concerning the arts, particularly

11  interior decorating.

12         I belong to the church, to Greenpeace, to Move

13  On, to the Brooklyn Family for Peace.

14         I read some aspects of the Times on-line.  Get my

15  news from BC World News.

16         I have a former student and friend who's a

17  lawyer.

18         THE COURT:  Do you think that relationship would

19  affect your ability to be fair?

20         PROSPECTIVE JUROR #8:  No.

21         THE COURT:  Any opinion about the criminal

22  justice system which would affect your ability to be fair?

23         PROSPECTIVE JUROR #8:  No.

24         THE COURT:  Ever the victim of a crime?

25         PROSPECTIVE JUROR #8:  Yes.

KL

Voir Dire                                    197

1          THE COURT:  Are you able to talk about it

2     publicly?

3          PROSPECTIVE JUROR #8:  Yes.  Probably about 18

4     years ago I was hit in the head while sitting on the bus.

5     There was no arrest made because the young man who did it,

6     he was on the outside and it was one of those buses with

7     the vertical lift window, so he lift it up and hit me in

8     the head.  I suffered a slipped disk and was in severe pain

9     and physical therapy for a while.

10         THE COURT:  Did you report that to the police?

11         PROSPECTIVE JUROR #8:  I did.

12         THE COURT:  Any arrest made?

13         PROSPECTIVE JUROR #8:  No.  Because he ran away,

14    so I couldn't even identify him.  He just ran away.

15         THE COURT:  So you sued the Transit Authority?

16         PROSPECTIVE JUROR #8:  No.

17         THE COURT:  You didn't?

18         PROSPECTIVE JUROR #8:  No.  I'm not very

19    litigious.

20         THE COURT:  You have no residual problems, do

21    you?

22         PROSPECTIVE JUROR #8:  No.

23         THE COURT:  All right.  What about a friend or

24    family member ever having been the victim of a crime?

25         PROSPECTIVE JUROR #8:  A friend.

KL

1              THE COURT:  Are you able to talk about that

2    publicly?

3              PROSPECTIVE JUROR #8:  Yes.  Over 30 years ago a

4    friend of mine was raped and murdered.  And I was very

5    young, so I can't remember all the particulars and I don't

6    recall if any arrest was ever made.

7              THE COURT:  Do you think given what happened 30

8    years ago and it's close in allegations to this case, is it

9    the kind of thing you can sit on, you think?

10             PROSPECTIVE JUROR #8:  Yes, I can.

11             THE COURT:  So you can separate that circumstance

12   from this?

13             PROSPECTIVE JUROR #8:  Absolutely.

14             THE COURT:  Good.  Ever accused of a crime?

15             PROSPECTIVE JUROR #8:  No.

16             THE COURT:  As far as you know, any family member

17   or friend ever accused?

18             PROSPECTIVE JUROR #8:  A cousin.  But the case

19   was dismissed; it was mis mistaken identity.

20             THE COURT:  Was that here in Kings County or

21   someplace else?

22             PROSPECTIVE JUROR #8:  It was in Kings County.

23             THE COURT:  Do you think that circumstance would

24   affect how you might see this case?

25             PROSPECTIVE JUROR #8:  No.

                              KL

Voir Dire                                        199

1          THE COURT:  Any prior jury service?

2          PROSPECTIVE JUROR #8:  No.

3          THE COURT:  Is there any reason, any reason why

4     you could not sit on this case?

5          PROSPECTIVE JUROR #8:  No.

6          THE COURT:  And you could be a fair and impartial

7     juror?

8          PROSPECTIVE JUROR #8:  Absolutely.

9          THE COURT:  Thank you.

10          Miss Vandesande.

11          PROSPECTIVE JUROR #7:  Rebecca Vandesande, 38.

12     Live in Brooklyn Heights.

13          I have a master's degree.  I'm an architect.

14          I'm married.

15          THE COURT:  Your husband, what does he do now?

16          PROSPECTIVE JUROR #7:  He's also an architect.

17          THE COURT:  Any children?

18          PROSPECTIVE JUROR #7:  Two.

19          THE COURT:  Areas of interest?

20          PROSPECTIVE JUROR #7:  Skiing, art.

21          THE COURT:  Do you belong to any organizations,

22     other than professional organizations?

23          PROSPECTIVE JUROR #7:  Not other than

24     professional.  I read The New York Times.

25          THE COURT:  Any friends or relatives in law

KL

Voir Dire                                    200

1        enforcement?

2                    PROSPECTIVE JUROR #7:  No.

3                    THE COURT:  Any opinion about the criminal

4        justice system which would affect your ability to be fair?

5                    PROSPECTIVE JUROR #7:  No.

6                    THE COURT:  Were you ever the victim of a crime?

7                    PROSPECTIVE JUROR #7:  No.

8                    THE COURT:  Any family member or friend ever the

9        victim?

10                   PROSPECTIVE JUROR #7:  No.

11                   THE COURT:  Ever accused of a crime?

12                   PROSPECTIVE JUROR #7:  No.

13                   THE COURT:  What about a friend or family member

14       being accused?

15                   PROSPECTIVE JUROR #7:  No.

16                   THE COURT:  Any prior jury service, civil or

17       criminal?

18                   PROSPECTIVE JUROR #7:  I was called, but I never

19       was chosen.

20                   THE COURT:  Okay.  Is there any reason why you

21       could not sit on this case?

22                   PROSPECTIVE JUROR #7:  I have to pick up my

23       daughter on Thursday at 3:00, so I don't know.

24                   THE COURT:  Is that the only concern you have?

25                   PROSPECTIVE JUROR #7:  Yeah.

                              KL

1        THE COURT:  I wouldn't worry about that one, if

2   you're selected.

3        PROSPECTIVE JUROR #7:  Okay.

4        THE COURT:  With that, I'm going to speak to at

5   least two of you individually.  I'm going to ask everybody

6   to step outside and we'll have you back in a moment.

7        (Whereupon, the prospective jurors exited the

8   courtroom.)

9        THE COURT:  I need Miss Murray, number ten.

10       (Whereupon, Prospective Juror #10 entered the

11  courtroom.)

12       THE COURT:  Miss Murray, why don't you just have

13  a seat in the front row right there, please.

14       PROSPECTIVE JUROR #10:   Okay.

15       THE COURT:  Now, I made a note and can't even

16  read my handwriting.  Did it relate to being the victim

17  of a crime?

18       PROSPECTIVE JUROR #10:  Yes.

19       THE COURT:  If you will, tell us what it

20  involved?

21       PROSPECTIVE JUROR #10:  I just lived in Italy for

22  a while, and I was raped while I was there.

23       THE COURT:  You were?

24       PROSPECTIVE JUROR #10:  Yes.

25       THE COURT:  Was there a prosecution of some sort?

Voir Dire                                              202

1          PROSPECTIVE JUROR #10:  No.

2          THE COURT:  Given the nature of the charges here,

3    do you think you could sit on this case?

4          PROSPECTIVE JUROR #10:  I do.

5          THE COURT:  You do?

6          PROSPECTIVE JUROR #10:  Just because my father

7    was also falsely accused of rape, and so I feel I see both

8    sides.

9          THE COURT:  Let me ask you this:  When you were

10   in Italy, was this somebody you knew or --

11         PROSPECTIVE JUROR #10:  No.

12         THE COURT:  What happened?

13         PROSPECTIVE JUROR #10:  I was walking home one

14   night and I was picked up off the street and taken

15   somewhere and raped and left.

16         THE COURT:  Was any kind of weapon used?

17         PROSPECTIVE JUROR #10:  A gun.

18         THE COURT:  A gun?

19         PROSPECTIVE JUROR #10:  Uh-huh.

20         THE COURT:  And after the event, were you taken

21   to the hospital?

22         PROSPECTIVE JUROR #10:  Uh-hum.

23         THE COURT:  And the police conducted an

24   investigation?

25         PROSPECTIVE JUROR #10:  (Shakes head up and

                              KL

Voir Dire                                                           203

1        down.)

2                    THE COURT:  Did you, as a result of what happened

3        to you, engage in any kind of counseling?

4                    PROSPECTIVE JUROR #10:  Yes.

5                    THE COURT:  How long were you involved with the

6        counseling?

7                    PROSPECTIVE JUROR #10:  A year-and-a-half.

8                    THE COURT:  Since that time you've not seen a

9        counselor?

10                   PROSPECTIVE JUROR #10:  No.

11                   THE COURT:  And now you say your father was

12       accused of rape also?

13                   PROSPECTIVE JUROR #10:  Yes.

14                   THE COURT:  How long ago was that?

15                   PROSPECTIVE JUROR #10:  A year ago.

16                   THE COURT:  Did that occur here in Kings County?

17                   PROSPECTIVE JUROR #10:  No.  In Virginia.

18                   THE COURT:  And what were the circumstances?  I

19       mean, is this somebody he allegedly knew?

20                   PROSPECTIVE JUROR #10:  Yeah.

21                   THE COURT:  Okay.  And did he wind up initially

22       spending any time in jail?

23                   PROSPECTIVE JUROR #10:  No.

24                   THE COURT:  What happened to the case?

25                   PROSPECTIVE JUROR #10:  It was dropped.

                                 KL

Voir Dire                                                        204

1          THE COURT:  And you're saying that those two

2    circumstances would not have any impact on how you would

3    see this case?

4          PROSPECTIVE JUROR #10:  I don't think so, no.

5          THE COURT:  Okay.  When you say "think," are you

6    saying --

7          PROSPECTIVE JUROR #10:  I don't, no.

8          THE COURT:  -- as a matter of speech?

9          PROSPECTIVE JUROR #10:  As a matter of speech.

10         THE COURT:  Have you ever served on a jury before

11   at all?

12         PROSPECTIVE JUROR #10:  No.

13         THE COURT:  Your first time?

14         PROSPECTIVE JUROR #10:  Yeah.

15         THE COURT:  Is there any reason why you couldn't

16   sit on this case?

17         PROSPECTIVE JUROR #10:  (Shakes head from side to

18   side.)

19         THE COURT:  You could be a fair and impartial

20   juror to both sides?

21         PROSPECTIVE JUROR #10:  Yes.

22         THE COURT:  People, any questions?

23         MS. GREGORY:  The incident in Italy, how old were

24   you there?

25         PROSPECTIVE JUROR #10:  Twenty.  It was four

KL

1       years ago.

2                   MS. GREGORY:  Thank you.

3                   THE COURT:  Mr. Rodriguez?

4                   MR. RODRIGUEZ:  What happened after the rape

5       occurred?  What happened immediately after?

6                   PROSPECTIVE JUROR #10:  I was in the hospital for

7       a couple of days?

8                   MR. RODRIGUEZ:  In the hospital?

9                   PROSPECTIVE JUROR #10:  Yes.

10                  MR. RODRIGUEZ:  Did you approach the police right

11      after the incident?

12                  PROSPECTIVE JUROR #10:  They came to me.

13                  MR. RODRIGUEZ:  That's it.

14                  THE COURT:  You could step outside, ma'am.  We'll

15      have you back in a moment.

16                  PROSPECTIVE JUROR #10:  Thanks.

17                  (Whereupon, Prospective Juror #10 exited the

18      courtroom.)

19                  THE COURT:  Number 14, Miss Skyi. I'm not sure

20      about the language.  I'll bring her in if you want, but --

21                  MR. RODRIGUEZ:  I think at some point you asked

22      her a question, it was obvious she didn't understand your

23      question.

24                  MS. GREGORY:  Right.

25                  THE COURT:  So I have your consents on her?

                              KL

Voir Dire                                                  206

1          MS. GREGORY:  Yes.

2          MR. RODRIGUEZ:  Yes.

3          MR. RODRIGUEZ:  Your Honor, can we address this

4    woman before you -- Okay.

5          (Whereupon, Prospective Juror #14 entered the

6    courtroom.)

7          THE COURT:  Miss Skyi, you can return downstairs

8    to Central Jury on the second floor Okay.

9          PROSPECTIVE JUROR #14:  Yes.

10         (Whereupon, Prospective Juror #14 exited the

11   courtroom.)

12         THE COURT:  Yes, Mr. Rodriguez?

13         MR. RODRIGUEZ:  Your Honor, I don't want to

14   belabor the point, but it seems to me, and I heard Miss

15   Murray speak and she said she could be fair in this case,

16   but it seems to me that my client's charged with rape,

17   she's had two very serious traumatic incidents happen in

18   her life, one in which she was in the hospital following a

19   gunpoint rape, and she says she can be fair.

20         I'm not saying -- maybe she believes she can be.

21   But also her father was charged with rape.  And I think

22   that given the nature of this case, given the nature of my

23   client's charge, you know, my client will spend, certainly

24   spend a significant amount of time incarcerated should he

25   be convicted of this charge, and I think that this -- and

KL

Voir Dire                                                    207

1    now may not be the appropriate time to make this

2    observation, but I think that Miss Murray because of the

3    nature of her life experiences would not be an appropriate

4    juror for this case.

5              THE COURT:  Mr. Rodriguez, I mean, look, while I

6    know it's your job to argue a point, there has to be some

7    basis upon which the Court can act.

8              Now, I ask you, sir, to point to one thing she

9    has said that would indicate that she can't be a fair and

10   impartial juror.  That's all I'm saying.  If you can show

11   me that and tell me that there's a challenge for cause,

12   I'll hear you.  But she told you about the experience, she

13   told you she was in counseling.  From all apparent purposes

14   she seemed to be over it and prepared to be a fair and

15   impartial juror.

16             So I'm supposed to go behind that now simply

17   because your client is charged and say because she was a

18   victim, because her father was falsely accused, therefor

19   I'm supposed to kick her off on that basis alone?

20             MR. RODRIGUEZ:  Well, initially, your Honor, what

21   she said was she said she thought she could be.  Obviously,

22   obviously, your Honor, she changed her mind, she said that

23   wouldn't affect her.  But again --

24             THE COURT:  No, Mr. Rodriguez, she didn't change

25   her mind.  I asked her specifically are you saying it

KL

Voir Dire                                    208

1    because you're nervous or are you saying it because of

2    uncertainty and she said ultimately just a matter of

3    speech.

4            MR. RODRIGUEZ:  I think you suggested to her that

5    it with as a matter of speech.  But that's neither here nor

6    there, your Honor.  I'm not dis agreeing, your Honor.

7            My point is, my point is that during the course

8    of this trial there is going to be serious, going to be

9    discussion about the rape itself, they're going to talk

10   about how the rape occurred, you know, there's allegations

11   of oral sex, allegations of vaginal sex, there's going to

12   be knifepoint.  And I don't say that she doesn't think she

13   can be fair.  I'm just stating that the nature of the case,

14   once she starts hearing those types of things, once she

15   starts it, there's no way of telling whether what she says

16   now can be put aside.

17           I don't know, she had counseling for a year-

18   and-a-half, maybe she was fine in a year-and-a-half, but

19   I'd hate to have a situation where this trial starts going

20   on and perhaps she's picked on this jury, you know, and

21   then something comes up because she can't deal with it

22   emotionally.

23           THE COURT:  And once again I ask you to point to

24   something that she said that reflects that, that she can't

25   deal with it.

KL

1        MR. RODRIGUEZ:  Listen, your Honor, the only

2   thing I'm saying is for purposes of erring on the side of

3   safety and fairness and justice, I'm just saying I don't

4   want to see a situation come up later.

5        THE COURT:  Why am I going to kick her off a jury

6   when she represents she's able to handle it in terms of

7   fairness?  Come on, please.

8        If that's a challenge for cause at this point,

9   you don't have it.

10       If you want to talk to her during your voir dire

11  and try to develop more, you can do it.

12       MR. RODRIGUEZ:  Okay.

13       THE COURT:  All right.

14       If you will, Miss Thompson.  She's number two.

15       (Whereupon, Prospective Juror #2 entered the

16  courtroom.)

17       THE COURT:  Miss Thompson, if you will, give us

18  your first name again, please.

19       PROSPECTIVE JUROR #2:  Maria Thompson.

20       THE COURT:  You indicated you had an opinion

21  about the criminal justice system which would affect your

22  ability to be fair?

23       PROSPECTIVE JUROR #2:  No.

24       THE COURT:  Just tell us what it was.

25       PROSPECTIVE JUROR #2:  I misunderstood the

                              KL

Voir Dire                                      210

1     question.  I'm sorry.

2              THE COURT:  So you don't have an opinion about

3     the system that would affect your ability to be fair?

4              PROSPECTIVE JUROR #2:  No.

5              THE COURT:  Were you ever the victim of a crime?

6              PROSPECTIVE JUROR #2:  No.

7              THE COURT:  As far as you know, any family member

8     or friend ever the victim of a crime?

9              PROSPECTIVE JUROR #2:  No.

10             THE COURT:  Ever accused of a crime?

11             PROSPECTIVE JUROR #2:  No.

12             THE COURT:  Any family member or friend ever

13    accused?

14             PROSPECTIVE JUROR #2:  No.

15             THE COURT:  Have you ever sat on a jury?

16             PROSPECTIVE JUROR #2:  No.

17             THE COURT:  Trial jury or grand jury?

18             PROSPECTIVE JUROR #2:  No.

19             THE COURT:  Fine.  Is there any reason why you

20    could not sit on this case?

21             PROSPECTIVE JUROR #2:  You know, I'm really

22    nervous and emotional sometimes.

23             THE COURT:  Miss Thompson, we're not going to sit

24    in judgment of anything you have to say.  If you have a

25    concern, just tell us what it is.  If you're saying you're

                              KL

Voir Dire                                                    211

1    nervous and therefore you can't sit on this case, you

2    prefer to sit on a civil case, is that what you're saying?

3                PROSPECTIVE JUROR #2:  No.

4                THE COURT:  Well, I'm sorry.  You said you're

5    nervous?

6                PROSPECTIVE JUROR #2:  Yeah.  I get emotional

7    with, you know --  I don't know.

8                THE COURT:  Would that cause you to lean to one

9    side or the other because you get emotional?

10               PROSPECTIVE JUROR #2:  No.

11               THE COURT:  Do you think if you served on this

12   jury that it would be injurious to your health, is that

13   what you're saying?

14               PROSPECTIVE JUROR #2:  No.

15               THE COURT:  Well, you said you get emotional?

16   You said you get emotional?

17               PROSPECTIVE JUROR #2:  Well, you know, it depends

18   on something makes me cry or, you know, I can't deal with

19   certain things.

20               THE COURT:  There's going to be an allegation

21   here of rape.  They're going to --

22               PROSPECTIVE JUROR #2:  Huh?

23               THE COURT:  This case, it involves an allegation

24   of rape.

25               PROSPECTIVE JUROR #2:  Yeah.

KL

1          THE COURT:  There may be subject matters that you

2     might find unpleasant.  Are you saying that you'd prefer

3     not to sit on this because of that?

4          PROSPECTIVE JUROR #2:  Yeah.

5          THE COURT:  All right.

6          I have your consents, counsel?

7          MR. RODRIGUEZ:  Yes, your Honor.

8          MS. GREGORY:  Yes.

9          THE COURT:  Return downstairs to Central Jury.

10          (Whereupon, Prospective Juror #2 exited the

11     courtroom.)

12          THE COURT:  I guess in that instance, Mr.

13     Rodriguez, when I sort of suggested to her that answer

14     there was no objection from you or your client, is that

15     right?

16          MR. RODRIGUEZ:  Your Honor --

17          THE COURT:  There's no objection to that, the

18     last questioning, is that correct?

19          MR. RODRIGUEZ:  Your Honor, I don't mean to --

20          THE COURT:  Mr. Rodriguez, I asked you a specific

21     question, sir.

22          MR. RODRIGUEZ:  I didn't make an objection, your

23     Honor.

24          THE COURT:  Is there an objection?

25          MR. RODRIGUEZ:  I didn't make an objection.

Voir Dire                                           213

1          THE COURT:  If we could, let's have Miss

2    McIntosh, please.

3          (Whereupon, Prospective Juror #5 entered the

4    courtroom.)

5          THE COURT:  Just in the front row will be fine.

6          Miss McIntosh, if you will, your first name,

7    please.

8          PROSPECTIVE JUROR #5:  Erline McIntosh.

9          THE COURT:  I believe we were at that point where

10   someone was accused of a crime?

11         PROSPECTIVE JUROR #5:  My son.

12         THE COURT:  Okay.  How long ago are we talking

13   about?

14         PROSPECTIVE JUROR #5:  April.

15         THE COURT:  Of this year?

16         PROSPECTIVE JUROR #5:  Yes.

17         THE COURT:  And how old is he, ma'am?

18         PROSPECTIVE JUROR #5:  Nineteen.

19         THE COURT:  Did that occur here in Kings County

20   or someplace else?

21         PROSPECTIVE JUROR #5:  Kings County.

22         THE COURT:  What was he accused of doing?

23         PROSPECTIVE JUROR #5:  I think, I'm not sure,

24   it's petty or grand larceny.

25         THE COURT:  And what did they say, what

KL

Voir Dire                                          214

1    specifically are they accusing him of stealing?

2              PROSPECTIVE JUROR #5:  Well, because he's 19,

3    they wouldn't tell me. And he didn't say.  But I think it's

4    either Play Station or a Game Boy or something like that.

5              THE COURT:  From a store?

6              PROSPECTIVE JUROR #5:  No.  From somebody.

7              THE COURT:  From somebody else?

8              PROSPECTIVE JUROR #5:  Yes.

9              THE COURT:  Okay.  When you first found out about

10   it, was he in jail at that point?

11             PROSPECTIVE JUROR #5:  No.

12             THE COURT:  All right.  Has he ever been in jail,

13   I mean initially when he was arrested for it?

14             PROSPECTIVE JUROR #5:  They came, they arrested

15   him.  The police came to the house.  I guess they had a

16   warrant for him and he was hiding.  So I tried to get in

17   contact with him.  And finally, I think in April, I think

18   it was from like October of the year before, 2004, when the

19   incident occurred, but they didn't pick him up until April.

20             THE COURT:  Let me ask you this:  At 19 years

21   old, and I'm not trying to embarrass you, had he had prior

22   problems with the criminal justice system?

23             PROSPECTIVE JUROR #5:  Yes, yes.

24             THE COURT:  Had he been arrested before?

25             PROSPECTIVE JUROR #5:  Yes.

KL

Voir Dire                                                      215

1          THE COURT:  Had he done any time at all?

2          PROSPECTIVE JUROR #5:  Prior to that?  No.

3          THE COURT:  And was it similar to what he was

4    accused of doing?

5          PROSPECTIVE JUROR #5:  Correct.

6          THE COURT:  Okay.  Is the case pending now in

7    either 120 Schermerhorn or 360 Adams Street?  Do you have

8    any idea?

9          PROSPECTIVE JUROR #5:  No, it's not pending.  He

10   went to Rikers for 30 days, and I think he's on probation

11   for five years.

12         THE COURT:  Okay.  So in all likelihood it's a

13   felony?

14         PROSPECTIVE JUROR #5:  Yeah.

15         THE COURT:  Okay.  Do you think the fact that

16   your son has been convicted of a crime, do you think that's

17   a circumstance that would affect your ability to sit on a

18   criminal case and be fair to both sides?

19         PROSPECTIVE JUROR #5:  No.  I can be objective.

20         THE COURT:  Okay.  All right.  You never sat on a

21   jury before?

22         PROSPECTIVE JUROR #5:  No.  I was, I've been

23   picked for service but never sat on a jury.

24         THE COURT:  Now, these lawyers are going to ask

25   you some questions, and they may ask you some questions in

KL

Voir Dire                                                216

1    a moment about this.  And the only time they're going to be

2    allowed, I'm going to allow them to ask questions about

3    this is here now.

4              If you have any doubt about what they're asking

5    you, please have them repeat it.  But above all, just be

6    candid.  Okay?

7              PROSPECTIVE JUROR #5:  Okay.

8              THE COURT:  People?

9              MS. GREGORY:  Miss McIntosh, do you think your

10   son was treated fairly during that process of his case?

11             PROSPECTIVE JUROR #5:  I think so.

12             MS. GREGORY:  Okay.  Thank you.

13             THE COURT:  Mr. Rodriguez?

14             MR. RODRIGUEZ:  I have no questions.

15             THE COURT:  Ma'am, step outside.  We'll have you

16   back in a moment.

17             (Whereupon, Prospective Juror #5 exited the

18   courtroom.)

19             THE COURT:  We'll have five minutes and we'll

20   resume with jury selection.

21             (Whereupon, a recess was taken.)

22             (After recess, trial continued outside the

23   presence of the prospective jurors as follows:)

24             THE COURT:  Can we have Miss Murray come in.

25             MR. RODRIGUEZ:  Your Honor, before we --

KL

Voir Dire                                    217

1          THE COURT:  Mr. Rodriguez, please sit down,

2     please.

3          (Whereupon, Prospective Juror #10 entered the

4     courtroom.)

5          THE COURT:  Ma'am, just have a seat right there.

6     I'm going to allow these lawyers to ask some questions.

7          PROSPECTIVE JUROR #10:  Okay.

8          THE COURT:  And primarily they're going to focus

9     on the things that happened to you and your father.  They

10    are private and I want to keep them private.

11         PROSPECTIVE JUROR #10:  Okay.

12         THE COURT:  But there is some connection between

13    what happened to you and your father and the allegations

14    involved here.

15         PROSPECTIVE JUROR #10:  Okay.

16         THE COURT:  But please understand, nothing that

17    they say is evidence.

18         PROSPECTIVE JUROR #10:  Okay.

19         THE COURT:  But they just want to get your

20    opinion.

21         PROSPECTIVE JUROR #10:  Okay.

22         THE COURT:  Now, the rule is simple, to be a

23    juror you cannot allow experiences like that to affect any

24    decision you might make in terms of the guilt or non-guilt

25    of defendant.

1          I'd like you to be just quite candid with them

2     and tell them how you feel.

3               Beginning with the People.  Please proceed.

4               MS. GREGORY:  Thanks for answering the questions.

5               The incident with your father, you said that that

6     was about a year-and-a-half ago?

7               PROSPECTIVE JUROR #10:  Uh-hum.

8               MS. GREGORY:  Was that someone, and you might

9     have said this, that was known to him?  Was it a stranger?

10    Who made these allegations?

11              PROSPECTIVE JUROR #10:  I don't really have a

12    relationship with him anymore.  I do know it was someone,

13    it was like someone he worked with.

14              MS. GREGORY:  Okay.  So someone he knew?

15              PROSPECTIVE JUROR #10:  Someone he knew.

16              MS. GREGORY:  Thanks.  I don't have  any other

17    questions.

18              THE COURT:  Mr. Rodriguez?

19              MR. RODRIGUEZ:  Thank you.

20              MR. RODRIGUEZ:  Miss Murray, my client is charged

21    with rape.  You haven't heard this, but during the course

22    of this trial you will hear that it's a knifepoint rape.

23    This is the allegations.

24              We believe you're also going to hear that the

25    victim went to the hospital, the person who was alleged to

                                    KL

1     be the victim went to the hospital.

2              You're also going to hear that the police came to

3     her.

4              Now, these things are very similar to your case.

5              PROSPECTIVE JUROR #10:  Uh-hum.

6              MR. RODRIGUEZ:  And the fact of the matter is

7     that I know this is not the individual who did anything to

8     you, but the fact of the matter is during the course of

9     this you're going to hear about, there's an allegations of

10    oral rape, involving oral sex, vaginal sex, force.  You're

11    going to hear some threatening words and stuff like that.

12             And what I'm trying to get at is there a

13    possibility, right, is it possible that when you start

14    hearing these things, that you may begin to take a visual

15    look back at the things that happened to you such that it

16    could affect you in this case?

17             PROSPECTIVE JUROR #10:  Ever since I was raped

18    and I've gone through therapy, the whole point of therapy

19    is to separate yourself and understand that you're very

20    different from everyone else.  And I think that I can

21    separate myself from that.

22             MR. RODRIGUEZ:  Okay.  So --

23             THE COURT:  Mr. Rodriguez, please allow her just

24    to finish the answer. Then you can proceed with the

25    question.

Voir Dire                                        220

1          PROSPECTIVE JUROR #10:  That's pretty much it.

2          MR. RODRIGUEZ:  Is that it?

3          THE COURT:  Keep your voice up, ma'am.

4          MR. RODRIGUEZ:  And again, so if you were chosen

5    on this jury, my client could have every assurance that you

6    would be just as fair to him in this case as any other case

7    that you might sit in front of, right?

8          PROSPECTIVE JUROR #10:  Yes.

9          MR. RODRIGUEZ:  Okay.  Thank you.

10          THE COURT:  Thank you, ma'am.  Just step outside.

11          (Whereupon, Prospective Juror #10 exited the

12    courtroom.)

13          THE COURT:  Is there anyone else either side

14    wants to voir dire similar to Miss Murray?

15          MS. GREGORY:  No, I don't have anybody.

16          HE COURT:  With that, then let's get these people

17    who were in the box in first and then those in the

18    audience.

19          (Whereupon, the prospective jurors entered the

20    courtroom.)

21          THE COURT:  Those of you in the jury box will now

22    be questioned by the lawyers.

23          Let me just say this:  Again, we keep it fairly

24    light.  If they ask you a question, just don't answer the

25    question to get rid of them.  If you don't understand the

KL

Voir Dire                                221

1    question, ask them to repeat the question.  Just don't

2    answer them so they'll go on to the next person.  Make sure

3    that you understand the question and then try to answer it

4    as best you can.

5                Again, there are no right or wrong answers.  Just

6    be candid.

7                Now, again, if they ask you anything of a

8    personal nature that you want to discuss privately, just

9    say so and we'll do that too.  Okay.

10               With that, People.

11               MS. GREGORY:  Thank you, your Honor.

12               Good morning, ladies and gentlemen.  Again, my

13   name is Miss Gregory.  I'm an assistant DA, and I'm going

14   to be handling this case.

15               As I said to the other groups that came before

16   you, we're just trying to find jurors that are a good fit

17   for this case; jurors who could use their own common sense

18   and their life's training to listen to the evidence and

19   come to a decision at the end.

20               Miss Ruben, how are you?

21               PROSPECTIVE JUROR #1:  I'm fine.

22               MS. GREGORY:  I had discussed with the other

23   group that when witnesses come in and take the witness

24   stand and the questions that are asked of them and their

25   responses, that that's testimony, that's what we call

KL

Voir Dire                                            222

1    testimony; they're going to, you know, respond to the

2    questions that are asked of them.  And that testimony is

3    evidence.  Do you understand that?

4              PROSPECTIVE JUROR #1:  Yes.

5         MS. GREGORY:  Miss Davis, how are you?

6              PROSPECTIVE JUROR #3:  Okay.

7         MS. GREGORY:  The Judge had explained during my

8    questioning a point that I was trying to get across that in

9    New York, in our laws, if you were selected as a juror in

10   this case, if you heard from one witness, and that was the

11   only witness that you heard from about a particular event,

12   if you're a juror and if you believed that witness beyond a

13   reasonable doubt, that our law says that you could find the

14   person guilty; you could base your decision on that one

15   witness' testimony.

16             Now, the question that I'm asking you and

17   everyone else is would you be able to follow that law?

18             PROSPECTIVE JUROR #3:  Yes.

19        MS. GREGORY:  Or would you think to yourself,

20   "you know what, I believe that person, but I'm going to

21   need something else besides that one person"?

22             Did I explain that Okay or --

23             PROSPECTIVE JUROR #3:  Yeah, I could.

24        MS. GREGORY:  You could?

25             PROSPECTIVE JUROR #3:  (Shakes head up and down.)

KL

1          MS. GREGORY:  What about you, Miss Flores?

2          PROSPECTIVE JUROR #4:  The same.

3          MS. GREGORY:  Miss Flores, I'll stick with you

4     for a little bit.

5          We had brought up, or I had brought up the

6     concept or the idea of DNA being used to solve cases.

7     That's something that you've heard about?

8          PROSPECTIVE JUROR #4:  Yeah.

9          MS. GREGORY:  Obviously DNA involves science and

10    things that are, that at firsthand might seem difficult to

11    understand.

12         If you're selected as a juror in this case, could

13    you assure us that you could listen to that evidence?

14         PROSPECTIVE JUROR #4:  Yes.  That's no problem.

15         MS. GREGORY:  And not just immediately think,

16    "oh, you know, that's over my head, that's science"?

17         PROSPECTIVE JUROR #4:  No.

18         MS. GREGORY:  Can everybody else do that, assure

19    us that they'd give that witness a chance who's going to be

20    explaining that science and how the DNA was used?

21         PROSPECTIVE JURORS:  Yes.

22         MS. GREGORY:  Miss Vandesande, good morning.

23         I had brought up the idea about how people

24    respond to certain things in their life, whether they be,

25    you know, positive things or negative things.  Do you think

Voir Dire                                224

1    there's any pat way that a person who was the victim of a

2    crime should respond or behave?

3              PROSPECTIVE JUROR #7:  A set way?  No.

4              MS. GREGORY:  What about you, Miss Cole-McNaught?

5              PROSPECTIVE JUROR #8:  No.

6              MS. GREGORY:  Miss Morrison, hi.

7              If the complainant in this case, the witness,

8    comes in and testifies about -- or in a manner that you

9    think might not be the way that you might expect her to,

10   would you automatically disregard what she has to say?

11             PROSPECTIVE JUROR #9:  No.

12             MS. GREGORY:  Is it fair to say that people have

13   a different response to stresses and pressure?

14             PROSPECTIVE JUROR #9:  Yes.

15             MS. GREGORY:  You know, I don't know what's going

16   to happen, I don't know if you'll be selected as a juror in

17   this case and I don't know the woman who takes the stand,

18   how she'll testify.  Some people might think, "oh, she'll

19   need to cry because obviously she's talking about something

20   bad that happened."  But I'd asked a gentleman in the other

21   group what if that wasn't her response.  Can you imagine

22   why a person might not cry or might not appear emotional?

23             PROSPECTIVE JUROR #9:  Yes.  Because people

24   respond to issues in different ways.

25             MS. GREGORY:  Miss Murray, hi.  The incident that

1   the witnesses will be talking about, the majority of them

2   in this particular case happened some time ago, in 2002.

3   Can you imagine that the adjectives and words that a person

4   would use in describing an incident, you know, multiple

5   times, even if it was being recorded, can you imagine that

6   if they come back and they're talking about that same

7   incident, that they might not use the same exact words and

8   tell the story in the exact same sequence?

9           PROSPECTIVE JUROR #10: Uh-hum.

10          MS. GREGORY:  And if a person, if you were

11  listening to a witness in a case explaining something that

12  happened, and just if they left something out or told it in

13  a different sequence, that alone, not saying whether you

14  found them credible or not, but just that alone, they

15  didn't say it, you know, the exact same way, would that

16  make you discredit what that person was saying?

17          PROSPECTIVE JUROR #10:  No.

18          MS. GREGORY:  Will everyone here be able to give

19  the witnesses a fair listen, and if you find what they're

20  saying credible, then render a verdict accordingly?

21          I'm not saying, you know, the person's going to

22  come in and tell a completely different story and ask you

23  in the end to say, "well, just because they told a

24  different story you should believe them anyway because of

25  what we discussed here."  Obviously you're going to use

Voir Dire                                    226

1       your common sense.  And if you find the story not credible,

2       then you find it not credible regardless if they used the

3       same language or if they don't.

4                Mr. Burton, good morning.

5                PROSPECTIVE JUROR #12:  Good morning.

6                MS. GREGORY:  If you're selected as a juror in

7       this case, you indicated you had some friends in law

8       enforcement, and you indicated to us that that won't have

9       any bearing on how you decide the case or not?

10               PROSPECTIVE JUROR #12:   Right.

11               MS. GREGORY:  Additionally, if you're selected,

12      can you assure us that you'd listen to the evidence and

13      regardless of whether you feel some sympathy for either

14      side, whether it be the witness in the case or the

15      defendant, can you assure us that you could put that

16      sympathy aside when deciding the case?

17               PROSPECTIVE JUROR #12:  Yes.

18               MS. GREGORY:  And what about you, Miss Joseph?

19               PROSPECTIVE JUROR #6:  Yes.

20               MS. GREGORY:  Miss Pons, I'll ask you a final

21      question:  If you're chosen as a juror in this case and I

22      bring on all my witnesses and you listened and you found

23      that I'd proven my case beyond a reasonable doubt, will you

24      be able to find this defendant guilty?

25               PROSPECTIVE JUROR #13:  Yeah.

KL

Voir Dire                                          227

1          MS. GREGORY:  And what about the rest of you?

2          PROSPECTIVE JURORS:  Yes.

3          MS. GREGORY:  Thank you all.

4          THE COURT:  Mr. Rodriguez.

5          MR. RODRIGUEZ:  Thank you, your Honor.

6          Good morning.  Is it morning still?  Yeah.

7          Is it possible -- I don't have the names with me,

8    anyway, so I'm just going to point.  Is that Okay with you?

9    Is it possible for someone to be wrongly accused?

10         PROSPECTIVE JUROR #1:  To be wrongly accused?

11         MR. RODRIGUEZ:  Wrongly accused.

12         PROSPECTIVE JUROR #1:  Yes, it's possible.

13         MR. RODRIGUEZ:  Does the fact that there's an

14   indictment, you know, a piece of paper which is brought

15   saying that there's a crime and you're brought before a

16   court, the fact that there's an indictment, is it still

17   possible they could be wrongly accused?

18         PROSPECTIVE JUROR #1:  There's a possibility

19   they could still wrongly be accused.

20         MR. RODRIGUEZ:  Do you agree with that?

21         PROSPECTIVE JUROR #3:  Yes.

22         PROSPECTIVE JUROR #4:  Yes.

23         PROSPECTIVE JUROR #6:  Yes.

24         PROSPECTIVE JUROR #13:  Yes.

25         MR. RODRIGUEZ:  How about you, do you agree with

KL

1    that?

2                    PROSPECTIVE JUROR #7:  Yes.

3                    PROSPECTIVE JUROR #8:  Yes.

4                    PROSPECTIVE JUROR #9:  Yes.

5                    MR. RODRIGUEZ:  Do you agree with that?

6                    PROSPECTIVE JUROR #10:  Yes.

7                    PROSPECTIVE JUROR #12:  Yes.

8                    MR. RODRIGUEZ:  You've heard me talk about this,

9    and everyone has been paying attention so I'm not going to

10   belabor all the different things because you all were

11   paying attention when you were out there, so I'm just going

12   to avoid some of that, but if someone takes the stand, they

13   take the stand, and the district attorney made a big point

14   of, you know, saying just because people react differently,

15   you know, doesn't mean that they're not telling the truth,

16   right, or you know, you shouldn't presuppose that someone

17   should act a certain way, all right, but wouldn't you agree

18   that that's how you tell whether someone is being honest or

19   not, right, if the story is consistent, right?

20                   Wouldn't you look for consistency in the story?

21                   PROSPECTIVE JUROR #6:  Yes.

22                   MR. RODRIGUEZ:  Wouldn't you look for, when you

23   look, wouldn't you look for how they tell the story?   When

24   you hear the cross-examination of the questions they have,

25   you'd want to determine whether or not you want to give

Voir Dire                                    229

1    credibility to the person, and wouldn't the story have to

2    make sense to you?

3                PROSPECTIVE JUROR #6:  Right.

4                MR. RODRIGUEZ:  It would have to make sense, what

5    someone says?

6                PROSPECTIVE JUROR #5:  Yes.

7                MR. RODRIGUEZ:  And maybe sometimes the People

8    want to tell you that the reactions are not what they would

9    think they are, but you also have your own life

10   experiences, correct, and there are some things you might

11   expect people to do, and if they don't do them, you could

12   use that to determine whether or not you want to give their

13   story credibility, correct?

14               PROSPECTIVE JUROR #5:  Yes.

15               MR. RODRIGUEZ:  Would you agree with that?  Like

16   someone says "that doesn't make sense to me," even though

17   someone can argue, of course someone can argue, "yeah, well

18   everyone acts in different ways," but the reality is it

19   should have some sense in reality in the way we act,

20   because the only thing you have to bring in here is your

21   common sense which you're born with, your life experiences,

22   so you're not going to judge what somebody on Mars would do

23   but what people you might know would do, correct?

24               PROSPECTIVE JUROR #4:  Yes.

25               THE COURT:  The Court will give you instructions.

KL

1     The tests you use to determine whether you believe someone

2     ultimately are the tests you use in dealing with daily

3     living with folks.

4              But again, you can take into account whether the

5     witness said something differently at an earlier time, the

6     manner of the witness, those are things you can take into

7     account.

8              Let's not belabor the point.

9              MR. RODRIGUEZ:  I'll move along, your Honor.

10             Now, crying, right, that's another thing, do you

11    think someone should cry or not cry.  You know, I don't

12    know, maybe someone can cry on call, I don't know.  People,

13    actors, cry all the time, you know.  I don't know if

14    there's some other experience that causes you to cry.  I

15    don't know where people pull it from if they want to.  So

16    the emotionality of someone on the stand, you have to take

17    that and view it with everything, you know what I mean?

18    Because she might cry.  You know, she might say she's not

19    going to cry and fully know she's going to cry.  I don't

20    know.  I don't know.

21             THE COURT:  This Court will explain to you

22    specifically that sympathy, empathy, are factors you can't

23    take into account.  You're not to decide this case

24    emotionally.

25             MR. RODRIGUEZ:  Thank you, your Honor.

Voir Dire                                    231

1              All right.  Now, the number of witnesses.  Now,

2      you've heard the list of names, right? Those are potential

3      witnesses in the case.  Now, again, there may be one

4      witness to the incident that happened, but you'll hear a

5      number of witnesses.  But the fact that you hear a number

6      of witnesses and may not hear anything from any client, you

7      know, he has no obligation to testify in this case.  He may

8      have nothing to say.

9              The fact that you don't hear anything from this

10     client, from my client, does not shift the burden to us to

11     disprove the case.  Do we all accept that?

12             Do you accept that, Miss Pons?

13             PROSPECTIVE JUROR #13:  I'm not sure.  I think he

14     would be vital in this situation.  I would like to hear

15     from him, but that's not my, you know, not my place to say.

16     But I think that if I heard his side of the story, that

17     would be helpful.

18             MR. RODRIGUEZ:  But then that's to say that not

19     to hear his story would affect your ability too?

20             PROSPECTIVE JUROR #13:  I don't know yet.  I have

21     no idea.  I haven't heard any of the case presented, so I'm

22     not sure at this point.  I don't know.  I have to hear

23     everything.  There's more than one side to a story, so it

24     depends.

25             THE COURT:  Initially I gave you some rules that

KL

1    apply and I asked you -- you're not lawyers and I don't

2    expect you to remember them, but look, there is no

3    obligation on the part of a defendant to testify.

4              PROSPECTIVE JUROR #13:  Okay.  I understand that.

5              THE COURT:  And if that does not occur, you

6    cannot raise it during jury deliberations.  You must decide

7    the case on the basis of what you hear in terms of the

8    evidence from any other sources.

9              PROSPECTIVE JUROR #13:  I understand.

10             THE COURT:  The burden remains on the People,

11   never shifts.

12             PROSPECTIVE JUROR #13:  I understand.

13             THE COURT:  I would just ask counsel, look, it's

14   nice to get answers, but her answer is a common occurrence

15   with jurors.  You're asking about expectations, and it's

16   her following the law.  The law is she must obey the

17   Court's rule in terms of a defendant having no obligation

18   to testify and she can't use it against him.  But if you're

19   asking about expectations, you're going to get the answer

20   she gave you in the first instance.

21             MR. RODRIGUEZ:  I understand that.  Maybe if I

22   reword the question.

23             THE COURT:  That works fine, sir.

24             MR. RODRIGUEZ:  All right.

25             Now that the Judge has explained that to you, all

Voir Dire                                        233

1    right, can you honestly -- this is a very serious charge.

2                    PROSPECTIVE JUROR #13:  I understand.

3                    MR. RODRIGUEZ:  Remember voir dire, speak to

4    truth.  Can you promise that you will not think about his

5    failure to testify in terms of coming to a decision about

6    whether or not the People have proved him guilty?

7                    PROSPECTIVE JUROR #13:  That could be done, yes.

8                    MR. RODRIGUEZ:  Will it be done?

9                    PROSPECTIVE JUROR #13:  Yes.  It will be done,

10   yes.

11                   MR. RODRIGUEZ:  Can you promise me that as well,

12   ma'am? I saw you shaking your head at one point saying you

13   want to hear both sides.  But understand what the Judge is

14   saying?

15                   PROSPECTIVE JUROR #6:  Yes, I understand.

16                   MR. RODRIGUEZ:  If you're on the case, you cannot

17   consider that at all.  You must base your decision whether

18   or not the People have proven this case, proved their case,

19   whether he testifies or not. Can you promise me that you

20   will do that?  This is a very important point.

21                   PROSPECTIVE JUROR #6:  Yes.

22                   MR. RODRIGUEZ:  Can you, sir?

23                   PROSPECTIVE JUROR #12:   Yes.

24                   MR. RODRIGUEZ:  Can you promise that?

25                   PROSPECTIVE JUROR #10:  Yes.

Voir Dire                                        234

1        PROSPECTIVE JUROR #9:  Yes.

2        PROSPECTIVE JUROR #8:  Yes.

3        PROSPECTIVE JUROR #7:  Yes.

4        MR. RODRIGUEZ:  Can you promise me that?

5        PROSPECTIVE JUROR #4:  Yes.

6        MR. RODRIGUEZ:  Can you promise me that?

7        PROSPECTIVE JUROR #3:  Yes.

8        MR. RODRIGUEZ:  Can you promise me that?

9        PROSPECTIVE JUROR #1:  Yes.

10       MR. RODRIGUEZ:  Any one have any reservations

11   about that that they want to say?  Anything that they're

12   thinking about regarding that?

13            Then we can move on.  Okay.

14            You know what, everyone I imagine has been

15   listening very carefully to everything that's been said.

16   Is there any reason why you would not make a fair and

17   impartial juror in this case to both the prosecution and

18   the defense?

19       PROSPECTIVE JUROR #13:  No, not at all.

20       MR. RODRIGUEZ:  Any reason you would not be a

21   fair and impartial juror?

22       PROSPECTIVE JUROR #6:  No.

23       MR. RODRIGUEZ:  Any reason you would not?

24       PROSPECTIVE JUROR #12:  No.

25       MR. RODRIGUEZ:  Anything you can think of,

KL

Voir Dire                                     235

1        anything you can think of?

2                  What about you, anything that you would not be

3        fair to both parties, all parties?

4                  You ma'am, anything?

5                  PROSPECTIVE JUROR #10:  No.

6                  MR. RODRIGUEZ:  And you?

7                  PROSPECTIVE JUROR #9:  No.

8                  PROSPECTIVE JUROR #8:  No.

9                  PROSPECTIVE JUROR #7:  No.

10                 MR. RODRIGUEZ:  And you?

11                 PROSPECTIVE JUROR #4:  No.

12                 PROSPECTIVE JUROR #3:  No.

13                 PROSPECTIVE JUROR #1:  No.

14                 MR. RODRIGUEZ:  Okay.  Thank you very much.

15                 THE COURT:  Folks, I want to thank you.  Just

16       step outside.  We'll have you back in a moment.

17                 Everybody, please do not discuss the case, any

18       aspect of it, while you're outside, please.

19                 (Whereupon, the prospective jurors exited the

20       courtroom.)

21                 THE COURT:  When both sides are ready, just

22       advise us.

23                 (Brief pause in proceedings.)

24                 THE CLERK:  Counsel, we have four jurors

25       selected.

                              KL

1              The entire panel for cause.

2              People?

3              MS. GREGORY:  No.

4              THE CLERK:  Defense?

5              MR. RODRIGUEZ:  Yes.  Number 13.  I could not

6    believe that Miss Pons can follow the directions of the

7    Court regarding the burden of proof vis-a-vis my client not

8    having to testify in this case.

9              THE COURT:  Miss Gregory, would you like to

10   respond?

11             MS. GREGORY:  Yes, your Honor. Miss Pons did

12   raise a concern, but then she said she could follow the law

13   as given.  She said she'd like to hear from him but could

14   follow the law.

15             THE COURT:  The Court did not hear anything from

16   this juror that would reflect the juror is not prepared to

17   follow the law.

18             Challenge for cause is denied.

19             THE CLERK:  Any other challenges for cause,

20   defense?

21             MR. RODRIGUEZ:  None.

22             THE CLERK:  Peremptorily then, only through

23   number nine.

24             People?

25             MS. GREGORY:  Number three, Miss Davis.

Voir Dire                                          237

1            Number six, Miss Joseph.

2            And number eight, Miss Cole-McNaught.

3            THE COURT:  That's three, six and eight.  Is that

4       correct, that you're exercising challenges on?

5            MS. GREGORY:  Yes, your Honor.

6            THE COURT:  Okay.

7            THE CLERK:  Defense?

8            MR. RODRIGUEZ:  Number four, Miss Flores.

9       That's it.

10           THE CLERK:  Then Juror #1, Ruben, five, McIntosh,

11      seven, Vandesande and Morrison are acceptable?

12           MR. RODRIGUEZ:  Yes.

13           MS. GREGORY:  Yes.

14           THE CLERK:  Ruben will become Juror #5, Erline

15      McIntosh six, Rebecca Vandesande seven and Morrison eight.

16           THE CLERK:  The remaining three jurors,

17      peremptorily, People?

18           MS. GREGORY:  No.

19           THE COURT:  For the record, who are they?

20           THE CLERK:  Burton, Murray and Pons.

21           THE COURT:  People, any challenges?

22           MS. GREGORY:  No.

23           THE CLERK:  Defense?

24           MR. RODRIGUEZ:  Yes.  There's ten.

25           THE CLERK:  Number ten, Murray.

                          KL

Voir Dire                                          238

1          So 12, Burton, and 13, Pons?

2          MR. RODRIGUEZ:  Miss Murray and Miss Pons.

3          THE CLERK:  Juror number twelve, Burton, is

4    acceptable to both sides?

5          MS. GREGORY:  Yes.

6          THE CLERK:  And becomes our ninth juror.

7          THE CLERK:  That exhausts the round.

8          THE COURT:  Okay.

9          Bring the selected jurors in, please, just the

10   selected jurors.

11          THE CLERK:  There's nine challenges exercised by

12   the People, 11 by the defense.

13          (Transcript continued on next page.)

14

15

16

17

18

19

20

21

22

23

24

25

KL

1          (Whereupon, the selected jurors entered the

2     courtroom.)

3          THE COURT:  Folks, the five of you have been

4     selected to sit on this case.  In a moment I'm going to

5     have the court officers escort you to the jury room.

6     You'll remain there and we'll advise you of the status of

7     the case.

8          I'm going to given you some instructions.  These

9     instructions will govern your conduct.  And when you are

10    sworn as a trial jury, I'll repeat these instructions, so

11    please keep them in mind.

12         You are to keep an open mind and not form, or

13    express, any opinion as to the guilt or non-guilt of this

14    defendant until you've heard all the evidence, the closing

15    arguments of the lawyers, you've been given my instructions

16    on the law and go into the jury room to begin jury

17    deliberations.

18         You are not to discuss this case with your fellow

19    jurors or with anyone, nor should you permit anyone in your

20    presence to talk about this case.

21         Do not visit any location mentioned.  Do not try

22    to investigate any fact on your own.  Do not read, watch or

23    listen to any accounts of this case, should there be any in

24    the news media.

25         And if you have a computer and surf the internet,

KL

Voir Dire                                                      240

1   do not try to get any information about this case or about

2   the parties or about anybody involved in this case.

3           Immediately report any attempts by anyone to

4   approach you or a fellow juror about your jury service and

5   about this case.

6           And until you're discharged, you may not accept

7   compensation or discuss the acceptance of compensation for

8   supplying information about this case.

9           Now, with those rules in mind, take the jurors

10  out.

11          And just of Miss Vandesande remain for a moment,

12  but take the other jurors out, please.

13          (Selected jurors with the exception of Juror #7,

14  Rebecca Vandesande, exited the courtroom.)

15          THE COURT:  Miss Vandesande, you had mentioned

16  you had a child care problem Thursday, is that correct?

17          JUROR #7:  I just need to know the schedule and

18  organize things.

19          THE COURT:  Well, we had intended to work a full

20  day Thursday.  But if Thursday afternoon you have a child

21  care problem, we'll accommodate you.

22          JUROR #7: I can most likely get somebody to pick

23  her up.  If I know ahead of time, I can organize it.  I

24  just need to know the schedule.

25          THE COURT:  I was going to try to open this

KL

1    afternoon, but I still have to get three jurors and

2    probably three alternates, so that may take the rest of the

3    afternoon.  So we may wind up opening tomorrow.  If we do

4    that, then I'd like to at least try to get a full day in.

5                JUROR #7:  Okay.  So I can organize it.

6                THE COURT:  Okay.  For the moment then, just

7    remain in the jury room.  Once I talk to the lawyers, we'll

8    get back to you and the other jurors.  Just follow the

9    officer to the jury room.

10               (Juror #7 exited the courtroom.)

11               THE COURT:  Miss Gregory, if we had gotten this

12   jury selected, could you have opened and put any witnesses

13   on today?

14               MS. GREGORY:  I couldn't have put any witnesses

15   on, your Honor.

16               THE COURT:  Okay.  Then let's do this:  Send

17   somebody down to get additional jurors.  You said one of

18   the first four is not with us yet?

19               THE CLERK:  Wasn't as of when we started

20   selections.

21               THE COURT:  If they're all there, then I'm going

22   to let them go and have them come in tomorrow.

23               (Pause in proceedings.)

24               THE COURT:  Take the defendant down.  And when we

25   get the supplemental panel, let me know.

KL

1            (Whereupon, a recess was taken.)

2            (After recess, whereupon the selected jurors

3     entered the courtroom.)

4            THE CLERK:  Case on trial.  All parties are

5     present.

6            Both sides waive the reading of the roll of the

7     selected jurors?

8            MR. RODRIGUEZ:  Yes.

9            MS. GREGORY:  Yes.

10           THE COURT:  Folks, good afternoon.

11           We're still involved with jury selection.  I

12    don't expect we're going to complete that before 5 o'clock.

13    So I think it's best that we break for the day with you.  I

14    appreciate your coming in.  But I'm asking you please

15    tomorrow morning be in the jury room 10 o'clock ready to

16    go.  You can expect a full day.

17           Keep my warnings in mind.  See you tomorrow.

18           (Whereupon the selected jurors exited the

19    courtroom.)

20           THE COURT:  I need the seven who were in the

21    audience first, and then the others follow.

22           (Whereupon, the remaining prospective jurors from

23    the first panel entered the courtroom.)

24           THE COURT:  He's going to call the names.  Just

25    take the seat as directed.

1           THE CLERK:  Debra Volpe, V-O-L-P-E, if you'll

2      take seat number one.

3           Salem Shavef, take seat two. Last name

4      S-H-A-V-E-F.

5           Linda Blye, last name spelled, B-L-Y-E, seat

6      three.

7           Mark Broomes, take seat four, last name spelled

8      B-R-O-O-M-E-S.

9           Steven Cole, last name is spelled C-O-L-E, seat

10     five.

11          Lorraine Barnaby, you'll take seat six.  Last

12     name is spelled B-A-R-N-A-B-Y.

13          Bernadette Gonzalez, you'll take seat number

14     seven, please.  Last name spelled G-O-N-Z-A-L-E-Z.

15          THE COURT:  That exhausts the panel.

16          (Whereupon, a supplemental panel of prospective

17     jurors entered the courtroom.)

18          THE COURT:  To those prospective jurors who just

19     came into the courtroom, I'm going to ask you to sit

20     quietly.  We're in the process of trying to complete jury

21     selection.  I have these seven from yesterday.  I'm going

22     to try to expedite the handling of their voir dire, and

23     after that's done, I'm sure I'm not going to get what I

24     need, we will address you.  But it will probably be after

25     lunch.

1           For the moment, just sit quietly.  I know it's

2      going to seem strange because I haven't introduced anybody,

3      but please just listen.

4           If you will, Miss Volpe, the questionnaire,

5      please.

6           PROSPECTIVE JUROR #1:  Debra Volpe, I'm 32.  I

7      live in Dyker Heights.

8           College.  I'm a nurse.

9           I'm single, with no children.

10          I enjoy swimming and the beach and sleeping.

11          I don't belong to any organizations.

12          And I read The Daily News.

13          THE COURT:  Any friends or relatives in law

14     enforcement, ma'am?

15          PROSPECTIVE JUROR #1:  No.

16          THE COURT:  Any opinion about the criminal

17     justice system which would affect your ability to be fair?

18          PROSPECTIVE JUROR #1:  No.

19          THE COURT:  Were you, a family member or friend

20     ever the victim of a crime?

21          PROSPECTIVE JUROR #1:  Yes.

22          THE COURT:  Who are we talking about?

23          PROSPECTIVE JUROR #1:  Me.

24          THE COURT:  Are you able to talk about that

25     publicly?

Voir Dire                                              245

1              PROSPECTIVE JUROR #1:  No.

2              THE COURT:  Ever accused of a crime?

3              PROSPECTIVE JUROR #1:  No.

4              THE COURT:  Any family member or friend ever

5    accused?

6              PROSPECTIVE JUROR #1:  No.

7              THE COURT:  Is there any reason why you can't

8    sit?

9              PROSPECTIVE JUROR #1:  No.

10             THE COURT:  Mr. Shavef, please, sir.

11             PROSPECTIVE JUROR #2:  Salem Shavef.  I'm age 38.

12   I live in Flatbush.

13             I have a master's in law and taxation.  I'm an

14   editor and an attorney.

15             I'm single, no children.

16             My interests are traveling, writing, reading.

17             I belong to New York State Bar Association.

18             I don't have any favorite newspapers, but I read

19   everything, internet papers, TV.

20             THE COURT:  Any friends or relatives in law

21   enforcement?

22             PROSPECTIVE JUROR #2:  I have friends in the

23   Department of Probation.

24             THE COURT:  Do you think those relationships

25   would affect your ability to be fair?

                            KL

Voir Dire                                                          246

1              PROSPECTIVE JUROR #2:  No.

2              THE COURT:  Any opinion about the criminal

3      justice system which would affect your ability to be fair?

4              PROSPECTIVE JUROR #2:  No.

5              THE COURT:  Were you ever the victim of a crime?

6              PROSPECTIVE JUROR #2:  Yes.

7              THE COURT:  Are you able to talk about it

8      publicly?

9              PROSPECTIVE JUROR #2:  Sure.

10             THE COURT:  What happened?

11             PROSPECTIVE JUROR #2:  About three years ago I

12     had my car broken into, an attempted theft.

13             THE COURT:  Did you report that?

14             PROSPECTIVE JUROR #2:  Yes.

15             THE COURT:  Any arrests made?

16             PROSPECTIVE JUROR #2:  No.

17             THE COURT:  Do you think that circumstance would

18     affect your ability to be fair?

19             PROSPECTIVE JUROR #2:  No.

20             THE COURT:  In terms of friend or family member

21     ever having been the victim of a crime, anything like that?

22             PROSPECTIVE JUROR #2:  No.

23             THE COURT:  Were you ever accused of a crime?

24             PROSPECTIVE JUROR #2:  No.

25             THE COURT:  As far as you know, any family member

                                KL

1        or friend ever accused?

2                    PROSPECTIVE JUROR #2:  No.

3                    THE COURT:  Any prior jury service?

4                    PROSPECTIVE JUROR #2:  No.

5                    THE COURT:  First time?

6                    PROSPECTIVE JUROR #2:  Yep.

7                    THE COURT:  Is there any reason why you couldn't

8        sit on this case?

9                    PROSPECTIVE JUROR #2:  No.

10                    THE COURT:  Miss Blye, if you will, ma'am.

11                    PROSPECTIVE JUROR #3:  Linda Blye, 55.  I live in

12       Sheepshead Bay.

13                    College.  I'm a teacher.

14                    I'm single. I have three children, all over 18.

15                    Interests and hobbies vary.

16                    Organizations, teachers and school associations.

17                    I read all the newspapers.  No favorite.

18                    THE COURT:  Any friends or relatives in law

19       enforcement?

20                    PROSPECTIVE JUROR #3:   I have a daughter who's a

21       corrections officer.

22                    THE COURT:  Do you think that relationship would

23       affect your ability to be fair?

24                    PROSPECTIVE JUROR #3:  No.

25                    THE COURT:  Any opinion about the criminal

KL

1              justice system which would prevent you from being fair?

2                        PROSPECTIVE JUROR #3:  No.

3                        THE COURT:  Were you, a family member or friend

4        ever the victim of a crime?  Car stolen, house burglarized

5        anything like that?

6                        PROSPECTIVE JUROR #3:  Me and a friend.

7                        THE COURT:  What was that?

8                        PROSPECTIVE JUROR #3:  Me, my house was broken

9        into.  A friend, car stolen.

10                       THE COURT:  Do you think those circumstances

11       would affect your ability to sit on this case?

12                       PROSPECTIVE JUROR #3:  No.

13                       THE COURT:  Were you, a family member or friend

14       ever accused of a crime?

15                       PROSPECTIVE JUROR #3:  No.

16                       THE COURT:  Any prior jury service where you

17       actually sat on a jury or grand jury?

18                       PROSPECTIVE JUROR #3:  No.

19                       THE COURT:  Any reason you couldn't sit on this

20       case?

21                       PROSPECTIVE JUROR #3:  Open school night at

22       school is on Thursday and Friday.

23                       THE COURT:  At night?

24                       PROSPECTIVE JUROR #3:  Thursday night.  Friday

25       day.

                                   KL

Voir Dire                                         249

1                THE COURT:  What time is it Friday?

2                PROSPECTIVE JUROR #3:  Friday's at 6:00.

3                THE COURT:  Six in the evening?

4                PROSPECTIVE JUROR #3:  Yes.

5                THE COURT:  And Thursday?

6                PROSPECTIVE JUROR #3:  I'm sorry.  Thursday in

7     the evening.  Friday it's in the afternoon, at 12:00.

8                THE COURT:  Okay.  As I told you, we will

9     probably work a full day tomorrow.  Friday it will only be

10    up until lunch.  So, I mean, we can probably accommodate

11    you in that regard if selected.  Okay?

12               PROSPECTIVE JUROR #3:  Yes.

13               THE COURT:  Thank you.

14               Mr. Broomes, if you will, sir.

15               PROSPECTIVE JUROR #4:  Mark Broomes, age 20.  I

16    live in Crown Heights.

17               Hold a regents diploma.  I'm a secretary.

18               Single, no children.

19               No interests or hobbies I'd like to discuss.

20               No organizations.

21               I read The Times, as well as The Daily News.

22               THE COURT:  Any friends or relatives in law

23    enforcement?

24               PROSPECTIVE JUROR #4:  No.

25               THE COURT:  Any opinion about the system,

KL

1       criminal justice system that is, that would affect your

2       ability to be fair?

3                       PROSPECTIVE JUROR #4:  No.

4                       THE COURT:  Ever the victim of a crime?

5                       PROSPECTIVE JUROR #4:  No.

6                       THE COURT:  Any family member or friend ever the

7       victim of a crime?

8                       PROSPECTIVE JUROR #4:  No.

9                       THE COURT:   Ever accused of a crime?

10                      PROSPECTIVE JUROR #4:  No.

11                      THE COURT:  Any family member or friend ever

12      accused?

13                      PROSPECTIVE JUROR #4:  No.

14                      THE COURT:  Any prior jury service?

15                      PROSPECTIVE JUROR #4:  No.

16                      THE COURT:  First time?

17                      PROSPECTIVE JUROR #4:  Yes.

18                      THE COURT:  Is there any reason why you couldn't

19      sit on this case?

20                      PROSPECTIVE JUROR #4: No.

21                      THE COURT:  Thank you.

22                      THE COURT:   Mr. Cole.

23                      PROSPECTIVE JUROR #5:  Steven Cole, 57.  Windsor

24      Terrace.

25                      College.  Chef. Married.  No children.

                                    KL

```
 1                    THE COURT:  Your wife, what does she do, sir?

 2                    PROSPECTIVE JUROR #5: She's an administrator for

 3       Easter Seals.

 4                    THE COURT:  Any areas of interest or hobbies

 5       you'd care to mention?

 6                    PROSPECTIVE JUROR #5:  No.  Not to discuss.

 7                    THE COURT:  Organizations?

 8                    PROSPECTIVE JUROR #5:  No.

 9                    THE COURT:  Favorite newspaper?

10                    PROSPECTIVE JUROR #5:  I don't have one.  I just,

11       I get my news from the radio, TV and my wife.

12                    THE COURT:  Sounds familiar.

13                    PROSPECTIVE JUROR #5:  Right.

14                    THE COURT:  Yes, sir.

15                    Any friends or relatives in law enforcement?

16                    PROSPECTIVE JUROR #5:  Brother-in-law retired

17       police officer.  Friend who's a judge.

18                    THE COURT:  Do you think those relationships

19       would affect your ability to be fair?

20                    PROSPECTIVE JUROR #5:  No.

21                    THE COURT:  Any opinion about the criminal

22       justice system which would affect your ability to be fair?

23                    PROSPECTIVE JUROR #5:  No.

24                    THE COURT:  Were you, a family member or friend

25       ever the victim of a crime?
```

Voir Dire                                        252

1                PROSPECTIVE JUROR #5:  My wife.  Her bag was

2      stolen.

3                THE COURT:  Was that reported?

4                PROSPECTIVE JUROR #5:  Yes.

5                THE COURT:  Do you think that circumstance would

6      affect your ability to be fair?

7                PROSPECTIVE JUROR #5:  No.

8                THE COURT:  Ever accused of a crime?

9                PROSPECTIVE JUROR #5:  No.

10               THE COURT:  As far as you know, any family member

11     or friend ever accused?

12               PROSPECTIVE JUROR #5:  No.

13               THE COURT:  Prior jury service, any at all?

14               PROSPECTIVE JUROR #5:  Yes.

15               THE COURT:  Civil or criminal?

16               PROSPECTIVE JUROR #5:  Last one was criminal.

17               THE COURT:  What was the charge, do you remember?

18               PROSPECTIVE JUROR #5:  It was drug possession,

19     drug dealing.

20               THE COURT:  Were you one of the first 12 or an

21     alternate juror?

22               PROSPECTIVE JUROR #5:  First 12.

23               THE COURT:  Did the jury deliberate?

24               PROSPECTIVE JUROR #5:  Yes.

25               THE COURT:  Was a verdict reached?

Voir Dire                                253

1                    PROSPECTIVE JUROR #5:  Yes.

2                    THE COURT:  What was the verdict?

3                    PROSPECTIVE JUROR #5:  Not guilty.

4                    THE COURT:  Anything about your service on that

5        case that would affect your ability to sit on this case?

6                    PROSPECTIVE JUROR #5:  No.

7                    THE COURT:  Is there any reason why you couldn't

8        sit?

9                    PROSPECTIVE JUROR #5:  I have -- I can't sit here

10       after the 3rd of November.  I'm going on vacation, I think

11       the Friday, November 4th.  So that's it. The way you say

12       it, it should be over by then.

13                   THE COURT:  Yes, sir.

14                   PROSPECTIVE JUROR #5:  Otherwise I don't have a

15       problem.

16                   THE COURT:  All right.

17                   There's no way of knowing.  Once the case is

18       given to the jury, it's the jury's call.

19                   Counsels, do I have your consents on that one?

20                   MS. GREGORY:  Yes.

21                   MR. RODRIGUEZ:  Yes, your Honor.

22                   THE COURT:  Enjoy your vacation.  Going someplace

23       warm?

24                   PROSPECTIVE JUROR #5:  Excuse me?

25                   THE COURT:  Someplace warm?

KL

Voir Dire                                    254

1            PROSPECTIVE JUROR #5:  I'm going to Florida, if

2     it's still there.  Thank you.

3            THE COURT:  Yes, sir.

4            (Whereupon, Prospective Juror #5 exited the

5     courtroom.)

6            THE COURT:  Miss Barnaby, if you will, please.

7            PROSPECTIVE JUROR #6:  Lorraine Barnaby.  I'm 39.

8     I live in the Bushwick area.

9            College.  I'm a student.  I'm married.  My

10    husband is self-employed.  I have two children, 19 and 18.

11    They're both away at college.

12           No interests of anything except my kids and I

13    love to read.

14           No organizations.  No favorite newspaper.  I

15    watch TV, radio, internet.

16           THE COURT:  Any friends or relatives in law

17    enforcement?

18           PROSPECTIVE JUROR #6:  I have a cousin who's a

19    lawyer.

20           THE COURT:  Does he or she do criminal law?

21           PROSPECTIVE JUROR #6: No.

22           THE COURT:  In any event, would that relationship

23    affect your ability to be fair?

24           PROSPECTIVE JUROR #6: No.

25           THE COURT:  Any opinion about the criminal

KL

1        justice system which would affect your ability to be fair?

2                    PROSPECTIVE JUROR #6:  No.

3                    THE COURT:  Were you ever the victim of a crime?

4                    PROSPECTIVE JUROR #6: No.

5                    THE COURT:  As far as you know, any family member

6        or friend ever the victim of a crime?

7                    PROSPECTIVE JUROR #6:  No.

8                    THE COURT:  Ever accused of a crime?

9                    PROSPECTIVE JUROR #6:  No.

10                   THE COURT:  What about a family member or friend?

11                   PROSPECTIVE JUROR #6:  No.

12                   THE COURT:  Any prior jury service where you

13       actually served on a jury?

14                   PROSPECTIVE JUROR #6:  First time.

15                   THE COURT:  Any reason why you can't sit?

16                   PROSPECTIVE JUROR #6:  No.

17                   THE COURT:  Okay.  All right.

18                   Miss Gonzalez, if you will, please.

19                   PROSPECTIVE JUROR #7:  Bernadette Gonzalez, age

20       39.  I live at --

21                   THE COURT:  Just the area.

22                   PROSPECTIVE JUROR #7:  Bed-Stuy.

23                   THE COURT:  Educational background.  College?

24       High school?  What?

25                   PROSPECTIVE JUROR #7:  Just high school, that's

KL

Voir Dire                                                    256

1        it.

2                     THE COURT:  Are you working?

3                     PROSPECTIVE JUROR #7:  Unemployed.

4                     THE COURT:  Married? Single? Divorced?

5                     PROSPECTIVE JUROR #7:  Single.

6                     THE COURT:  Any children?

7                     PROSPECTIVE JUROR #7:  Four.

8                     THE COURT:  Any areas of interest or hobbies

9        you'd care to mention?

10                    PROSPECTIVE JUROR #7:  Music, that's it.

11                    THE COURT:  Any organizations you belong to you'd

12       care to mention?

13                    PROSPECTIVE JUROR #7:  No.

14                    THE COURT:  Favorite newspaper, at least one you

15       read more so than others?

16                    PROSPECTIVE JUROR #7:  Not at all.

17                    THE COURT:  How do you get your news?

18       Television?

19                    PROSPECTIVE JUROR #7:  Yes.

20                    THE COURT:  You watch a lot of it?

21                    PROSPECTIVE JUROR #7:  No.

22                    THE COURT:  Any friends or relatives in law

23       enforcement?

24                    PROSPECTIVE JUROR #7:  No.

25                    THE COURT:  Any opinion about the criminal

                              KL

1     justice system which would affect your ability to be fair?

2                   PROSPECTIVE JUROR #7:  Yes.

3                   THE COURT:  Okay.  All right.

4            Folks, I'm sorry, I need to speak to two of these

5     people privately.  I'm going to do so.  I'll have you back

6     in a moment.  Just step out.  Do not leave the floor.

7                   Miss Gonzalez, remain where you are.

8            Everybody else step out of the box.  We'll have

9     you back shortly.

10           I'm going to speak to you as well, Miss Volpe.  It

11    will be after Miss Gonzalez.

12                  PROSPECTIVE JUROR #1:  I'm sorry?

13                  THE COURT:  You'll be next.

14                  PROSPECTIVE JUROR #1:  Okay.  I'm sorry.

15                  THE COURT:  No problem.

16           (Whereupon, all prospective jurors exited the

17    courtroom with the exception of Prospective Juror #7.)

18                  THE COURT:  Miss Gonzalez, if you will, please,

19    you have an opinion.  Just tell us what it is.

20                  PROSPECTIVE JUROR #7:  I just live in the area.

21                  THE COURT:  Oh, Okay.  You live in the area?

22                  PROSPECTIVE JUROR #7:   And I'm too familiar with

23    the neighborhood.

24                  THE COURT:  Okay.  You think as a result of that

25    you don't want to sit on this case?

                              KL

Voir Dire                                          258

1           PROSPECTIVE JUROR #7:  No.

2           THE COURT:  Does either side wish to pursue it

3    any further?

4           MS. GREGORY:  No, your Honor.

5           MR. RODRIGUEZ:  No.

6           THE COURT:  Do I have your consents?

7           MS. GREGORY:  Yes.

8           MR. RODRIGUEZ:  Yes, your Honor.

9           THE COURT:  Ma'am, thank you very much.  Return

10   downstairs to the second floor where you came from

11   yesterday.

12          PROSPECTIVE JUROR #7:  Okay.

13          THE COURT:  Miss Volpe, please.

14          (Whereupon, Prospective Juror #7 exited the

15   courtroom and Prospective Juror #1 entered the courtroom.)

16          THE COURT:  If you will, ma'am, just have a seat.

17   Your name again, please?

18          PROSPECTIVE JUROR #1:  Debra Volpe.

19          THE COURT:  You had indicated, I believe, you had

20   been the victim of a crime?

21          PROSPECTIVE JUROR #1:  I was sexually assaulted.

22          THE COURT:  How long ago are we talking about?

23          PROSPECTIVE JUROR #1:  About ten years ago.

24          THE COURT:  Was that here in Kings County?

25          PROSPECTIVE JUROR #1:  Yes.

KL

Voir Dire                                                    259

1              THE COURT:  Any arrests made?

2              PROSPECTIVE JUROR #1:  No.  I never reported it.

3              THE COURT:  After the event, did you consult any

4      doctor in terms of counseling and stuff like that?

5              PROSPECTIVE JUROR #1:  Yes, counseling I went to.

6              THE COURT:  How long were you involved with that?

7              PROSPECTIVE JUROR #1:  Couple of years.

8              THE COURT:  Are you presently involved with any

9      groups that --

10             PROSPECTIVE JUROR #1:  No.

11             THE COURT:  -- advocate, I mean advocate against

12     violence against women?

13             PROSPECTIVE JUROR #1:  No.

14             THE COURT:  Do you think what happened to you --

15     I mean, was this a stranger or a friend or what?

16             PROSPECTIVE JUROR #1:  Stranger.

17             THE COURT:  Do you think what happened to you, do

18     you think you can separate that from this case?

19             PROSPECTIVE JUROR #1:  No.

20             THE COURT:  You cannot.  Okay, fine.

21             Counsel, any objection to her being excused?

22             MS. GREGORY:  No.

23             MR. RODRIGUEZ:  No.

24             THE COURT:  Thank you, ma'am.

25             (Whereupon, Prospective Juror #1 exited the

                              KL

1      courtroom.)

2              THE COURT:  Let's get those people in the box

3      back in and the people in the audience as well.

4              (Whereupon, all prospective jurors entered the

5      courtroom.)

6              THE COURT:  Now, I have introduced to you the

7      attorneys and the defendant.  Do any of these individuals

8      seem familiar in the sense that before you came in

9      yesterday you might have seen them outside on the street?

10             This crime is alleged to have happened in the

11     vicinity of 478 Marcy Avenue.  Some of you may have an

12     idea where it is.  I'm more concerned about whether you

13     live, visit or work near that address on a regular basis.

14     Anybody?

15             PROSPECTIVE JURORS:  No.

16             THE COURT:  I've read some names to you, Gina

17     Colon, Tammy Little, Detective Steve Litwin, Police Officer

18     Kevin Fedynak, a Nurse Durant from Woodhull Hospital, a

19     Nurse Dan McSwiggan, Marie Samples, Don Lewittes, Aubry

20     Weeks. Any of those names seem familiar to anyone?

21             PROSPECTIVE JURORS:  No.

22             THE COURT:  Now, other than what's alleged here,

23     do you think you know anything at all about this case?  I'm

24     not talking about what the lawyers have said, but read

25     anything or heard anything about the case at all?

Voir Dire                                             261

1               PROSPECTIVE JURORS:  No.

2               THE COURT:  And finally, is there anybody who

3       feels that he or she can't follow the law as I give it?

4               Okay.  In the absence of any statement to the

5       contrary, we'll proceed now.

6               Miss Gregory, if you will, please.

7               MS. GREGORY:  Thank you, your Honor.

8               Good afternoon, ladies and gentlemen.

9               Again, my name is Miss Gregory and I'm the

10      Assistant DA handling this case.

11              You've been here both days, you've heard a lot of

12      the issues that have been brought up by both Mr. Rodriguez

13      and I have brought up with the people that have sat before

14      you.

15              Mr. Shavef, how are you?

16              PROSPECTIVE JUROR #2:  Fine.

17              MS. GREGORY:  I just want to touch on something

18      that I had brought up before about the one witness.  And

19      knowing that that's our law in New York -- and you're an

20      attorney, right?

21              PROSPECTIVE JUROR #2:  Yes.

22              MS. GREGORY:  Would you need to hear more even if

23      you know that that's the rule of law?

24              PROSPECTIVE JUROR #2:  No, I wouldn't.

25              MS. GREGORY:  What about you, Miss Blye?  You'd

                                KL

1    be able to base your decision on the one witness, if you

2    believed that person?

3              PROSPECTIVE JUROR #3:  Yes.

4              MS. GREGORY:  And Mr. Broomes?

5              PROSPECTIVE JUROR #4:  Uh-hum.

6              MS. GREGORY:  Miss Barnaby?

7              PROSPECTIVE JUROR #6:  Yes.

8              MS. GREGORY:  Miss Blye, I have discussed that in

9    this case if selected as a juror you'll hear about some DNA

10   evidence.  You've heard of DNA?

11             PROSPECTIVE JUROR #3:  I was a medical

12   technologist.

13             MS. GREGORY:  I'm sorry?

14             PROSPECTIVE JUROR #3:  I was a medical

15   technologist.

16             MS. GREGORY:  Okay.  So you've heard of it?

17             PROSPECTIVE JUROR #3:  I've done testing.

18             MS. GREGORY:  Pardon?

19             PROSPECTIVE JUROR #3:  I've done testing.

20             MS. GREGORY:  So I would expect you wouldn't have

21   any problem listening and understanding?

22             PROSPECTIVE JUROR #3:  No.

23             THE COURT:  But do you understand this, though,

24   ma'am, a witness who's called in who may have done work

25   with this, you would have to rely only on that person's

Voir Dire                                        263

1        testimony in terms of making a decision?  You can't

2        interject your own opinion.

3                    PROSPECTIVE JUROR #3:  Since I've done it, I'm

4        sure techniques and many things have changed.

5                    THE COURT:  Okay.

6                    Please proceed, Miss Gregory.

7                    MS. GREGORY:  Mr. Broomes, would you be able to

8        listen to that type of evidence?

9                    PROSPECTIVE JUROR #4: Yes.

10                   MS. GREGORY:  What about you, Miss Barnaby?

11                   PROSPECTIVE JUROR #6: Yes.

12                   MS. GREGORY:  Miss Barnaby, I had discussed, you

13       know, expectations of what one might expect a person, how a

14       person would react during a sexual assault, and

15       additionally, when that person would have to relay that

16       information, whether it be to other people, police

17       officers, hospital personnel or later at a later point

18       during the trial.  And I think -- and I'm asking you if you

19       agree with this, that people react differently?

20                   PROSPECTIVE JUROR #6: Uh-hum.

21                   MS. GREGORY:  You wouldn't expect someone to act

22       specifically one way or another?

23                   PROSPECTIVE JUROR #6:  No.

24                   MS. GREGORY:  And if you were selected as a juror

25       in this case, you'd be able to listen to the evidence, and

                                    KL

1        if you found it to be credible beyond a reasonable doubt,

2        would you be able to find the defendant guilty?

3                  PROSPECTIVE JUROR #6: Yes.

4                  MS. GREGORY:  What about everybody else?

5                  PROSPECTIVE JURORS:  Yes.

6                  MS. GREGORY:  Thank you.

7                  THE COURT:  Mr. Rodriguez.

8                  MR. RODRIGUEZ:  Thank you, your Honor.  Good

9        afternoon, ladies and gentlemen.

10                 You've been here two days, heard a lot of what's

11       been said, right?  Anything that was said during the course

12       of these two days that struck you that you want to talk

13       about now in terms of what could potentially affect your

14       ability to be a fair juror here?

15                 Anything with you?

16                 PROSPECTIVE JUROR #4:  No.

17                 MR. RODRIGUEZ:  Could you be a fair juror in this

18       case?

19                 PROSPECTIVE JUROR #6:  Yes.

20                 MR. RODRIGUEZ:  My client's charged with a

21       serious crime, rape, right?

22                 PROSPECTIVE JUROR #6:  Uh-hum.

23                 MR. RODRIGUEZ:  Can you look at him and not make

24       a judgment on him?

25                 PROSPECTIVE JUROR #6:  Yeah.

1          MR. RODRIGUEZ:  Until, unless and until you hear

2     evidence against him at the trial?

3          PROSPECTIVE JUROR #6:  Yes.

4          MR. RODRIGUEZ:  All right.

5          Now, you have no preconceived notions about him,

6     right?

7          PROSPECTIVE JUROR #6:  No.

8          MR. RODRIGUEZ:  He's presumed innocent, correct?

9          PROSPECTIVE JUROR #6:  Yes.

10          MR. RODRIGUEZ:  And the Judge has told you that,

11     right?

12          PROSPECTIVE JUROR #6:  Yes.

13          MR. RODRIGUEZ:  And he stays and remains that

14     way, and the Judge will tell you, unless he's convicted by

15     the People, by the prosecutor, right?

16          PROSPECTIVE JUROR #6:  Right.

17          MR. RODRIGUEZ:  Somebody is going to take the

18     stand here, right?

19          PROSPECTIVE JUROR #6:  Uh-hum.

20          MR. RODRIGUEZ:  You have the right to use

21     whatever in your experience in life to determine whether or

22     not that person taking the stand is telling the truth.

23          PROSPECTIVE JUROR #6:  Right.

24          MR. RODRIGUEZ:  Just because somebody raises

25     their hand to tell the truth, the whole truth and nothing

Voir Dire                                      266

1          but the truth, so help he God, does not mean they're lying

2          or telling the truth, does it?

3                    PROSPECTIVE JUROR #6:  Right.

4                    MR. RODRIGUEZ:  You have to determine that,

5          right?

6                    PROSPECTIVE JUROR #6:  Uh-hum.

7                    MR. RODRIGUEZ:  Are you willing to do that?

8                    PROSPECTIVE JUROR #6:  Yes.

9                    MR. RODRIGUEZ:  If you hear differences in the

10         story -- now, the prosecutor just talked about whether or

11         not someone changed, you know, makes different stories and

12         reacts different ways, but sometimes also when you tell

13         different stories, it's because you're not telling the

14         truth, that's also a possibility too?

15                   PROSPECTIVE JUROR #6:  Yes.

16                   MR. RODRIGUEZ:  Would you agree with that?

17                   PROSPECTIVE JUROR #4:   Yes.

18                   MR. RODRIGUEZ:  How about you?

19                   PROSPECTIVE JUROR #2: Yes.

20                   PROSPECTIVE JUROR #3: Yes.

21                   MR. RODRIGUEZ:  Changing the stories may indicate

22         more than just a reaction to something, it could indicate

23         falsehood, correct?

24                   PROSPECTIVE JUROR #2:  Yes.

25                   MR. RODRIGUEZ:  Right?

KL

Voir Dire                                                267

1              PROSPECTIVE JUROR #3:  Yes.

2              PROSPECTIVE JUROR #4:  Yes.

3              MR. RODRIGUEZ:  You're not going to have a magic

4      ball that's going to tell you what really happened there,

5      so you have to listen to all of the evidence.  Can you

6      promise me that you will listen to everything and wait

7      until the Judge instructs you on the law before you make

8      your decision?

9              PROSPECTIVE JUROR #3:  Uh-hum.

10             MR. RODRIGUEZ:  Because the prosecutor is going

11     to put somebody on the stand first, "well, she said he did

12     it, he must have done it," right?  Or are you going to

13     listen to everything before you make that determination?

14             PROSPECTIVE JUROR #3:  I have to listen to

15     everything.

16             MR. RODRIGUEZ:  You're going to listen to

17     everything?

18             PROSPECTIVE JUROR #2:  Yes.

19             PROSPECTIVE JUROR #4:  Yes.

20             PROSPECTIVE JUROR #6:  Yes.

21             MR. RODRIGUEZ:  Not just the questions the

22     prosecutor asks, but perhaps any cross-examination I may

23     have, right, and listen to what other statements the

24     complainant, the accuser, made at other times, correct?

25     Presumed innocent, right?

KL

Voir Dire                                                268

1              PROSPECTIVE JUROR #4:  Yes.

2              MR. RODRIGUEZ:  They don't prove their case

3        beyond a reasonable doubt, you're going to acquit?

4              PROSPECTIVE JUROR #2:  Yes.

5              MR. RODRIGUEZ:  You too?

6              PROSPECTIVE JUROR #3:  Yes.

7              MR. RODRIGUEZ:  You too?

8              PROSPECTIVE JUROR #4:  Yes.

9              MR. RODRIGUEZ:   You too?

10              PROSPECTIVE JUROR #6:  Yes.

11              MR. RODRIGUEZ:  Have any questions of me?  Can

12        you be fair to both parties?

13              PROSPECTIVE JUROR #4:  Yes.

14              MR. RODRIGUEZ:  Can you?

15              PROSPECTIVE JUROR #2:  Yes.

16              MR. RODRIGUEZ:  Can you?

17              PROSPECTIVE JUROR #3:  Yes.

18              MR. RODRIGUEZ:  Can you?

19              PROSPECTIVE JUROR #6: Yes.

20              MR. RODRIGUEZ:  Thank you.

21              THE COURT:  Those of you in the audience who have

22        not had the pleasure, see you this afternoon outside the

23        courtroom about 2:30, please.  Outside the courtroom, 2:30.

24        Don't come in.  Just remain outside the courtroom.  2:30.

25        I'm allowing for the elevators; they don't work quite as

KL

Voir Dire                                    269

1   well as they should.  So please be outside the courtroom at

2   2:30.  We're going to try to get out of here before 5

3   o'clock.  So please, see you at 2:30. Any questions, ask

4   the court officers.

5                (Whereupon, the prospective jurors in the

6   audience exited the courtroom.)

7                THE COURT:   Those of you in the box, don't leave

8   the floor.  Just momentarily wait outside and we'll advise

9   you of your status, please.

10               (Whereupon, the prospective jurors in the box

11  exited the courtroom.)

12               THE COURT:  Any time you're ready, let Mr. LaRose

13  know.

14               (Pause in proceedings.)

15               THE CLERK:  Counsel, we have nine jurors

16  selected. Four jurors in the box.

17               For cause, People?

18               MS. GREGORY:  None.

19               THE CLERK:  Defense?

20               MR. RODRIGUEZ:  None.

21               THE CLERK:  Jurors two three and four only at

22  this time, peremptorily, People?

23               MS. GREGORY:  Number four.

24               THE COURT:  That's Broomes, right?

25               MS. GREGORY:  Yes.

                              KL

Voir Dire                                    270

1               THE COURT:  Okay.

2               THE CLERK:  Defense?

3               MR. RODRIGUEZ:  Miss Blye.

4               THE CLERK:  Number three.

5               MR. RODRIGUEZ:  That's it.

6               THE CLERK:  Juror #2, Salem Shavef, is

7       acceptable?

8               MR. RODRIGUEZ:  Yes.

9               THE CLERK:  He becomes our tenth juror selected.

10              Juror #6, peremptorily, People?

11              MS. GREGORY:  No.

12              THE CLERK:  Defense?

13              MR. RODRIGUEZ:  No.

14              THE CLERK:  Then juror Lorraine Barnaby becomes

15      our 11th juror.

16              THE COURT:  Get those two people in, please.

17              THE CLERK:  Ten challenges for the People, twelve

18      for the defense.

19              (Whereupon, the selected jurors entered the

20      courtroom.)

21              THE COURT:  The two of you have been selected to

22      sit on this case.  In a moment you're going to go to the

23      jury room.  Once you're there and familiarize yourself with

24      the jury room, you can leave for the day.

25              You're to be in the jury room tomorrow morning at

                              KL

Voir Dire                                                              271

1     10 o'clock.  You can expect a full day.

2              I'm going to give you some instructions.  Once

3     you are with the entire jury, once we have the trial jury

4     selected, I'll repeat these instructions.  Please keep them

5     in mind.

6              You're not to form, or express, any opinion as to

7     the guilt or non-guilt of this defendant until all the

8     evidence has been received, you heard the arguments of the

9     attorneys, my instructions on the law, you've gone into the

10    jury room to begin jury deliberations.

11             Do not discuss this case with anyone, including

12    your fellow jurors.  And you should not allow anyone in

13    your presence to talk about this case.

14             Do not visit any location mentioned.  Do not try

15    to investigate any fact on your own.

16             If there are accounts of this case in the media,

17    don't read, watch or listen to those accounts.  And

18    certainly don't use the computer to surf the internet

19    trying to get information about this case or anybody

20    involved with it.

21             Immediately report any attempts by anybody to

22    approach you or any fellow juror.

23             And until you're discharged, you may not accept

24    compensation or discuss the acceptance of compensation for

25    supplying information about this case.

KL

Voir Dire                                        272

1          With those warnings in mind, have a pleasant day.

2     See you all tomorrow in the jury room, 10 o'clock.

3          (Whereupon, the selected jurors exited the

4     courtroom.)

5          THE COURT:  All right, counsel, I've asked the

6     jurors to be back at 2:30.  You should govern yourself

7     accordingly.  See you then.

8          (Whereupon, the luncheon recess was taken.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

KL

Voir Dire                                        273

1          AFTERNOON SESSION:

2          (Case on trial continued.  No selected jurors or

3    prospective jurors present.)

4          THE CLERK:  Case on trial.  All parties are

5    present.

6          THE COURT:  We have 30 new jurors.  Let's get

7    them in, please.

8          (Whereupon, a supplemental panel of prospective

9    jurors entered the courtroom.)

10         THE COURT:  Folks, good afternoon.  If you will,

11   listen to the clerk, please.

12         THE CLERK:  Ladies and gentlemen of the panel,

13   would you all please rise, raise your right hand and face

14   me.

15         Do you and each of you sincerely or solemnly

16   swear or affirm that you'll answer truthfully all questions

17   asked of you regarding your qualifications to serve as a

18   juror in this matter?

19         PROSPECTIVE JURORS:  (Answer affirmatively.)

20         THE CLERK:  Thank you.  Please be.

21         THE COURT:  Good afternoon.  This is Part 37.

22   Before we begin, let me be sure of a few things.

23         Is there anyone who claims he or she does not

24   speak and understand English?  Anybody?

25         Are you all over the age of 18?

KL

Voir Dire                                             274

1          PROSPECTIVE JURORS:  Yes.

2          THE COURT:  And are you all citizens of the

3    United States and residents of Kings County, Brooklyn?

4          PROSPECTIVE JURORS:  Yes.

5          THE COURT:  My name is Plummer Lott.  I'm the

6    Judge who will be presiding over this trial.

7          The name of the case is the People of the State

8    of New York versus John Fuentes.  This is a criminal case.

9    And among the charges is one of rape.

10         Seated to my right is Miss Gregory, an assistant

11   district attorney.

12         If you will, ma'am.

13         MS. GREGORY:  Good afternoon.

14         THE COURT:  It's going to be her job to present

15   this evidence on behalf of the People of the State of New

16   York.  And the fact that this action is brought in the name

17   of the People or that evidence is going to be presented by

18   a public official does not in any way indicate that the

19   public wants a specific verdict.  The People of this state

20   are served by whatever verdict is justified by the

21   evidence.

22         To my left is Mr. John Rodriguez.

23         MR. RODRIGUEZ:  Good afternoon, ladies and

24   gentlemen.

25         THE COURT:  He is the attorney for Mr. Fuentes.

KL

Voir Dire                                      275

1                And to his right is Mr. Fuentes.

2                THE DEFENDANT:  Good afternoon, ladies and

3       gentlemen.

4                THE COURT:  Now, again, this is a criminal case.

5       This trial allegedly concerns events which occurred on

6       January 27th, 2002, at approximately 4 to 5 a.m. inside 474

7       Marcy Avenue.  And the defendant is alleged to have engaged

8       one Gina Colon in sexual intercourse by forcible

9       compulsion.

10               Now, please bear in mind that this is just a

11      summary of the allegations made by the People in their

12      indictment against the defendant.  It does not constitute

13      evidence against the defendant, nor does it constitute the

14      Court's view of the case.  Indeed, the indictment is an

15      accusation only.  It has no significance in terms of the

16      guilt or non-guilt of the defendant.  It's merely a written

17      accusation, nothing more than that.

18               This defendant is presumed innocent.  That

19      presumption remains with him throughout the trial, unless

20      the People convince you at the end of trial of his guilt

21      beyond a reasonable doubt.

22               We have 11 jurors selected.  I need one

23      additional person to complete the trial jury.  And I'd like

24      to get two alternates.

25               The schedule is as follows: We will open

KL

Voir Dire                                            276

1    tomorrow.  It will probably be a full day.  We'll only work

2    until lunchtime on Friday.  We'll resume Monday, it

3    probably will be a full day.  And Tuesday I hope to give

4    the case to the jury.  Everybody clear about the schedule?

5              Now, although this is a criminal case, you will

6    not be sequestered once the jury gets the case.  In other

7    words, once you get the case, if at the end of the day you

8    have not reached your verdict you'll be allowed to separate

9    and go home and then come back the next day to resume

10   deliberations.  So everybody clear about the schedule and

11   the fact that there's no sequestration?

12             I'm going to have Mr. LaRose call the names of --

13   let's try ten, Mr. LaRose, please.  See if we can get the

14   people selected.

15             THE CLERK:  As the Judge stated, I'm going to

16   call your name.  I'm going to ask you to follow the

17   directions of the staff.  When your name is called, please

18   say "here" or "present," since the parties have their back

19   to you.

20             And if anybody's name is mispronounced, I

21   apologize in advance.

22             Kenyetta Singleton, would you please take seat

23   number one.  Last name is spelled S-I-N-G-L-E-T-O-N.

24             Tawanna Hill-Fowler.

25             THE COURT:  Is that hyphenated, ma'am?

KL

Voir Dire                                        277

1               PROSPECTIVE JUROR:  Yes, it is.

2               THE CLERK:  That's H-I-L-L-F-O-W-L-E-R.  Seat

3       number two.

4               Clifton Coward, last name C-O-W-A-R-D, seat

5       three.

6               Tamarra Veider, V-E-I-D-E-R.

7               (No response.)

8               THE COURT:  Call downstairs before you mark her

9       absent.

10              Mikhailda Bilwakesh, last name is spelled

11      B-I-L-W-A-K-E-S-H, seat four.

12              Boris Broverman, last name is spelled

13      B-R-O-V-E-R-M-A-N.

14              Gwendolyn Youngblood, last name is spelled

15      Y-O-U-N-G-B-L-O-O-D, seat six.

16              Garrett Weathers, last name is spelled

17      W-E-A-T-H-E-R-S, seat seven.

18              Brenda Anthony, last name is spelled

19      A-N-T-H-O-N-Y, seat eight.

20              Kenneth Butler, last name is spelled B-U-T-L-E-R,

21      seat nine.

22              THE COURT:  Mr. Butler, you came in late, is that

23      correct?

24              PROSPECTIVE JUROR #9:  Yes.

25              THE COURT:  I don't think he's even sworn.

KL

1          Come on up, sir, we'll swear you while you're in

2     the box.

3          Sonia Williams-Merritt, last name is spelled

4     W-I-L-L-I-A-M-S-M-E-R-R-I-T-T.

5          Mr. Butler, stand up, please, and raise your

6     right hand.

7          Do you solemnly swear or affirm you'll answer

8     truthfully all questions asked of you regarding your

9     qualifications to serve as a juror in this matter?

10         PROSPECTIVE JUROR #9:  Yes, I do.

11         THE CLERK:  Thank you.

12         THE COURT:  Those of you in the box and those in

13    the audience, just try to listen up.  Hopefully I can get

14    the jury out of this group.  If I don't, in all likelihood

15    you'll be asked the same questions.

16         The procedure here is the same procedures used

17    routinely in all criminal cases.  The objective is to

18    obtain a fair and impartial jury.  That's one that will

19    decide this case solely upon the evidence and my

20    instructions on the law.

21         In a moment I'm going to ask ten of you to my

22    right to respond to the questionnaire you have in your

23    hand.

24         Following my questions, the lawyers will ask you

25    questions.  Their questions will be based on the answers

1    that you give, and perhaps they might, they may discuss

2    with you some of the issues they feel may arise during the

3    course of the trial that they want to get your opinion on.

4            It's important you understand that none of the

5    questions are meant to be unduly personal, not intended to

6    embarrass anybody, and we're not going to sit in judgment

7    of anything you have to say beyond the answers to the

8    questions in the questionnaire.  There are no right or

9    wrong answers.  A wrong answer, however, would be a

10   dishonest answer.

11           If you're asked a question that is of a personal

12   nature, that you don't want to discuss publicly, please let

13   me know and I'll allow you to answer the question

14   privately.

15           Now, folks, if selected as jurors you're not

16   going to be required to know anything about the law.  I

17   will instruct you on the law not only during the course of

18   the trial, but certainly at the end of the trial.

19           A few of the things that you should know up

20   front, because undoubtedly the lawyers will ask you about

21   them, are these:

22           One, this case has been brought by indictment.

23   And please understand that the indictment is simply a

24   device used to bring someone to trial.  It has no

25   evidentiary value whatsoever.  And even the fact that the

1    defendant has been arrested and charged with the crime is

2    not evidence of guilt or any fact that can prove his guilt.

3    Every person accused of a crime is presumed innocent.  That

4    is, he or she stands innocent in the eyes of the law.  The

5    presumption remains with the defendant throughout the

6    entire trial.  It continues with him through into jury

7    deliberations and can only be overcome if and when the

8    point is reached by all of you in jury deliberations that

9    the evidence convinces you beyond a reasonable doubt of his

10   guilt. If that doesn't occur, the presumption remains and

11   you must find the defendant not guilty.

12          The defendant has entered a plea of not guilty to

13   the charges contained in the indictment.  A plea of not

14   guilty is a denial of each and every material allegation in

15   the indictment.

16          Under our system of laws, the People, the

17   prosecution, is required to prove the defendant's guilt

18   beyond a reasonable doubt as to each and every material

19   allegation in the indictment and any essential elements

20   required.  The standard is proof beyond a reasonable doubt.

21   I'll explain in greater detail at the end of the trial what

22   it means.  For the moment, it's not proof beyond all doubt

23   or proof to a mathematical certainty, just proof beyond a

24   reasonable doubt.

25          A person accused of a crime is not required to

Voir Dire                                                    281

1    testify.  If that turns out to be the situation in this

2    case, you must not draw any inference adverse to the

3    defendant, nor may you raise it during jury deliberations.

4            Also, you must decide this case entirely on the

5    evidence, my instructions on the law, without any

6    consideration of what the punishment will be if a verdict

7    of guilty is found.  You must also not allow sympathy you

8    feel for anyone to divert you from your duty to consider

9    the evidence fairly and impartially when deliberating upon

10   a verdict.

11           Now, as trial jurors your only function is really

12   twofold:  To determine fairly and impartially from the

13   evidence whether any crime charged has been committed, and

14   if so, whether this defendant committed that crime.  You're

15   not here to make a moral judgment about anybody at the end

16   of the trial.  You're making a factual judgment, a factual

17   judgment about the quality of the People's evidence.

18   You're really here to determine whether the quality of the

19   People's evidence convinces you beyond a reasonable doubt

20   as to the defendant's guilt to any crime.  That is the

21   judgment you're asked to make here.

22           Now, personal considerations about the nature of

23   the crime must have nothing to do with your decision in

24   this case and must not prevent you from being a fair and

25   impartial juror.

KL

1            Now, in order to be a juror you'll have to

2       evaluate the credibility of the evidence that's offered

3       here.  And by credibility of evidence I'm talking about its

4       truthfulness and accuracy.  You and you alone will decide

5       really what happened here.  And I'll give you the law and

6       you'll apply the law to the facts, and in that way reach a

7       verdict.

8            So, as illustrated earlier by one of the

9       questions that one of the discussions the lawyers had,

10      witnesses are going to come in, they're going to raise

11      their right hand and swear to tell the truth.  There's only

12      three possibilities:  The witness is telling the truth, the

13      witness is mistaken or the witness is intentionally lying.

14           Now, in judging credibility, you should use the

15      same tests you found practical and reliable in judging the

16      truth or falsity of statements made to you by others

17      outside this courtroom.

18           Now, some of the things you can consider is the

19      opportunity of the witness to see and hear the things about

20      which he or she is testifying; their memory, any motive

21      they may have to testify in a certain way; their manner

22      while testifying; whether they said something different at

23      an earlier time; the extent to which their testimony is

24      consistent with other evidence you believe.

25           So in short, when a witness comes in and

KL

Voir Dire                                                    283

1     testifies, consider that witness' testimony carefully.  Be

2     alert for anything in the witness' words, behavior on the

3     witness stand or anything else that might help you judge

4     the truthfulness and accuracy of a witness' testimony.

5              No one is entitled to be automatically believed.

6     They don't get a free pass here regardless of who they are.

7     But all witnesses are to have their credibility for

8     truthfulness and accuracy evaluated by the same standard.

9              That applies to police officers.  You must

10    evaluate their credibility the same as you would the

11    credibility of any other witness and in the same manner.

12             Anybody who feels that he or she can't follow

13    those rules?

14             In the absence of any hands, then let's move.

15             I've introduced to you the attorneys and the

16    defendant.  Any of these people seem familiar to you in the

17    sense you might have seen them outside this courtroom prior

18    to coming in here this morning?

19             I've told you what's alleged here.  Do you think

20    you know anything at all about this case or heard anything

21    about it?

22             The area of 474 Marcy Avenue, that address,

23    anybody work or live or visit near there on a regular

24    basis?

25             That's Miss Hill-Fowler?

KL

1               PROSPECTIVE JUROR #2:  Yes.

2               THE COURT:  You live in the area or work in the

3       area?

4               PROSPECTIVE JUROR #2:  I live near there.

5               THE COURT:  Look, a juror must decide the case on

6       the basis of evidence, not what he or she may know about

7       the area.

8               First of all, do you have any opinion about the

9       area at all?

10              PROSPECTIVE JUROR #2:  No.

11              THE COURT:  Now, the fact that you live near this

12      location, do you think that would affect your ability to

13      even sit on this case, ma'am?

14              PROSPECTIVE JUROR #2:  Maybe.

15              THE COURT:  When you say "maybe," we're not going

16      to sit in judgment.  If you're saying maybe because you

17      have some doubts about your ability to be fair, just tell

18      us.  Is that what it is?

19              PROSPECTIVE JUROR #2:  Yes, uh-hum.

20              THE COURT:  Counsels, do I have your consents?

21              MS. GREGORY:  Yes.

22              MR. RODRIGUEZ:  Yes.

23              THE COURT:  Ma'am, thank you very much.  Return

24      to Central Jury.

25              (Whereupon, Prospective Juror #2 exited the

1          courtroom.)

2                         THE COURT:  Victoria Carro, C-A-R-R-O.

3                         Ma'am, if you will, the take seat number two,

4          please.

5                         PROSPECTIVE JUROR #4:  I also live in the area.

6                         THE COURT:  Okay.  I'll get to you.

7                         Since you raised your hand, same question to you.

8          You live in the area?

9                         PROSPECTIVE JUROR #4:  Yeah.

10                        THE COURT:  Now, would that affect your ability

11         to sit on this case?

12                        PROSPECTIVE JUROR #4:  No.

13                        THE COURT:  It will not.  Okay.

14                        Miss Carro, are you familiar with the 474 Marcy

15         Avenue?

16                        PROSPECTIVE JUROR #2:  No.

17                        THE COURT:  Do you know any of the parties, the

18         attorneys or the defendant?

19                        PROSPECTIVE JUROR #2:  No.

20                        THE COURT:  Is there any reason -- well, can you

21         follow the law as I give it to you, ma'am?

22                        PROSPECTIVE JUROR #2:  Yes.

23                        THE COURT:  Okay, all right.

24                        Other than what's been alleged here, do you think

25         you know anything at all about this case?

1              PROSPECTIVE JUROR #2:  No.

2              THE COURT:  I'm going to give you some names.  If

3     any of these names sound familiar to you, please let me

4     know:  Gina Colon, Tammy Little, Police Officer Kevin

5     Fedynak, Nurse Durant, Woodhull Hospital, Nurse Dan

6     McSwiggan, Woodhull Hospital, Steven Litwin, a detective,

7     Maria Samples, Don Lewittes, Aubry Weekes.

8              Any of those names sound familiar to anybody?

9              Miss Singleton, you were here earlier.  Just take

10     the questionnaire, go right down.  You can just indicate,

11     you're young enough, probably don't worry about your age,

12     but over 18 is sufficient.

13              PROSPECTIVE JUROR #1:  I'm 20.  I'm from Bedford

14     Stuyvesant.

15              THE COURT:  Keep your voice up, ma'am.

16              PROSPECTIVE JUROR #1:  I'm from Bedford

17     Stuyvesant.  College.

18              Unemployed.  I'm engaged.  I have no children.

19              THE COURT:  You're engaged.  Your fiance, what

20     kind of work?

21              PROSPECTIVE JUROR #1:  He's a janitor.

22              THE COURT:  Any areas of interest or hobbies you

23     you'd care to mention?

24              PROSPECTIVE JUROR #1:  I like art.

25              THE COURT:  You belong to any organizations you'd

1    care to mention?

2              PROSPECTIVE JUROR #1:  No.

3              THE COURT:  Favorite newspaper, at least one you

4    read more so than others?

5              PROSPECTIVE JUROR #1:  Daily News.

6              THE COURT:  Any friends or relatives in law

7    enforcement, ma'am?

8              PROSPECTIVE JUROR #1:  No.

9              THE COURT:  Any opinion about the criminal

10   justice system which would affect your ability to be fair?

11             PROSPECTIVE JUROR #1:  No.

12             THE COURT:  Have you ever been the victim of a

13   crime?

14             PROSPECTIVE JUROR #1:  No.

15             THE COURT:  As far as you know, any family member

16   or friend ever the victim of a crime?

17             PROSPECTIVE JUROR #1:  No.

18             THE COURT:  Ever accused of a crime?

19             PROSPECTIVE JUROR #1:  No.

20             THE COURT:  What about a family member or friend?

21             PROSPECTIVE JUROR #1:  No.

22             THE COURT:  Any prior jury service where you

23   actually sat on a jury and decided the case?

24             PROSPECTIVE JUROR #1:  No.

25             THE COURT:  Any reason why you could not sit on

1        this case?

2                        PROSPECTIVE JUROR #1:  No.

3                        THE COURT:  Miss Carro.

4                        PROSPECTIVE JUROR #2:  Victoria Carro, 24.  I

5        live in East New York.

6                        High school.  Housewife.  Married.

7                        THE COURT:  Your husband, what does he do, ma'am?

8                        PROSPECTIVE JUROR #2:   He's a driver.

9                        I have three kids, all under 18.

10                       Watch TV, listen to music.

11                       THE COURT:  What sort of television programs do

12       you watch?

13                       PROSPECTIVE JUROR #2:  "The Practice," the talk

14       shows.

15                       THE COURT:  You don't like "All My Children"?

16                       PROSPECTIVE JUROR #2:  No.

17                       THE COURT:  "General Hospital"?

18                       PROSPECTIVE JUROR #2:  No.

19                       THE COURT:  You don't?  You don't even tape them?

20       Okay.

21                       They're very popular.  Somebody's got to be

22       watching them other than me.

23                       Go ahead.

24                       PROSPECTIVE JUROR #2:  No organizations.  Don't

25       read the newspaper.

KL

Voir Dire                                          289

1            THE COURT:  How do you get your news then?

2       Through television?

3            PROSPECTIVE JUROR #2:  Yeah.

4            THE COURT:  Okay.  Any friends or relatives in

5       law enforcement?

6            PROSPECTIVE JUROR #2:  No.

7            THE COURT:  None?

8            PROSPECTIVE JUROR #2:  No.

9            THE COURT:  Any opinion about the criminal

10      justice system which would affect your ability to be fair?

11           PROSPECTIVE JUROR #2:  No.

12           THE COURT:  Were you ever the victim of a crime?

13           PROSPECTIVE JUROR #2:  No.

14           THE COURT:  Any family member or friend the

15      victim of a crime?

16           PROSPECTIVE JUROR #2:  No.

17           THE COURT:  Ever accused of a crime?

18           PROSPECTIVE JUROR #2:  No.

19           THE COURT:  What about a family member or friend?

20           PROSPECTIVE JUROR #2:  No.

21           THE COURT:  Any prior jury service where you

22      actually sat on a jury?

23           PROSPECTIVE JUROR #2:  No.

24           THE COURT:  Is there any reason why you could not

25      sit here?

1            PROSPECTIVE JUROR #2:  No.

2            THE COURT:  Thank you very much:

3            Mr. Coward.

4            PROSPECTIVE JUROR #3:   Clifton Coward.  I'm 55

5     years old.  I live in Brooklyn, Canarsie.

6            My education is twelfth grade.  I'm an elevator

7     operator.  I'm a divorcee.  I have one kid, he's 29.

8            And I love fishing.

9            I don't belong to no organizations.

10           And I read the newspaper, The Post.

11           THE COURT:  Any friends or relatives in law

12     enforcement?

13           PROSPECTIVE JUROR #3:  No.

14           THE COURT:  Any opinion about the criminal

15     justice system which would affect your ability to be fair?

16           PROSPECTIVE JUROR #3:  No.

17           THE COURT:  Were you ever the victim of a crime?

18           PROSPECTIVE JUROR #3:  No.

19           THE COURT:  Any family member or friend ever the

20     victim of a crime?

21           PROSPECTIVE JUROR #3:  No.

22           THE COURT:  Ever accused of a crime?

23           PROSPECTIVE JUROR #3:  No.

24           THE COURT:  As far as you know, any family member

25     or friend ever accused?

                              KL

1                PROSPECTIVE JUROR #3:  No.

2                THE COURT:  Any prior jury experience in terms of

3        actually sitting on a jury or grand jury?

4                PROSPECTIVE JUROR #3:  Well, I sat on two juries

5        before.

6                THE COURT:  Criminal or civil?

7                PROSPECTIVE JUROR #3:  Criminal.

8                THE COURT:  How long ago are we talking about,

9        the last time?

10               PROSPECTIVE JUROR #3:  About maybe ten, 12 years

11       ago.

12               THE COURT:  Do you remember what the charge was?

13               PROSPECTIVE JUROR #3:  Yeah.

14               THE COURT:  What was it?

15               PROSPECTIVE JUROR #3:  Well, I was on one case,

16       it was like a rape, and I was on for an attempted robbery.

17               THE COURT:  Now, the rape case, were you one of

18       the first twelve or were you an alternate juror?

19               PROSPECTIVE JUROR #3:  I think I was the foreman

20       of the jury.

21               THE COURT:  Did the jury deliberate?

22               PROSPECTIVE JUROR #3:  Yes, we did.

23               THE COURT:  Was a verdict reached?

24               PROSPECTIVE JUROR #3:  Yes.

25               THE COURT:  What was the verdict?

                              KL

1              PROSPECTIVE JUROR #3:  Not guilty.

2              THE COURT:  And the second case?

3              PROSPECTIVE JUROR #3:  Well, it was guilty.

4              THE COURT:  Now, was this over at 120

5     Schermerhorn or 360?

6              PROSPECTIVE JUROR #3:  It was at the old

7     building, down towards Schermerhorn.

8              THE COURT:  Were you the foreman on both cases or

9     just one case?

10             PROSPECTIVE JUROR #3:  Just one case.

11             THE COURT:  Anything about your experience on

12    those cases that would affect your ability to sit on this

13    case?

14             PROSPECTIVE JUROR #3:  No.

15             THE COURT:  Is there any reason, any reason why

16    up could not sit on this case?

17             PROSPECTIVE JUROR #3:  No, there's not.

18             THE COURT:  Next.

19             PROSPECTIVE JUROR #4:  Mikhailda Bilwakesh, 28

20    years old.  I live in Bedford Stuyvesant.

21             I'm pursuing a graduate degree.  I teach English

22    at a college.

23             I'm single.  I have no children.

24             No hobbies.  No organizations.

25             I read all the newspapers.

                              KL

Voir Dire                                      293

1                    THE COURT:  Any friends or relatives in law

2          enforcement?

3                    PROSPECTIVE JUROR #4:  No.

4                    THE COURT:  Any opinion about the criminal

5          justice system which would affect your ability to be fair?

6                    PROSPECTIVE JUROR #4:  No.

7                    THE COURT:  Ever the victim of a crime?

8                    PROSPECTIVE JUROR #4:  No.

9                    THE COURT:  As far as you know, any family member

10         or friend ever the victim of a crime?

11                   PROSPECTIVE JUROR #4:  No.

12                   THE COURT:  Ever accused of a crime?

13                   PROSPECTIVE JUROR #4:  Yes.

14                   THE COURT:  You?

15                   PROSPECTIVE JUROR #4:  Yes.

16                   THE COURT:  We'll take that one privately.

17                   Have you ever served where you actually sat on a

18         jury before?

19                   PROSPECTIVE JUROR #4:  No.

20                   THE COURT:  Any reason why you couldn't sit?

21                   PROSPECTIVE JUROR #4:  No.

22                   THE COURT:  Thank you, sir.

23                   Mr. Broverman, if you will, please.

24                   PROSPECTIVE JUROR #5:  Boris Broverman. I'm 24

25         years old.  I live in Sheepshead Bay, Brooklyn.

KL

Voir Dire                                    294

1          Educational background, Brooklyn College.

2     Computer science degree, Bachelor of Science. Occupation is

3     computer consultant.

4          I'm engaged.  And my fiancee is in finance.  I

5     have no children.

6          I like to go to the gym, watch movies and play

7     video games.

8          I belong to no organizations.

9          And I read The Daily News.

10         THE COURT:  Any friends or relatives in law

11    enforcement?

12         PROSPECTIVE JUROR #5:  No.

13         THE COURT:  Any opinion about the criminal

14    justice system which would affect your ability to be fair?

15         PROSPECTIVE JUROR #5:  No.

16         THE COURT:  Have you, a family member or friend

17    ever been the victim of a crime?

18         PROSPECTIVE JUROR #5:  No.

19         THE COURT:  Ever been accused of a crime?

20         PROSPECTIVE JUROR #5:  No.

21         THE COURT:  As far as you know, any family member

22    or friend ever been accused?

23         PROSPECTIVE JUROR #5:  No.

24         THE COURT:  Any prior jury service in terms of

25    you actually sitting on the jury?

KL

Voir Dire                                    295

1          PROSPECTIVE JUROR #5:  No.  This is the first

2     time.

3          THE COURT:  Any reason why you could not sit

4     here?

5          PROSPECTIVE JUROR #5:  No.

6          THE COURT:  Thank you, sir.

7          Miss Youngblood.

8          PROSPECTIVE JUROR #6:  Gwendolyn Youngblood. Over

9     20.  Flatbush.

10         Bachelor's degree.  Divorced.  Sixteen-year-old

11    daughter.

12         Areas of interest, boxing, traveling and reading.

13         No organizations.

14         All newspapers.

15         THE COURT:  Any friends or relatives in law

16    enforcement?

17         PROSPECTIVE JUROR #6:  My sister is school

18    safety.  If that counts?

19         THE COURT:  Do you think that will affect your

20    ability to be fair?

21         PROSPECTIVE JUROR #6:  No.

22         THE COURT:  Any opinion about the criminal

23    justice system which would affect your ability to be fair?

24         PROSPECTIVE JUROR #6:  No.

25         THE COURT:  Were you, a family member or friend

KL

1         ever the victim of a crime?

2                    PROSPECTIVE JUROR #6:  Yes.

3                    THE COURT:  Who are we talking about?

4                    PROSPECTIVE JUROR #6:  Me.

5                    THE COURT:  Are you able to talk about it

6         publicly?

7                    PROSPECTIVE JUROR #6:  Yes.

8                    THE COURT:  What happened?

9                    PROSPECTIVE JUROR #6:  I was robbed at a train

10        station.

11                   THE COURT:  How long ago are we talking about?

12                   PROSPECTIVE JUROR #6:  Four years ago.

13                   THE COURT:  Were you physically injured during

14        the course of the robbery?

15                   PROSPECTIVE JUROR #6:  No.

16                   THE COURT:  Was that reported to the police?

17                   PROSPECTIVE JUROR #6:  Yes and no.

18                   THE COURT:  Okay.  Well --

19                   PROSPECTIVE JUROR #6:  It was reported.  They

20        took too long to come, so I left.

21                   THE COURT:  Do you think, what happened to you at

22        the train station, would that affect your ability to sit on

23        a criminal case?

24                   PROSPECTIVE JUROR #6:  No.

25                   THE COURT:  Any family member or friend ever the

Voir Dire                                               297

1       victim of a crime?

2                   PROSPECTIVE JUROR #6:  No.

3                   THE COURT:  Ever accused of a crime?

4                   PROSPECTIVE JUROR #6:  No.

5                   THE COURT:  As far as you know, any family member

6       or friend ever accused?

7                   PROSPECTIVE JUROR #6:  I have a sister that

8       served time.  I don't know what for, though.

9                   THE COURT:  Can you talk about it publicly or

10      want to do it privately?

11                  PROSPECTIVE JUROR #6:  I don't know.

12                  THE COURT:  You don't know what it's for?

13                  PROSPECTIVE JUROR #6:  No.

14                  THE COURT:  Just know you have a relative who may

15      have done some time?

16                  PROSPECTIVE JUROR #6:  Yes.

17                  THE COURT:  Let me ask you this:  Do you think

18      that circumstance would affect your ability to sit on a

19      criminal case?

20                  PROSPECTIVE JUROR #6:  No.

21                  THE COURT:  You could be fair to both sides?

22                  PROSPECTIVE JUROR #6:  Yes.

23                  THE COURT:  Any prior jury service, ma'am?

24                  PROSPECTIVE JUROR #6:  No.

25                  THE COURT:  Your first time?

KL

Voir Dire                                           298

```
1                    PROSPECTIVE JUROR #6:  Yes.

2                    THE COURT:  Okay.  Is there any reason why you

3           couldn't sit here?

4                    PROSPECTIVE JUROR #6:  No.

5                    THE COURT:  Thank you very much.

6                    THE COURT:  Miss Williams-Merritt, if you will,

7           please.

8                    PROSPECTIVE JUROR #10:  Sonia Williams-Merritt.

9           I'm 44.  I live in East Flatbush.

10                   I'm pursuing my second masters.  I'm a teacher.

11          I'm married.

12                   THE COURT:  Your husband, what does he do, ma'am?

13                   PROSPECTIVE JUROR #10:  He's a mechanic.

14                   I take care of my niece and nephew.  I like to do

15          crosswords and I like to cook and travel.

16                   I read The Daily News.

17                   I have no friends or relatives in law

18          enforcement.

19                   THE COURT:  Any opinion about the criminal

20          justice system which would affect your ability to be fair?

21                   PROSPECTIVE JUROR #10:  None.

22                   THE COURT:  Ever the victim of a crime?

23                   PROSPECTIVE JUROR #10:  Yes.

24                   THE COURT:  Are you able to talk about it

25          publicly?
```

KL

Voir Dire                                          299

1              PROSPECTIVE JUROR #10:  I was assaulted by my

2       niece's mother.

3              THE COURT:  How long ago are we talking about?

4              PROSPECTIVE JUROR #10:  A year or so.

5              THE COURT:  Were the police called?

6              PROSPECTIVE JUROR #10:  Yes, they were called.

7              THE COURT:  Was there an arrest of some sort?

8              PROSPECTIVE JUROR #10:  Yes, there was.

9              THE COURT:  Was there a prosecution?

10             PROSPECTIVE JUROR #10:  I think so.

11             THE COURT:  Did you have to testify as a witness?

12             PROSPECTIVE JUROR #10:  No.

13             THE COURT:  Anything about that experience which

14      would affect your ability to sit as a juror in this case?

15             PROSPECTIVE JUROR #10:  Not that experience.  But

16      I'm a special education teacher and my area is EH.

17             THE COURT:  Then I'll tell you what, I'll make a

18      note of it and we'll talk to you privately about that.  And

19      we'll go on to Mr. Butler.

20             Mr. Butler, if you will, please.

21             PROSPECTIVE JUROR #9:  Kenneth Butler, 41.  East

22      New York.

23              High school.  Couple of college credits.

24             I work for Transit Authority.  I work on buses.

25      Married.  Wife is a bus operator.  I have one son, 12.

                             KL

Voir Dire                                                300

1                    Interests are computers.

2                    No organizations.

3                    All newspapers.

4                    THE COURT:  Any friends or relatives in law

5         enforcement?

6                    PROSPECTIVE JUROR #9:  Brothers and friends.

7         Brother a sergeant in Bridge and Tunnels.

8                    THE COURT:  Do you think that relationship would

9         affect your ability to be fair?

10                   PROSPECTIVE JUROR #9:  No.

11                   THE COURT:  Any opinion about the criminal

12        justice system which would affect your ability to be fair?

13                   PROSPECTIVE JUROR #9:  No.

14                   THE COURT:  Were you ever the victim of a crime?

15                   PROSPECTIVE JUROR #9:  No.

16                   THE COURT:  Any family member or friend, as far

17        as you know, ever the victim of a crime?

18                   PROSPECTIVE JUROR #9:  No.

19                   THE COURT:  Ever accused of a crime?

20                   PROSPECTIVE JUROR #9:  Yes.

21                   THE COURT:  You?

22                   PROSPECTIVE JUROR #9:  Yes.

23                   THE COURT:  We'll take that one privately.

24                   Any prior jury service where you actually sat as

25        a juror?

KL

Voir Dire                                                    301

1                    PROSPECTIVE JUROR #9:  Yes.

2                    THE COURT:  What kind of case was it?

3                    PROSPECTIVE JUROR #9:  That was attempted murder.

4                    THE COURT:  How long ago was that?

5                    PROSPECTIVE JUROR #9:  Approximately five years.

6                    THE COURT:  Were you one of the first 12 or were

7      you an alternate juror?

8                    PROSPECTIVE JUROR #9:  First twelve.

9                    THE COURT:  Did the jury deliberate?

10                   PROSPECTIVE JUROR #9:  Yes.

11                   THE COURT:  Okay.  And ultimately was a verdict

12     reached?

13                   PROSPECTIVE JUROR #9:  Yes.

14                   THE COURT:  What was the verdict?

15                   PROSPECTIVE JUROR #9:  Guilty.

16                   THE COURT:  Anything about your service on that

17     case that would affect your ability to sit on this case?

18                   PROSPECTIVE JUROR #9:  No.

19                   THE COURT:  Is there any reason why you couldn't

20     sit on this case?

21                   PROSPECTIVE JUROR #9:  No.

22                   THE COURT:  Thank you, sir.

23                   Miss Anthony, if you will, please.

24                   PROSPECTIVE JUROR #8:  Brenda Anthony.  I'm 52

25     years old.  I live in Flatbush.

Voir Dire                                                  302

1              Presently I'm working on my second masters in

2        science.  I'm a teacher.  I'm a divorcee.  I have two sons,

3        28 and 19.

4              My interests is soap operas.

5              THE COURT:  Well, too bad.  If we had some time,

6        I'd talk to you about them.

7              PROSPECTIVE JUROR #8:  Young and the Restless.

8              THE COURT:  Yes, ma'am.

9              PROSPECTIVE JUROR #8:  I like reading The New

10       York Times.

11             THE COURT:  Any friends or relatives in law

12       enforcement?

13             PROSPECTIVE JUROR #8:  No.

14             THE COURT:  Any opinion about the criminal

15       justice system which would affect your ability to be fair?

16             PROSPECTIVE JUROR #8:  No.

17             THE COURT:  Were you, a family member or friend

18       ever the victim of a crime?

19             PROSPECTIVE JUROR #8:  No.

20             THE COURT:  Ever accused of a crime?

21             PROSPECTIVE JUROR #8:  No.

22             THE COURT:  As far as you know, any family member

23       or friend ever accused?

24             PROSPECTIVE JUROR #8:  My ex-.  He was charged

25       and found guilty for tax evasion.

1          THE COURT:  Okay.  All right.  He didn't serve

2     any time for that, did he?

3          PROSPECTIVE JUROR #8:  He did serve some time.

4          THE COURT:  How much?

5          PROSPECTIVE JUROR #8:  A year.

6          THE COURT:  And he had to pay a fine also?

7          PROSPECTIVE JUROR #8:  No, he didn't.  I don't

8     think he paid a fine, because I --

9          THE COURT:  Let me ask you this:  Do you think

10    that circumstance, would it affect your ability to sit on a

11    criminal case?

12         PROSPECTIVE JUROR #8:  No.

13         THE COURT:  Okay.  All right.  Have you ever sat

14    on a jury before?

15         PROSPECTIVE JUROR #8:  Yes.  Five years ago.

16         THE COURT:  What kind of case?

17         PROSPECTIVE JUROR #8:  It was an assault.

18         THE COURT:  Were you one of the first 12 or were

19    you an alternate juror?

20         PROSPECTIVE JUROR #8:  First twelve.

21         THE COURT:  Did you deliberate?

22         PROSPECTIVE JUROR #8:  Yes.

23         THE COURT:  Was a verdict reached?

24         PROSPECTIVE JUROR #8:  Yes.

25         THE COURT:  What was the verdict?

Voir Dire                                                304

1          PROSPECTIVE JUROR #8:  Guilty.

2          THE COURT:  Anything about your service on that

3    case that would affect your ability to sit on this case?

4          PROSPECTIVE JUROR #8:  No.

5          THE COURT:  Any reason why you couldn't sit?

6          PROSPECTIVE JUROR #8:  No.

7          THE COURT:  Thank you very much.

8          Mr. Weathers, is that correct?

9          PROSPECTIVE JUROR #7:  Yes.  Garrett Weathers,

10   50.  Live in Flatbush.

11         Degree in electrical technology.

12         Systems engineer.

13         Separated. I have a son, 20, a daughter ten.

14         No hobbies or interests at the current time.

15         No organizations.

16         Various newspapers.

17         THE COURT:  Any friends or relatives in law

18   enforcement?

19         PROSPECTIVE JUROR #7:  Yes, I do.  I have a niece

20   and nephew.

21         THE COURT:  What are they, judges?  Lawyers?

22   Police officers?

23         PROSPECTIVE JUROR #7:  Police officers and

24   correction officers.

25         THE COURT:  Do you think those relationships

KL

Voir Dire                                        305

1       would affect your ability to be fair?

2                   PROSPECTIVE JUROR #7:  No.

3                   THE COURT:  Any opinion about the criminal

4       justice system which would affect your ability to be fair?

5                   PROSPECTIVE JUROR #7:  No.

6                   THE COURT:  Were you, a family member or friend

7       ever the victim of a crime?

8                   PROSPECTIVE JUROR #7:  No.

9                   THE COURT:  Ever accused of a crime?

10                  PROSPECTIVE JUROR #7:  No.

11                  THE COURT:  Any family member or friend, as far

12      as you know, ever accused?

13                  PROSPECTIVE JUROR #7:  No.

14                  THE COURT:  Any prior jury service where you

15      actually sat?

16                  PROSPECTIVE JUROR #7:  No.

17                  THE COURT:  Any reason why you can't sit on this

18      case?

19                  PROSPECTIVE JUROR #7:  No.

20                  THE COURT:  Thank you.

21                  Folks, I'm going to need you to step outside.  I

22      have to speak to at least two of these jurors individually.

23      I'll have you back in a moment.

24                  Don't discuss the case or any aspect of it.

25                  Miss Williams-Merritt, if you'll just remain

KL

Voir Dire                                                306

1    behind.

2              (Whereupon, all prospective jurors exited the

3    courtroom with the exception of Prospective Juror #10.)

4              THE COURT:  Just give us your name again for the

5    record, please.

6              PROSPECTIVE JUROR #10:  Sonia Williams-Merritt.

7              THE COURT:  You had indicated at some point that

8    because of your work there might be a reason why you can't

9    sit?

10             PROSPECTIVE JUROR #10:  Yes.  I teach kids and I

11   supervise kids and I work in a self-contained special

12   education building and I work with preteens, teenagers, and

13   I've come across a lot of -- and they're EH, emotionally

14   handicapped, and they have a lot of issues.  And sometimes

15   you get personal, it becomes personal and you get attached.

16   So I do not want that to carry over into this case.

17             THE COURT:  Okay.  Now, I'm going to put words in

18   your mouth, but I guess what you're telling me is if you

19   were a juror on this case it might happen?

20             PROSPECTIVE JUROR #10:  It may.

21             THE COURT:  All right.

22             PROSPECTIVE JUROR #10:  Because that's the nature

23   of my job.

24             THE COURT:  Yes, ma'am.

25             Counsel, given that, are you asking to pursue

KL

1          this any further?

2                    MS. GREGORY:  No, your Honor.

3                    THE COURT:  People?  Defense?

4                    MR. RODRIGUEZ:  No, your Honor.

5                    THE COURT:  Thank you very much.

6                    PROSPECTIVE JUROR #10:  Thank you, Judge.

7                    THE COURT:  Just leave the questionnaire on the

8          chair.

9                    PROSPECTIVE JUROR #10:  Okay.

10                    THE COURT:  Mr. Butler when she leaves.

11                    (Whereupon, Prospective Juror #10, having been

12         excused from service, exited the courtroom and Prospective

13         Juror #9 entered the courtroom.)

14                    THE COURT:  The front row will be fine, Mr.

15         Butler.

16                    And just give us your name again.

17                    PROSPECTIVE JUROR #9:  Kenneth Butler.

18                    THE COURT:  Someone had been accused of a crime

19         or something like that?

20                    PROSPECTIVE JUROR #9:  Yes.  In 1986 I was in

21         Manhattan with some friends of mine buying a Walkman.  Once

22         we established the transaction, I paid for the Walkman.  A

23         friend of mine said he could get it for less.  I asked for

24         my money back and there was a dispute over that and the

25         store owner had refused to give me back the money.  My

1    friends got irate.  He pressed the button, the police came

2    and he said that we were trying to rob the store.

3              And so after that we, you know, after we claimed

4    it wasn't happening, even the police didn't believe that.

5    They said "we have to search you," because he made a claim,

6    and found a gun on one of my partners that even we didn't

7    know he had.

8              Thankfully my uncle was a homicide detective and

9    got me out of that one once it was established what really

10   happened, it was a dispute over the Walkman itself; had

11   nothing to do with a robbery.  After that the individual

12   with the gun, he was the one that was charged.

13             THE COURT:  When you were arrested did you have

14   to spend any time in jail?

15             PROSPECTIVE JUROR #9:  No -- well, yeah.  I had

16   to sit in the cell, yeah.

17             THE COURT:  And then they resolved it before you

18   went before a judge?

19             PROSPECTIVE JUROR #9:  Oh, yeah.  No judge, no

20   fingerprinting.

21             THE COURT:  All right.  Anything about that

22   experience that would affect your ability to sit on this

23   case at all?

24             PROSPECTIVE JUROR #9:  No.

25             THE COURT:  You can be fair to both sides

KL

1    notwithstanding the fact that --

2              PROSPECTIVE JUROR #9:  No, I understand the

3    rules, if you explain them to me well enough.  If I don't

4    understand, I will ask.

5              THE COURT:  Okay.  That's good.  I appreciate

6    that, sir.

7              All right.  Miss Gregory, any questions?

8              MS. GREGORY:  No, thank you.

9              THE COURT:  Mr. Rodriguez, any questions?

10             MR. RODRIGUEZ:  No.

11             THE COURT:  Just step outside, please, sir.

12             (Whereupon, Prospective Juror #9 exited the

13   courtroom.)

14             THE COURT:  I'll need Mr. Bilwakesh. He's number

15   four.

16             (Whereupon, Prospective Juror #4 entered the

17   courtroom.)

18             THE COURT:  Just have a seat.  And give us your

19   name again, please.

20             PROSPECTIVE JUROR #4:  Mikhailda Bilwakesh.

21             THE COURT:  I believe I left it with someone

22   having been accused of a crime.  Was that you?

23             PROSPECTIVE JUROR #4:  Yes.

24             THE COURT:  How long ago?  And what are we

25   talking about?

Voir Dire                                    310

1        PROSPECTIVE JUROR #4:  1997 I was arrested.

2   There's no findings.  The charges were all dropped.

3        THE COURT:  What were you arrested for?

4        PROSPECTIVE JUROR #4:  Small amount of drug

5   possession.

6        THE COURT:  Marijuana or --

7        PROSPECTIVE JUROR #4:  LSD.

8        THE COURT:  Okay.  And where did this happen,

9   Manhattan or what?

10        PROSPECTIVE JUROR #4:  Massachusetts.

11        THE COURT:  Did you spend any time in jail?

12        PROSPECTIVE JUROR #4:  No.

13        THE COURT:  How did you come to get arrested?

14   Were you walking on the street or was this a --

15        PROSPECTIVE JUROR #4:  No.  I was in a car.  They

16   pulled me over.  I was driving.  The other person in the

17   car made a fuss about something, and then the officer

18   arrested me, unfortunately, and then in my pocket I had

19   small trace, they said a small trace of LSD.

20        THE COURT:  Anything about that experience that

21   would affect your ability to be fair and impartial to

22   either side here?

23        PROSPECTIVE JUROR #4:  No.

24        THE COURT:  People, any questions?

25        MS. GREGORY:  No.

KL

1              THE COURT:  Defense, any questions?

2              MR. RODRIGUEZ:  No, thanks.

3              THE COURT:  Just step outside, sir.

4              PROSPECTIVE JUROR #4:  Okay.

5              (Whereupon, Prospective Juror #4 exited the

6       courtroom.)

7              THE COURT:  Is there anybody else either side

8       wants to speak to?

9              MR. RODRIGUEZ:  I don't think so, your Honor.  I

10      would just like to use the rest room.

11             THE COURT:  Yes, sir.

12             MR. RODRIGUEZ:  Thank you.

13             (Brief pause in proceedings, after which the

14      trial continued as follows:)

15             THE COURT:  All right, let's gets those jurors in

16      the box in first and then the rest of the jurors in the

17      audience.

18             (Whereupon, the prospective jurors entered the

19      courtroom.)

20             THE COURT:  All right.  The lawyers are now going

21      to ask questions of you.   Please be candid and open with

22      them.

23             If you don't understand the question, ask them to

24      repeat it.  Just don't answer the question to get rid of

25      them.  They need to know how you feel.

1          Miss Gregory.

2              MS. GREGORY:  Thank you, your Honor.

3              Good afternoon, ladies and gentlemen.  My name is

4      Miss Gregory.  I'm an Assistant DA.  I'm the prosecutor in

5      this case. Right now is the chance that we, Mr. Rodriguez

6      and I, can speak to you during this jury selection.  And

7      after, if you're picked for this jury, we won't be able to

8      speak to you anymore directly like this.  So if there's

9      anything that you've heard or any question gets raised

10     during questions that are asked of you or another one of

11     the potential jurors, please let us know.  You can raise

12     your hand, if you have a response or a certain feeling

13     about that.

14             The Judge indicated that, you know, there are

15     going to be witnesses in this case and this case does

16     involve a sexual assault.  And the witnesses are going to

17     come and the complainant in this case is going to come and

18     take the stand.  And when she responds to the questions

19     that are asked of her, any of the witnesses when they

20     respond to the questions, that, what they say, is

21     testimony, and that's evidence.  Does everyone understand

22     that?

23             PROSPECTIVE JURORS:  Yes.

24             MS. GREGORY:  Miss Singleton, the Judge had asked

25     before if everybody here thought they would be able to

KL

Voir Dire                                    313

1        follow the laws of the Court and -- the rules of Court and

2        the laws of the state as far as being a juror is concerned.

3        And you answered that you could.

4                PROSPECTIVE JUROR #1:  Yes.

5                MS. GREGORY:  One of those rules is that if you

6        were selected as a juror in any case, say whether it be

7        this case or another case, and you only heard from one

8        witness, and that one witness came and took the stand and

9        answered the questions that were put to them by both

10        lawyers, and you found that person credible, our law says

11        that if you believe that person beyond a reasonable doubt

12        that you could then find the defendant guilty.

13                PROSPECTIVE JUROR #1:  Yes.

14                MS. GREGORY:  There are some people, and I'm

15        not -- this is what I'm inquiring about -- that would say,

16        you know, "I can't follow that law, whether it be my

17        background or my religion.  I'm going to need more than

18        that one person."  Would you be able to follow the law?

19                PROSPECTIVE JUROR #1:  Yes.

20                MS. GREGORY:  Is there anybody here that would

21        say "I understand that's the law, but for whatever reason I

22        would need more than just that one person"?  Anybody that

23        feels that way?  Okay.

24                Miss Carro, how are you?

25                PROSPECTIVE JUROR #2:  Good, thanks.

Voir Dire                                          314

1              MS. GREGORY:  Have you heard just maybe in the

2     news or television about DNA being used to solve cases?

3              PROSPECTIVE JUROR #2:  Yes.

4              MS. GREGORY:  And DNA involves science.  And it

5     seems like it's something that's a somewhat complicated

6     process that's done to do that.

7              PROSPECTIVE JUROR #2:  Uh-hum.

8              MS. GREGORY:  If you're selected in this case as

9     a juror, there will be some DNA evidence.  Would you be

10    able to keep an open ear to that and listen to it, even

11    though, I mean, now you haven't heard anything, but it

12    seems like that's something that may be complicated, would

13    you be willing to do that?

14             PROSPECTIVE JUROR #2: Yes.

15             MS. GREGORY:  Is there anybody here that feels

16    like, you know, "all right, that's just too scientific and

17    it's just something that I'm not going to get from the

18    start," and wouldn't be able to give it a fair shake?

19    Anybody that feels that way?  No?  Okay.

20             Mr. Weathers, how are you?

21             PROSPECTIVE JUROR #7:  Fine.

22             MS. GREGORY:  What I wanted to address with you,

23    as well as the others, is do you imagine that a person, any

24    person, that's the victim of a crime, would have a certain,

25    would you expect them to act in just a certain way?

KL

Voir Dire                                            315

1                PROSPECTIVE JUROR #7:  No.   People act

2       differently.

3                MS. GREGORY:   Okay.   And if you were selected as

4       a juror in this case and you heard from the witness and you

5       found, you know, "that's not the way that I would have

6       reacted," would you immediately discredit the witness?

7                PROSPECTIVE JUROR #7:  No, not at all.

8                MS. GREGORY:  What about you, Miss Anthony?

9                PROSPECTIVE JUROR #8:  No, I wouldn't.

10               MS. GREGORY:  So is it fair to say that people

11      react differently to stress or violence?

12               PROSPECTIVE JURORS:  Yes.

13               MS. GREGORY:  Mr. Butler?

14               PROSPECTIVE JUROR #9:  Yes.

15               MS. GREGORY:  How are you?

16               PROSPECTIVE JUROR #9:  All right.

17               MS. GREGORY:  The incident, as the Judge

18      indicated, in this case happened in 2002.

19               PROSPECTIVE JUROR #9:  Okay.

20               MS. GREGORY:  So a little over three years ago.

21               PROSPECTIVE JUROR #9: Yes.

22               MS. GREGORY:  And the main witness in the case

23      will obviously be testifying about things that happened to

24      her back then.

25               PROSPECTIVE JUROR #9:  Right.

                           KL

1          MS. GREGORY:  And some of the other witnesses as

2     well.  Would you expect someone when they're talking about

3     an incident to -- and not just, you know, what was the

4     weather like, but something important, would you expect

5     that they would tell their account of the incident the

6     exact same way that they did some years ago?

7          PROSPECTIVE JUROR #9:  Are we talking about the

8     person itself, the victim itself?

9          MS. GREGORY:  Yeah.

10         PROSPECTIVE JUROR #9:  Yeah.

11         MS. GREGORY:  Now, if the person came in some

12    years later and they gave -- they were consistent, but they

13    didn't use maybe the exact same words that they used to

14    describe the incident, would you automatically discredit

15    them?

16         PROSPECTIVE JUROR #9:  No.  As long as it was

17    close.

18         MS. GREGORY:  So if there is some consistency to

19    what they're saying and if you believe what they're saying,

20    you could believe them?

21         PROSPECTIVE JUROR #9:  If that tragic situation

22    happened to them, I know that they would not be able to

23    give a direct account, so, yes, it could be altered.

24         MS. GREGORY:  So what I'm asking is that so you

25    wouldn't automatically discredit somebody if they didn't

1      use the identical words that they used years ago?

2                    PROSPECTIVE JUROR #9:  No.

3                    MS. GREGORY:  Does anybody feel differently about

4      that?

5                    Miss Youngblood, how are you?

6                    PROSPECTIVE JUROR #6:  Okay.

7                    MS. GREGORY:  Do you expect that a person who is

8      the victim of a violent act would, coming into a courtroom,

9      do you expect they would testify in a certain way?  They

10     would be emotional or might cry?

11                   PROSPECTIVE JUROR #6:  I suppose they might.

12                   MS. GREGORY:  Could you imagine a circumstance

13     where they might not?

14                   PROSPECTIVE JUROR #6:  Yeah.

15                   MS. GREGORY:  So let's say a person came in and

16     they were testifying about something terrible that had

17     happened to them and they didn't cry, would you discredit

18     what they had to say just because they didn't cry?

19                   MR. RODRIGUEZ:  Objection, your Honor.

20                   THE COURT:  You're asking her how she values it?

21                   MISS GREGORY:  I was asking her would she

22     discredit the testimony.

23                   THE COURT:  That's what I'm saying.  That's

24     ultimately her call.  What I'm simply saying is this:  The

25     manner in which the witness gives his or her testimony is

                                    KL

1    ultimately a decision that you've got to make and figure

2    out how it factors into whether you believe that witness or

3    not. I mean, you can accept the notion that people don't

4    react the same way, Okay, and it's conceivable that a

5    witness could come in and cry and it's conceivable that

6    they couldn't.  But ultimately the call of whether that

7    witness is true or not is yours, based on your life's

8    experience.

9              I think they get the idea.

10             MS. GREGORY:  Okay, thank you.

11             Mr. Broverman, hi.  Good afternoon.  If you were

12   selected as a juror in this case, could you assure us that

13   once you'd heard all the evidence, and if you found the

14   evidence credible, that you'd be able to find the defendant

15   guilty?

16             PROSPECTIVE JUROR #5:  Yes.

17             MS. GREGORY:  And you'd be able to put any

18   sympathy that you had, either for the complainant in this

19   case or the defendant, aside?

20             PROSPECTIVE JUROR #5:  Yes.

21             MS. GREGORY:  And what about you, Mr. Bilwakesh,

22   would you be able to do that too?

23             PROSPECTIVE JUROR #4:  Yes.

24             MS. GREGORY:  And everyone else?

25             PROSPECTIVE JURORS:  Yes.

Voir Dire                                            319

1            MS. GREGORY:  Thank you all very much.

2            THE COURT:  All right, Mr. Rodriguez.

3            MR. RODRIGUEZ:  Thank you.

4            I know it's getting late in the day.

5            Good afternoon.  My name is John Rodriguez.  I

6    don't want to belabor you too much, but there's some points

7    I need to ask you.

8            I don't know everybody's name.  Do you mind if I

9    just point at you and ask you?  I know it's polite to get

10   names, but this comes across better.

11           How are you doing?

12           PROSPECTIVE JUROR #1:  Okay.

13           MR. RODRIGUEZ:  The Judge is going to tell you

14   the law, what the law is.  You're going to be asked to

15   accept the law.  One of the things that the Judge is going

16   to tell you is that my client is presumed to be innocent.

17   Now, that means that he's not guilty of anything.

18           PROSPECTIVE JUROR #1:  Yes.

19           MR. RODRIGUEZ:  Even though he's charged and

20   we're in a courtroom here, he sits there and, you know, no

21   one else sits there, but he's presumed innocent.

22           PROSPECTIVE JUROR #1:  Yes.

23           MR. RODRIGUEZ:  Do you agree with that?

24           PROSPECTIVE JUROR #1:  Yes.

25           MR. RODRIGUEZ:  Can we all accept that?

KL

1       And the only way he's not innocent is if the jury

2   says he's not innocent.

3           Now, you all understand how that comes about,

4   right?  Someone takes the stand.  Now, that person will

5   come up there, and as the Judge said, raise their hand to

6   tell the truth, the whole truth and nothing but the truth.

7           But the fact that someone stands up there and

8   points a finger doesn't mean they're being truthful.

9           PROSPECTIVE JUROR #1:  Yes.

10          MR. RODRIGUEZ:  Does it automatically mean

11  they're being truthful?

12          PROSPECTIVE JUROR #9:  I didn't hear you.

13          MR. RODRIGUEZ:  The fact that somebody said you

14  did something, does that make it truthful?

15          PROSPECTIVE JUROR #9:  No.

16          MR. RODRIGUEZ:  Even though they swear to tell

17  the truth?

18          PROSPECTIVE JUROR #9:  No.

19          MR. RODRIGUEZ:  They could be making a false

20  statement?

21          PROSPECTIVE JUROR #9:  Could be.

22          MR. RODRIGUEZ:  In fact, many times people are

23  accused wrongly, would you agree with that?

24          PROSPECTIVE JUROR #6:  Yes.

25          MR. RODRIGUEZ:  Would you agree with that?

1          PROSPECTIVE JUROR #5:  Yes.

2          MR. RODRIGUEZ:  And when someone takes the stand,

3    we all understand and recognize, ma'am, right, that you're

4    not going to have a book you can open up or crystal ball

5    that could take you back to see what happened?  You have to

6    listen to the testimony and whatever other statements are

7    made or whatever evidence is made and make a determination.

8          PROSPECTIVE JUROR #6:  Yes.

9          MR. RODRIGUEZ:  And one of the things that I

10   think everyone agreed with and you agreed with is that

11   someone's emotional state on the stand doesn't necessarily

12   mean that you're going to accept -- rather let me re-word

13   that.

14          You may see someone take the stand and they may

15   or may not be emotional.  And the fact that they're not

16   emotional doesn't mean that they're not being honest,

17   right?

18          PROSPECTIVE JUROR #6:  Yes.

19          MR. RODRIGUEZ:  Can you also accept the fact that

20   somebody is boo-hooing up there, "oh, God, Lord," doesn't

21   mean that they're telling the truth either?

22          PROSPECTIVE JUROR #6:  Right.

23          THE COURT:  If that occurs, I assure you the jury

24   will be sent out and I will instruct them accordingly.

25          You're not allowed to have emotion affect your

KL

1    decision.  It's not going to happen.

2              MR. RODRIGUEZ:  Okay.  I don't need to say

3    another word about that.

4              Now, he's not required, anybody, anybody is not

5    required to testify in their own behalf.  In our system,

6    you point the finger, you prove the case, right?  And the

7    prosecutor speaks for the People of the State of New York,

8    and they have the burden of proving the case.  You all

9    understand that?  Does anybody have a problem with that?

10             Sir?

11             PROSPECTIVE JUROR #7:  No.

12             MR. RODRIGUEZ:  Do you have a problem with him

13   not testifying?  Now, I'm going to say that in terms of

14   making the determination whether or not he's guilty or not.

15             PROSPECTIVE JUROR #7:  No.

16             MR. RODRIGUEZ:  Now, the Judge has told you not

17   to, but can you promise that if you're selected as a juror

18   you will not use the fact that he testifies or doesn't

19   testify in determining whether or not, just the fact that

20   he testifies or doesn't testify, in determining whether or

21   not he's guilty?

22             THE COURT:  Just a moment.  I think you ought to

23   rephrase.

24             MR. RODRIGUEZ:  I heard myself.  I will rephrase.

25             He has no obligation, the defendant has no

1     obligation.  He may testify, may not testify.  That's

2     something that will be decided by his attorney.  But should

3     he not testify, would you promise me you will not use it

4     against him in any form or fashion?

5                 PROSPECTIVE JUROR #8:  No.

6                 MR. RODRIGUEZ:  If you're selected, will you use

7     it against him?

8                 PROSPECTIVE JUROR #9:  No.

9                 MR. RODRIGUEZ:  Will you?

10                PROSPECTIVE JUROR #4:  No.

11                MR. RODRIGUEZ:  Will you?

12                PROSPECTIVE JUROR #5:  No.

13                MR. RODRIGUEZ:  Will you?

14                PROSPECTIVE JUROR #6:  No.

15                MR. RODRIGUEZ:  Will you?

16                PROSPECTIVE JUROR #3:  No.

17                MR. RODRIGUEZ:  Is there anything about the

18    charge -- by the way, the charges, there's also going to be

19    allegations of a weapon used in this crime.  Does that

20    affect your ability to be fair to my client?

21                PROSPECTIVE JUROR #1:  No.

22                MR. RODRIGUEZ:  Does that affect your ability?

23                PROSPECTIVE JUROR #2:  No.

24                MR. RODRIGUEZ:  You?

25                PROSPECTIVE JUROR #3: No.

KL

1          MR. RODRIGUEZ:  You?

2          PROSPECTIVE JUROR #4:  No.

3          MR. RODRIGUEZ:  You?

4          PROSPECTIVE JUROR #5:  No.

5          MR. RODRIGUEZ:  You?

6          PROSPECTIVE JUROR #6:  No.

7          MR. RODRIGUEZ:  You?

8          PROSPECTIVE JUROR #7:  No.

9          MR. RODRIGUEZ:  You?

10         PROSPECTIVE JUROR #8:  No.

11         MR. RODRIGUEZ:  You?

12         PROSPECTIVE JUROR #9: No.

13         MR. RODRIGUEZ:  Now, if the prosecution does not

14    prove their case, that means the elements of the crime, and

15    yet you feel that something happened to the woman that you

16    don't like, in other words you don't like something that

17    happened but they haven't proved the case, you promise me

18    that you will not find my client guilty?

19         Can you promise that?

20         PROSPECTIVE JUROR #1:  Yes.

21         MR. RODRIGUEZ:  Can you promise that?

22         PROSPECTIVE JUROR #2:  Yes.

23         MR. RODRIGUEZ:   Can you promise is that?

24         PROSPECTIVE JUROR #3:  Yes.

25         MR. RODRIGUEZ:   Can you, sir?

1              PROSPECTIVE JUROR #4:  Yes.

2              MR. RODRIGUEZ:    Can you?

3              PROSPECTIVE JUROR #5:  Yes.

4              MR. RODRIGUEZ:    Can you?

5              PROSPECTIVE JUROR #6:  Yes.

6              MR. RODRIGUEZ:    Can you?

7              PROSPECTIVE JUROR #7:  Yes.

8              MR. RODRIGUEZ:  Can you?

9              PROSPECTIVE JUROR #8:  Yes.

10             MR. RODRIGUEZ:  Can you?

11             PROSPECTIVE JUROR #9:  Yes.

12             MR. RODRIGUEZ:  Is there any question you have of

13     me?  It's late in the day, last chance to ask it.

14             Yes, sir?

15             PROSPECTIVE JUROR #9:  Well, the DA brought it

16     up.  Is DNA an absolute?

17             MR. RODRIGUEZ:  That's a question that you'll

18     have to decide during the course of the case.  All right?

19     You'll hear about that and you'll decide if it's important,

20     DNA evidence or not.  Okay?  And those are the things that

21     ultimately you're making a determination on.

22             Thank you very much.

23             THE COURT:  If you will, these lawyers have to

24     make their choices, along with the defendant.  I'm going to

25     ask everybody to step out.  We'll advise you of your status

Voir Dire                                    326

1        in a moment.

2                     Everybody step out of the courtroom, please.

3                     (Whereupon, the prospective jurors exited the

4        courtroom.)

5                     THE COURT:  Whenever you're ready, let Mr. LaRose

6        know.

7                     (Brief pause in proceedings, after which the case

8        continued as follows:)

9                     THE CLERK:  All right, counselors, ready?

10                    Panel for cause, People?

11                    MS. GREGORY:  No.

12                    THE CLERK:  Defense?

13                    MR. RODRIGUEZ:  No.

14                    THE CLERK:  Prospective Juror #1, peremptorily,

15       People?

16                    MS. GREGORY:  No.

17                    THE CLERK:  Defense?

18                    MR. RODRIGUEZ:  Yes.

19                    THE CLERK:  Defense challenges.

20                    Prospective Juror #2, peremptorily, People?

21                    MS. GREGORY:  No.

22                    THE CLERK:  Defense?

23                    MR. RODRIGUEZ:  Yes.

24                    THE CLERK:  Prospective Juror #3, People?

25                    MS. GREGORY:  Yes.

1          THE CLERK:  Prospective Juror #4, People?

2          MS. GREGORY:  No.

3          THE CLERK:  Defense?

4          MR. RODRIGUEZ:  No.

5          THE CLERK:  Mikhailda Bilwakesh becomes our 12th

6     juror.

7          First alternate chair, Prospective Juror #5,

8     People?

9          MS. GREGORY:  No.

10         THE CLERK:  Defense?

11         MR. RODRIGUEZ:  What do we have?

12         THE CLERK:  Two per chair, non-cumulative.

13         MR. RODRIGUEZ:  And it's two chairs left, right?

14         THE CLERK:  Well, the Court originally intended

15    to get two alternates.  If we get it before, maybe we'll

16    get a third.  You never know.

17         MR. RODRIGUEZ:  Okay.

18         Alternate number one, no.

19         THE CLERK:  Challenge or no challenge?

20         MR. RODRIGUEZ:  No.

21         THE CLERK:  Then Boris Broverman is acceptable?

22         MR. RODRIGUEZ:  Yes.

23         THE CLERK:  And becomes our first alternate

24    selected.

25         Chair number two, Prospective Juror #6, People?

KL

1              MS. GREGORY:  No.

2              THE CLERK:  Defense?

3              MR. RODRIGUEZ:  Yes.

4              THE CLERK:  Miss Youngblood is challenged by the

5     defense.

6              THE CLERK:  Second alternate chair, Prospective

7     Juror #7, People?

8              MS. GREGORY:  No.

9              THE CLERK:  Defense?

10             MR. RODRIGUEZ:  No.

11             THE CLERK:  Garrett Weathers is acceptable and

12    becomes our second alternate.

13             Third alternate chair, Prospective Juror #8,

14    People?

15             MS. GREGORY:  No.

16             THE CLERK:  Defense?

17             MR. RODRIGUEZ:  As to Anthony?

18             THE COURT:  Correct.

19             MR. RODRIGUEZ:  Yes.

20             THE CLERK:  Defense challenges.

21             Number nine, People?

22             MS. GREGORY:  No.

23             THE CLERK:  Defense?

24             MR. RODRIGUEZ:  No.

25             THE CLERK:  Kenneth Butler becomes our third

KL

Voir Dire                                    329

1     alternate.

2              THE COURT:  With that, get those people selected

3     in, and the rest can return to Central Jury.

4              (Whereupon, the selected jurors entered the

5     courtroom.)

6              THE COURT:  You have been selected to sit on this

7     case.  You're going to be shown where the jury room is.

8              I'm going to ask you please be in the jury room

9     tomorrow morning at 10 o'clock.  When you're all there,

10    you'll come out and you will be sworn as a trial jury, and

11    I will repeat these same rules I'm going to give you before

12    you leave.

13             You are to keep an open mind; not to form, or

14    express, any opinion as to the guilt or non-guilt of this

15    defendant until you've received all the evidence, you've

16    heard my closing, you've heard the attorneys' closing

17    arguments and my instructions on the law and you've gone

18    into the jury room to begin jury deliberations.

19             Do not discuss this case with anyone, not even

20    among yourselves, nor allow anyone to speak to you about

21    this case or in your presence about this case.

22             Don't visit any of the locations mentioned.  Do

23    not try to investigate any facts on your own.

24             Don't read, watch or listen to any accounts of

25    this case should they be in the news media.

KL

Proceedings                                              330

1              And don't surf the internet trying to get

2      information about this case or anybody involved with the

3      case.

4              Immediately report any attempts by anyone to

5      approach you or a fellow jurors about this case.

6              And until you're discharged, you're not to accept

7      compensation or discuss the acceptance of compensation for

8      supplying information.

9              With those rules in mind, follow the officers.

10     See you all tomorrow in the jury room, 10 o'clock, please.

11     You can expect a full day.

12             If you have a question, we'll take it in a

13     moment.

14             Just see what it is and have him stand by.

15             (Whereupon, the selected jurors exited the

16     courtroom.)

17             COURT OFFICER:  The teacher teaches a class from

18     1:00 to 4:00 on Tuesday and Thursday, which he failed to

19     mention.

20             THE COURT:  Bring him in.

21             (Whereupon, Juror #12 entered the courtroom.)

22             THE COURT:  Your name, please.

23             JUROR #12:  Mikhailda Bilwakesh.

24             THE COURT:  There is a problem with our schedule.

25     You teach a class when?

                              KL

Proceedings                                                    331

1              JUROR #12:  Tuesdays and Thursdays at one

2      o'clock.

3              THE COURT:  All right.  On Tuesday we would

4      probably give this case to the jury.  Is it possible for

5      you to arrange for someone else to teach that class?

6              JUROR #12:  So I'd have to arrange for tomorrow

7      as well?

8              THE COURT:  Yes, sir.

9              JUROR #12:  Thursday and Tuesday?

10             THE COURT:  Yes, sir.

11             JUROR #12:  It would be difficult.  I suppose I

12     could.

13             THE COURT:  Well, you tell me.  The question

14     becomes really if you can't do it, whether it would affect

15     your ability to sit.  Because you have been selected, you

16     are the 12th juror.

17             JUROR #12:  I can sit.  I can get somebody to

18     cover the class.

19             THE COURT:  When would you know?  For example, in

20     terms of tomorrow, when would you know?  I guess you would

21     know tonight?

22             JUROR #12:  Yeah.  I mean, I'd have to go and try

23     to talk to them now.  I've never done jury duty.  I don't

24     even know.  You know, I don't get sick often either.

25             THE COURT:  For the moment, why don't you just

KL

Proceedings                                    332

1      take him to the robing room.  Let him reach out to his

2      employer right now and let's see.

3                  Just follow the officer.

4                  (Whereupon, Juror #12 exited the courtroom.)

5                  THE COURT:  In the interim, while he's doing

6      that, let's see if we can deal with the Rosario.  I believe

7      you had something, Mr. Rodriguez?

8                  MR. RODRIGUEZ:  Yes, your Honor.  There were some

9      redactions in some pages and some pages I thought may have

10     been missing from the file that was turned over to me.

11                 THE COURT:  Well, the jury is sworn.  I mean, the

12     jury is not sworn but it's selected now.

13                 Can you give him unredacted copies, ma'am, or

14     help him?

15                 MS. GREGORY:  Your Honor, there was a portion of

16     the medical records that was redacted, which I believe was

17     redacted for rape shield reasons, and that's why that was

18     redacted.

19                 THE COURT:  Is it an address or something?

20                 MS. GREGORY:  No.  It was questions that were

21     asked of her.  I could show it to the Court.

22                 THE COURT:  Well, let me see it.

23                 (Handed.)

24                 THE COURT:  Something about prior sexual

25     activity?

KL

Proceedings                                    333

1          MS. GREGORY:  Right.  It's question number 15.

2          THE COURT:  Okay.  All right.  It does relate to

3     prior sexual activity, unrelated to this alleged incident.

4     All right.

5          MS. GREGORY:  And then additionally, the way that

6     the hospital numbers these records, the first page says

7     step one, and then it says step 13.  I don't have any other

8     steps.

9          THE COURT:  In between, you mean?

10         MS. GREGORY:  Right.

11         THE COURT:  The record you have, is it certified

12    to be an accurate copy?

13         MS. GREGORY:  These records, these pink pages,

14    the page you have and these two pages here come directly

15    from an envelope on the rape kit.

16         THE COURT:  Well, this one is signed by the

17    examining physician.  Is that going to be the individual

18    who's going to come in?

19         MS. GREGORY:  No.  The physician who examined

20    her, the nurse who examined her is coming in.

21         THE COURT:  All right.  Then before she

22    testifies, why don't you let her look at this and find out

23    whether this is in fact the entire record.

24         MS. GREGORY:  Right.  It's my understanding

25    there's nothing further, but I will double check with her.

                              KL

Proceedings                                334

1          MR. RODRIGUEZ:  Okay.  I just --

2          MS. GREGORY:  I mean, the steps are odd but --

3          MR. RODRIGUEZ:  And the other thing is if there

4    are steps two through 12, which appear to be missing, I'd

5    like to know what they are.  Because I'd like to be able to

6    see whether or not there's something that they did or

7    didn't do.

8          THE COURT:  I don't disagree with you, counsel.

9    But she won't know that until tomorrow, when she speaks to

10   the nurse.

11         MR. RODRIGUEZ:  Okay.

12         THE COURT:  But the reference to 15 clearly

13   relates to any previous sexual activity, and clearly at

14   this point is not related to the alleged incident.

15         MR. RODRIGUEZ:  Okay.  I just didn't know what

16   that was.

17         THE COURT:  You can hand this back to the DA.

18         MR. RODRIGUEZ:  Now, is there any reason why I

19   couldn't have the address and date of birth of the

20   complaining witness and Tammy Little?

21         THE COURT:  Well, you won't get the address of

22   Miss Little.

23         MR. RODRIGUEZ:  I don't want the address.  I want

24   the date of birth.

25         THE COURT:  Do you have a date of birth for her?

KL

Proceedings                                                335

1              MS. GREGORY:  I don't have it, your Honor.

2              THE COURT:  When is she scheduled to testify?

3              MS. GREGORY:  Probably not until Monday morning.

4              THE COURT:  Please get in touch with her.

5              MS. GREGORY:  As soon as I get it --

6              THE COURT:  I'd like her on Friday, but if you're

7    going to bring her on Monday, I mean get an address for

8    him, please, in time for him to do his criminal record

9    search.

10             MR. RODRIGUEZ:  I could also have one for Miss

11   Colon also?

12             THE COURT:  If one exists.

13             I'm sorry.  First of all, ma'am, are you aware of

14   any criminal record as to Miss Colon?

15             MS. GREGORY:  No, none, your Honor.

16             THE COURT:  Would you make sure that he gets the

17   date of birth, please.

18             MS. GREGORY:  Okay.

19             THE COURT:  When is she scheduled to testify?

20   Tomorrow?

21             MS. GREGORY:  Tomorrow.

22             THE COURT:  Okay.

23             Anything else?

24             MR. RODRIGUEZ:  Yeah, there are, your Honor.

25             I have a complaint follow-up, number nine.  I've

KL

Proceedings                                                        336

1        got continued on page two, but I don't have a page two.

2                    THE COURT:  All right.  Would you allow the

3        assistant to look at what you do have and maybe she can

4        compare it with what she has.

5                    MR. RODRIGUEZ:  Sure.

6                    MS. GREGORY:  This is two.

7                    MR. RODRIGUEZ:  Can you make me a copy of that?

8                    MS. GREGORY:  Okay.

9                    MR. RODRIGUEZ:  I think I have a copy of that.

10                    MS. GREGORY:  You think you do?

11                    MR. RODRIGUEZ:  I see what it is.  I think I have

12        a copy of that.

13                    THE COURT:  All right.

14                    MR. RODRIGUEZ:  I do have a copy.

15                    THE COURT:  Yes, sir.  I can see it from here.

16                    MR. RODRIGUEZ:  I have a copy.

17                    MR. RODRIGUEZ:  Doesn't look the same, that's why

18        I asked.

19                    And there is one other page.  And I know she

20        doesn't have this information right now.  I understand her

21        copy of the uniform system arrest sheet is like mine.

22                    THE COURT:  I'm sorry.  Uniform?

23                    MR. RODRIGUEZ:  Yeah.  Yes, your Honor.  It's

24        this document.

25                    THE COURT:  Is that something new now?

KL

Proceedings                                    337

1              MR. RODRIGUEZ:  Yes, it is.

2              THE COURT:  Uniform arrest sheet?

3              MR. RODRIGUEZ:  It used to be the on-line booking

4     sheet.  It's the old on-line booking sheet.

5              THE COURT:  Yes, sir.  What's the problem?

6              MR. RODRIGUEZ:  At the bottom of it it's missing

7     some of the --

8              THE COURT:  Do you have your original?

9              MS. GREGORY:  I don't have the original, your

10    Honor.  But the on-line booking system arrest work sheet

11    that was right before that is the handwritten copy of what

12    this preprinted form is.   These two pages.

13             MR. RODRIGUEZ:  If I took this information, it

14    would be down here?

15             MS. GREGORY:  Right.

16             MR. RODRIGUEZ:  Okay.  All right.

17             So on the representation of counsel, I'll just

18    wait until that time when the detective takes the stand.

19             THE COURT:  You got Litwin coming in.  So if he's

20    got his file, you can look at that too as well.

21             MR. RODRIGUEZ:  All right.

22             THE COURT:  Anything else in terms of Rosario?

23             MR. RODRIGUEZ:  I think that's it, your Honor.

24    At this point I don't see anything else that I have a

25    problem with at this point.

                            KL

Proceedings                                    338

1          THE COURT:  What about our juror now?  He's back

2     now?

3          COURT OFFICER:  Yes.

4          (Whereupon, Juror #12 entered the courtroom.)

5          THE COURT:  Just have a seat, sir.

6          If you will, your name, again.

7          JUROR #12:  Mikhailda Bilwakesh.

8          THE COURT:  What information do you have for us?

9          JUROR #12:  I wasn't able to get in touch with

10    anybody at the university.  They all left for the day.  So

11    my plan is to try and come tomorrow and I'll have to make

12    up those courses.  I'll make up those classes or get

13    somebody to cover those two lecture periods, which should

14    be possible to do.

15         THE COURT:  All right.  We'll make sure that in

16    the morning when you arrive we'll make a phone available to

17    you so you can reach out to somebody to make sure.  Okay?

18         JUROR #12:  Okay.

19         THE COURT:  We'll see you tomorrow morning then.

20         JUROR #12:  Okay.

21         THE COURT:  Ten o'clock, please.

22         JUROR #12:  Come straight up to the 20th floor?

23         THE COURT:  He's going to tell you where to come.

24    Just follow his instructions.

25         JUROR #12:  All right.  Thank you.

KL

Proceedings                                                        339

1                    (Whereupon, Juror #12 exited the courtroom.)

2                    THE COURT:  Is there anything else, either side?

3                    MS. GREGORY:  No, your Honor.

4                    THE COURT:  All right.  Then I'll see you all

5          tomorrow about 10 o'clock.

6                    (Whereupon, the trial of the action was adjourned

7          to Thursday, October 27, 2005.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25